# EXHIBIT A

Robert M. Charles, Jr., Esq.
(NV Bar No. 6593)
Laury M. Macauley, Esq.
(NV Bar No. 11413)
LEWIS AND ROCA LLP
50 W. Liberty Street, Ste. 410
Reno, Nevada 89501
Telephone: (775) 823-2900
Facsimile: (775) 823-2929
E-mail: rcharles@lrlaw.com
E-mail: lmacauley@lrlaw.com

Paul V. Shalhoub, Esq.*
Joseph G. Minias, Esq.*
Mary K. Warren, Esq.*
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
E-mail: pshalhoub@willkie.com
E-mail: jminias@willkie.com
E-mail: mwarren@willkie.com

*Admitted Pro Hac Vice*

Counsel for Sphere Capital, LLC - Series B

**E-Filed February 8, 2013**
Laurel E. Davis (NV Bar No. 3005)
FENNEMORE CRAIG JONES VARGAS
300 South Fourth Street, Suite 1400
Las Vegas, Nevada 89101
Telephone: (702) 692-8000
E-mail: ldavis@fclaw.com

Kurt A. Mayr, Esq.*
BRACEWELL & GIULIANI LLP
Goodwin Square
225 Asylum Street, Suite 2600
Hartford, Connecticut 06103
Telephone: (860) 947-9000
Facsimile: (860) 246-3201
Email: kurt.mayr@bgllp.com

Daniel S. Connolly, Esq.*
BRACEWELL & GIULIANI LLP
1251 Avenue of the Americas, 49th Fl.
New York, New York 10020
Telephone: (212) 508-6100
Facsimile: (212) 508-6101
Email: daniel.connolly@bgllp.com

*Admitted Pro Hac Vice*

Counsel for the Proponents

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>AHERN RENTALS, INC.,<br><br>      Debtor. | Chapter 11<br><br>Case No.: BK-N-11-53860-BTB |

## PLAN OF REORGANIZATION FOR
### AHERN RENTALS, INC. PROPOSED BY CERTAIN HOLDERS
### OF THE 9¼% SENIOR SECURED SECOND LIEN NOTES DUE 2013

FENNEMORE CRAIG JONES
VARGAS

LAS VEGAS

#4194901.11

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

ARTICLE I.    DEFINED TERMS, RULES OF INTERPRETATION
AND COMPUTATION OF TIME ....................................................... 1

    A.    Defined Terms ................................................................. 1

    B.    Rules Of Interpretation And Computation Of Time ........................... 14

        1.    Rules Of Interpretation ............................................... 14

        2.    Computation Of Time ................................................. 14

ARTICLE II.    TREATMENT OF UNCLASSIFIED CLAIMS ................................... 15

    A.    Administrative Claims ................................................... 15

    B.    DIP Loan ................................................................. 15

    C.    Professional Fee Claims ................................................ 15

    D.    Priority Tax Claims ..................................................... 16

ARTICLE III.    TREATMENT OF CLASSIFIED CLAIMS AND EQUITY
INTERESTS ................................................................................... 16

    A.    Summary Of Classification ............................................ 16

    B.    Acceptance By Impaired Class ........................................ 17

    C.    Cramdown ............................................................... 17

    D.    Treatment Of Claims And Equity Interests ........................... 18

        1.    Class 1: Other Secured Claims .................................... 18

        2.    Class 2: Other Priority Claims .................................... 18

        3.    Class 3: First Lien Term Loan Claims ........................... 19

        4.    Class 4: Second Lien Notes Claims .............................. 19

        5.    Class 5: Insider Claims ........................................... 19

        6.    Class 6: Personal Injury Claims .................................. 20

        7.    Class 7: General Unsecured Claims .............................. 20

        8.    Class 8: Equity Interests ......................................... 20

    E.    Allowed Claims ......................................................... 21

    F.    Postpetition Interest ..................................................... 21

ARTICLE IV.    MEANS FOR IMPLEMENTATION OF THE PLAN ....................... 21

    A.    Noteholder Plan Funding .............................................. 21

    B.    Reorganized Ahern ..................................................... 21

    C.    Additional Reorganized Ahern Provisions ........................... 22

    D.    New Financing ......................................................... 22

FENNEMORE CRAIG JONES
VARGAS

LAS VEGAS

#4194901.11

| | E. | Effective Date Events | 22 |
|---|---|---|---|
| | F. | Post-Effective Date Officers And Directors Of Reorganized Ahern | 23 |
| | G. | No Corporate Action Required | 23 |
| | H. | Effectuation Of Transactions | 23 |
| | I. | Filing Of Noteholder Plan And Confirmation Order | 23 |
| | J. | Vesting Of Assets In Reorganized Ahern | 24 |
| ARTICLE V. | | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 24 |
| | A. | Assumption And Rejection Of Executory Contracts And Unexpired Leases | 24 |
| | B. | Cure Of Defaults | 25 |
| | C. | Objection To Cure Amounts | 25 |
| | D. | Confirmation Order | 26 |
| | E. | Rejection Claims Bar Date | 26 |
| ARTICLE VI. | | PROVISIONS GOVERNING DISTRIBUTIONS | 26 |
| | A. | Distributions | 26 |
| | B. | Timing And Calculation Of Amounts To Be Distributed | 26 |
| | C. | Rights And Powers Of Disbursing Agent | 27 |
| | D. | Providing For Claims Payments | 27 |
| | E. | Means Of Cash Payments | 28 |
| | F. | Time Bar To Cash Payments | 28 |
| | G. | Application Of Record Date | 28 |
| | H. | Claims Paid By Third Parties | 29 |
| | I. | Insurance Claims | 29 |
| | J. | Applicability Of Insurance Policies | 29 |
| | K. | Allocation Of Noteholder Plan Distributions Between Principal And Interest | 29 |
| | L. | Setoffs | 29 |
| | M. | Fractional Distributions | 30 |
| | N. | Prepayment | 30 |
| | O. | No Distribution In Excess Of Allowed Amounts | 30 |
| | P. | Joint Distributions | 30 |
| | Q. | Statements | 30 |

FENNEMORE CRAIG JONES
VARGAS

LAS VEGAS

#4194901.11

|  |  | R. | Further Authorization | 31 |
| ARTICLE VII. |  |  | RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS | 31 |
|  |  | A. | Resolution Of Disputed Claims | 31 |
|  |  | B. | No Distribution Pending Allowance | 31 |
|  |  | C. | Resolution Of Objections After Effective Date | 31 |
|  |  | D. | Distributions After Allowance | 31 |
|  |  | E. | Disputed Claims Reserve | 32 |
|  |  | F. | Estimation Of Claims | 32 |
|  |  | G. | Deadline To File Objections To Claims | 33 |
|  |  | H. | Late-Filed Claims | 33 |
|  |  | I. | Reservation Of Right To Object To Allowance Or Asserted Priority Of Claims | 33 |
| ARTICLE VIII. |  |  | CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE | 33 |
|  |  | A. | Conditions Precedent To Confirmation | 33 |
|  |  | B. | Conditions Precedent To The Effective Date | 34 |
|  |  | C. | Failure Of Conditions Precedent | 34 |
|  |  | D. | Notice Of Effectiveness | 35 |
|  |  | E. | Waiver Of Conditions Precedent | 35 |
| ARTICLE IX. |  |  | TRANSFER OF ASSETS, DISCHARGE, RELEASES, INJUNCTION AND SETTLEMENT | 35 |
|  |  | A. | Vesting And Transfer Of Assets And Assumption Of Liabilities | 35 |
|  |  | B. | Discharge Of Claims | 35 |
|  |  | C. | Claims Enjoined | 36 |
|  |  | D. | Compromise And Settlement | 36 |
|  |  | E. | Releases | 36 |
|  |  | F. | Exculpation | 37 |
|  |  | G. | Supplemental Injunction | 37 |
| ARTICLE X. |  |  | RETENTION OF JURISDICTION | 37 |
| ARTICLE XI. |  |  | MISCELLANEOUS PROVISIONS | 40 |
|  |  | A. | Effectuating Documents; Further Transactions; And Timing | 40 |
|  |  | B. | Cancellation Of Existing Agreements | 40 |
|  |  | C. | Exemption From Transfer Taxes | 40 |

FENNEMORE CRAIG JONES
VARGAS

LAS VEGAS

- iii -

#4194901.11

D.    Modification Of The Noteholder Plan ................................................ 40

E.    Revocation Of The Noteholder Plan .................................................. 41

F.    Term Of Bankruptcy Injunction Or Stays ........................................... 41

G.    Dissolution Of Committee ................................................................. 41

H.    Governing Law ................................................................................. 41

I.    Plan Supplement .............................................................................. 41

J.    Expedited Tax Determination ............................................................ 42

K.    Post-Confirmation Date Fees And Expenses ...................................... 42

L.    Substantial Consummation ................................................................ 42

M.    Exhibits/Schedules .......................................................................... 42

N.    Closing Of The Chapter 11 Case ....................................................... 42

O.    Severability Of Noteholder Plan Provisions ....................................... 42

P.    Withholding And Reporting Requirements .......................................... 43

Q.    Fees And Reporting To The U.S ........................................................ 43

R.    Binding Effect ................................................................................. 43

FENNEMORE CRAIG JONES VARGAS

LAS VEGAS

#4194901.11

# INTRODUCTION

Del Mar Master Fund Ltd. ("Del Mar"), Feingold O'Keeffe Capital, LLC ("Feingold"), Nomura Corporate Research & Asset Management Inc. ("Nomura"), Och-Ziff Capital Management Group ("Och-Ziff"), Sphere Capital, LLC - Series B ("Sphere") and Wazee Street Capital Management, LLC ("Wazee" and, together with Del Mar, Feingold, Nomura, Och-Ziff and Sphere, the "Proponents"), holders of approximately 90% of the 9¼% Senior Secured Notes due 2013, hereby propose this Plan of Reorganization (the "Noteholder Plan"), within the meaning of section 1129 of the Bankruptcy Code, for resolution of the outstanding Claims and Equity Interests in Ahern Rentals, Inc. (the "Debtor"). All Creditors, Holders of Equity Interests and other parties-in-interest should refer to the Noteholder Disclosure Statement for a discussion of the Debtor's history, assets and historical financial data, and for a summary and analysis of the Noteholder Plan and certain related matters.

The Proponents believe that the Noteholder Plan represents a fair and equitable resolution for all of the Debtor's claimants and that the Noteholder Plan will accelerate the administration of the Debtor's Chapter 11 Case, enhance recoveries and expedite the Debtor's emergence from bankruptcy. The Noteholder Plan enables the avoidance of the potential costs and extended time that would otherwise be incurred in connection with litigation regarding the confirmation of the chapter 11 plan previously proposed by the Debtor (the "Debtor's Plan"). All Holders of Claims and Equity Interests against the Debtor are encouraged to read the Noteholder Plan, the Noteholder Disclosure Statement, and the related solicitation materials in their entirety before voting to accept or reject the Noteholder Plan.

# ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION
## AND COMPUTATION OF TIME

### A.  Defined Terms

As used in the Noteholder Plan, capitalized terms have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

"**Administrative Claim**" means a Claim for costs and expenses of administration of the Estate allowed under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, and entitled to priority under section 507(a)(2) of the Bankruptcy Code, including: (i) any fees payable pursuant to Section 1930 of Title 28 of the United States Code; (ii) the actual and necessary costs and expenses, including Taxes, incurred after the Petition Date of preserving the Estate and operating the business of the Debtor, (iii) the value of any goods received by the Debtor within twenty (20) days before the Petition Date which goods have been sold to the Debtor in the ordinary course of its business; (iv) the Superpriority Claims (as defined in the Majority Term Lender Cash Collateral Stipulation) granted in favor of the DIP Loan Agent and approved by the Bankruptcy Court in the DIP Loan/Cash Collateral Order; and (v) the administrative claim granted in favor of the DIP Loan Agent and the First Lien Term Loan Agent and approved by the Bankruptcy Court in the DIP Loan/Cash Collateral Order; provided, however, that an Administrative Claim shall not

include a Professional Fee Claim, Other Priority Claim or Priority Tax Claim. To the extent that a Claim is allowed as an Administrative Claim pursuant to section 365(d)(3) and (d)(5) of the Bankruptcy Code, such Claim shall also be deemed an Administrative Claim under this paragraph.

**"Administrative Claims Bar Date"** means 5:00 p.m. (Prevailing Pacific Time) on the first Business Day occurring after the thirtieth (30th) day following the Effective Date.

**"Administrative Claims Objection Deadline"** means 90 days following the Administrative Claims Bar Date, or such other date as may be established by a Final Order of the Bankruptcy Court.

**"Affiliate"** means **"affiliate,"** as defined in section 101(2) of the Bankruptcy Code.

**"Allowed"** means any Claim that is not a Disputed Claim or a Disallowed Claim.

**"Allowed Claim"** means a Claim against the Debtor (i) that has been scheduled as a liquidated, non-contingent, and undisputed Claim in an amount greater than zero on the Schedules, (ii) as to which no objection or request for estimation has been filed on or before the Administrative Claims Objection Deadline, the Claims Objection Deadline or the expiration of any other applicable period fixed by the Bankruptcy Court or the Noteholder Plan; (iii) as to which any and all objections have been settled, waived, withdrawn or denied by a Final Order or in accordance with the Noteholder Plan; or (iv) that is allowed (a) by a Final Order, (b) by an agreement between the Holder of such a Claim and the Debtor or Reorganized Ahern or (c) pursuant to the terms of the Noteholder Plan.

**"Allowed . . . Claim"** means an Allowed Claim of the particular type of Class described.

**"Assets"** means all of the assets, property, interests, including Equity Interests, and effects, Cash, receivables, real and personal, tangible and intangible, wherever situated, of the Debtor, as they exist on the Effective Date.

**"Avoidance Actions"** means all avoidance, recovery, subordination and other similar actions preserved for the Estate under the Bankruptcy Code, including but not limited to those set forth in sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code regardless of whether or not such action has been commenced prior to the Effective Date.

**"Backstopped Rights Offering"** means the rights offering by Reorganized Ahern pursuant to which the Investors shall purchase, on the Effective Date, the Rights Offering Equity for $15 million pursuant to the terms of the Backstopped Rights Offering Agreement.

**"Backstopped Rights Offering Agreement"** means the agreement pursuant to which the Investors agree to purchase, on the Effective Date, any unsubscribed Rights Offering Equity.

FENNEMORE CRAIG JONES
VARGAS

LAS VEGAS

#4194901.11

**"Ballot(s)"** means each of the ballot forms distributed to each Holder of a Claim or Equity Interest entitled to vote to accept or reject the Noteholder Plan.

**"Bankruptcy Code"** the Bankruptcy Reform Act of 1978, Title 11, United States Code, as applicable to the Chapter 11 Case, as now in effect or hereafter amended, 11 U.S.C. §§ 101 *et seq.*

**"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Nevada, having jurisdiction over the Chapter 11 Case and, to the extent of the withdrawal of any reference under Section 157 of Title 28 of the United States Code and/or the General Order of the District Court pursuant to Section 151 of Title 28 of the United States Code, the United States District Court for the District of Nevada.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the general, local and chambers rules of the Bankruptcy Court.

**"Bar Date"** means: (i) April 30, 2012 for all Creditors (except governmental units) or (ii) June 19, 2012 for Creditors that are governmental units, as established by the Notice of Chapter 11 Bankruptcy Cases, Meeting of Creditors, and Deadlines, and appearing on the docket of the Chapter 11 Case as Dkt. 40.

**"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**"Cash"** means legal tender of the United States of America.

**"Causes of Action"** means, without limitation, any action, proceeding, agreement, Claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law. Causes of Action also includes: (i) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (ii) the right to object to Claims or Equity Interests; (iii) Avoidance Actions; (iv) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (v) any state law fraudulent transfer claim.

**"Chapter 11 Case"** means the above-captioned bankruptcy case of Ahern Rentals, Inc. pending in the Bankruptcy Court.

**"Claim"** means a **"claim,"** as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

**"Class"** means a category of Holders of Claims or Equity Interests pursuant to section 1122(a) of the Bankruptcy Code as classified Article III hereof.

**"Claims Objection Deadline"** means the date that is the first Business Day that is one hundred eighty (180) days after the Effective Date, subject to extension from time to time by order of the Bankruptcy Court.

**"Collateral"** means any property or interest in property of the Estate subject to a Lien or security interest to secure the payment or performance of a Claim, which Lien or security interest is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

**"Committee"** means the statutory committee of unsecured creditors appointed in the Chapter 11 Case by the Office of the United States Trustee pursuant to the Amended Notice of Appointment of Committee of Unsecured Creditors filed on January 13, 2012, and appearing on the docket of the Chapter 11 Case as Dkt. 204, as such Committee may be reconstituted from time to time.

**"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**"Confirmation Hearing"** means the duly noticed initial hearing held by the Bankruptcy Court to confirm the Noteholder Plan pursuant to section 1128 of the Bankruptcy Code, and any subsequent hearing held by the Bankruptcy Court from time to time to which the initial hearing is adjourned without further notice other than the announcement of the adjourned dates at the Confirmation Hearing.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming the Noteholder Plan pursuant to section 1129 of the Bankruptcy Code.

**"Creditor"** means a **"creditor,"** as defined in section 101(10) of the Bankruptcy Code.

**"Cure"** means the payment of Cash or the Distribution of other property by the Debtor (as the parties may agree or the Bankruptcy Court may order) that is necessary for the Debtor to cure monetary defaults under an executory contract or unexpired lease so as to permit the Debtor to assume that contract or lease under section 365(a) of the Bankruptcy Code.

**"D&O Liability Insurance Policies"** means all insurance policies of the Debtor or current or past officers, directors, and managers providing liability coverage for the Debtor and such officers, directors and/or managers.

**"Debtor"** means the **"Debtor,"** as defined in the introduction above.

**"Debtor's Disclosure Statement"** means the disclosure statement for the Debtor's Plan, as amended, supplemented or modified from time to time, describing the Debtor's Plan.

**"Debtor's Plan"** means the Debtor's Plan of Reorganization filed by the Debtor on November 30, 2012, either in its present form or as it may be amended, supplemented or modified from time to time, including all exhibits and schedules annexed thereto or referenced therein.

FENNEMORE CRAIG JONES VARGAS

LAS VEGAS

#4194901.11

**"DIP Lenders"** means the lenders, including all successors and assigns, to the Debtor pursuant to the DIP Loan Agreement.

**"DIP Loan"** means the borrowings by the Debtor pursuant to the DIP Loan Agreement and the DIP Loan/Cash Collateral Order.

**"DIP Loan Agents"** means Bank of America, National Association, in its capacity as Administrative Agent and Decision Agent, Wells Fargo Bank, National Association, in its capacity as Collateral Agent and Decision Agent under the DIP Loan Agreement and General Electric, as Decision Agent, under the DIP Loan Agreement.

**"DIP Loan Agreement"** means the Debtor-in-Possession Loan and Security Agreement, dated as of December 27, 2011, together with all amendments, modifications and supplements thereto, executed by, among others, the DIP Lenders, the Debtor and the DIP Loan Agents.

**"DIP Loan/Cash Collateral Motion"** means the Emergency Motion for Interim and Final Orders (i) Authorizing Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e), Use of Cash Collateral Pursuant to 11 U.S.C. § 363, and Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, (II) Approving Related Stipulation(s), and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c), filed on December 22, 2011, that provided for a refinancing of the First Lien Term Loan Revolving Credit Facility and appearing on the docket of the Chapter 11 Case as Dkt. 17.

**"DIP Loan/Cash Collateral Order"** means the Final Order entered on January 31, 2012, approving the DIP Loan/Cash Collateral Motion and the Majority Term Lender Cash Collateral Stipulation and appearing on the docket of the Chapter 11 Case as Dkt. 329.

**"DIP Loan Claim"** means any Claims arising under or related to the DIP Loan.

**"DIP Loan Collateral"** means the Collateral subject to the Lien under the DIP Loan Documents.

**"DIP Loan Documents"** means the DIP Loan Agreement, together with all other documents related to the DIP Loan and DIP Loan Claims, including the DIP Loan/Cash Collateral Order, and any and all other amendments, supplements, or modification to the foregoing.

**"DIP Loan Notes"** means the DIP Loan Notes issued by the Debtor pursuant to the DIP Loan Agreement.

**"Disallowed Claim"** means any Claim against the Debtor that has been disallowed, in whole or in part, by Final Order or written agreement between the Debtor and the Holder of such a Claim, to the extent of such disallowance.

**"Disbursing Agent"** means Reorganized Ahern or the Person or Persons chosen by the Proponents to make or facilitate Distributions pursuant to the Noteholder Plan; provided, however, that with respect to Second Lien Notes Claims, the Second Lien Indenture

Trustee shall act as the Disbursing Agent for Holders of Second Lien Notes Claims unless the Second Lien Indenture Trustee consents to direct Distributions with respect to such Claims through the facilities of DTC.

**"Disputed Claim"** means any Claim or any portion of a Claim against the Debtor that is not an Allowed Claim or a Disallowed Claim. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no proof of Claim has been timely filed, is a Disputed Claim and shall be resolved in accordance with Article VII hereof. Any Rejection Damages Claim is a Disputed Claim and shall be resolved in accordance with Article VII hereof.

**"Disputed Claims Reserve"** means the reserve on account of Disputed Claims.

**"Distribution"** means any distribution by the Debtor or Disbursing Agent to Holders of Allowed Claims, and, to the extent applicable, Equity Interests.

**"Distribution Date"** means the date, occurring as soon as practicable after the Effective Date, on which the Disbursing Agent first makes Distributions to Holders of Allowed Claims and any date thereafter on which the Disbursing Agent makes Distributions to Holders of Allowed Claims as provided in Article VI hereof.

**"DTC"** means the Depository Trust Company.

**"Effective Date"** means the first Business Day following the Confirmation Date on which (i) all conditions to the Effective Date in Article VIII(B) hereof have been satisfied or waived, (ii) Substantial Consummation of the Noteholder Plan has occurred, and (iii) the effectiveness of the Confirmation Order shall not be stayed and it shall be a Final Order.

**"Entity"** means a Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the U.S. Trustee, or any other entity.

**"Equity Interest"** means any share of common stock, preferred stock, membership interest or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest in the Debtor that existed immediately prior to the Effective Date.

**"Estate"** means as to the Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

**"Executory Contract"** means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**"Exit Financing Facility"** means a credit facility provided to Reorganized Ahern on the Effective Date established pursuant to the Exit Financing Facility Documents.

FENNEMORE CRAIG JONES VARGAS

LAS VEGAS

#4194901.11

**"Exit Financing Facility Agents"** means, collectively, the administrative agent and collateral agent with respect to the Exit Financing Facility Documents to be appointed prior to or on the Effective Date.

**"Exit Financing Facility Commitment Letter"** means [_____].

**"Exit Financing Facility Documents"** means agreements and related documents and instruments evidencing the new financing to be obtained by Reorganized Ahern as of the Effective Date, including revolving ABL credit, term credit and/or letters of credit as determined by Reorganized Ahern to be reasonably necessary to satisfy the DIP Loan Claims, the First Lien Term Loan Claims and support other payments required to be made under the Noteholder Plan, substantially in the form attached as an exhibit to the Noteholder Plan Supplement.

**"Exit Lenders"** means the banks, financial institutions and other lender parties to the Exit Financing Facility Documents from time to time, each in their capacity as such.

**"Final Order"** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, entered on the docket of such court, that has not been reversed, rescinded, stayed, modified or amended, that is in full force and effect, and as to which order or judgment: (i) the time to appeal, seek review or rehearing, or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending; or (ii) any appeal taken or petition for certiorari or request for reargument or further review or rehearing filed (a) has been resolved by the appellate court to which the order or judgment was appealed or from which review, rehearing or certiorari was sought or (b) has not yet been resolved by such appellate court, but such order is not stayed pending appeal; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Rule 7024 of the Bankruptcy Rules, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order.

**"Financial Projections"** means the projected financial information attached to the Noteholder Disclosure Statement.

**"First Lien Term Loan Agents"** means, collectively, Gleacher Products Corp., as successor to Bank of America, National Association, in its capacity as administrative agent, and Wells Fargo Bank, National Association, as successor to Wachovia Bank, National Association, in its capacity as collateral agent, under the First Lien Term Loan Credit Agreement.

**"First Lien Term Loan Claims"** means any and all Claims arising under, or related to, the First Lien Term Loan, including all accrued, unpaid interest and fees and costs allowable under section 506(b) of the Bankruptcy Code.

**"First Lien Term Loan Collateral"** means the Collateral subject to the Lien under the First Lien Term Loan Documents.

FENNEMORE CRAIG JONES VARGAS

LAS VEGAS

#4194901.11

**"First Lien Term Loan Credit Agreement"** means the Second Amended and Restated Loan and Security Agreement, dated as of January 8, 2010, which provided, in part, for the $95,000,000 First Lien Term Loan facility provided to the Debtor.

**"First Lien Term Loan Documents"** means the First Lien Term Loan Credit Agreement together with all other documents related to the First Lien Term Loan and any and all other amendments, supplements or modifications to the foregoing.

**"First Lien Term Loans"** means the first lien term loans issued by the Debtor pursuant to the First Lien Term Loan Credit Agreement.

**"General Unsecured Claim"** means Claim against the Debtor that arose or accrued prior to the Petition Date that is not an Administrative Claim, Insider Rejection Damages Claim, Other Priority Claim, Personal Injury Claim, Priority Tax Claim, Second Lien Notes Claim or a Secured Claim.

**"Holder"** means each Person that has an Equity Interest or a Claim.

**"Impaired"** means **"impaired,"** as defined in section 1124 of the Bankruptcy Code.

**"Insider"** means **"insider,"** as defined in section 101(31) of the Bankruptcy Code.

**"Insider Claim"** means any Claim or Cause of Action against the Debtor of any nature held by any Insider or Affiliate of the Debtor, including Insider Rejection Damages Claims, if any.

**"Insider Causes of Action"** means any action, proceeding, agreement, Claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, against any current or former Insider, insider (as defined in common or general corporate law), or Affiliate of the Debtor, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.

**"Insider Rejection Damages Claim"** means any Claim for damages allowed by the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code, or by other Final Order, related to the rejection of an Unexpired Lease of the Debtor, as lessee, and any Insider, as lessor or an Executory Contract between the Debtor and any Insider or Affiliate.

**"Insurance Policies"** means, collectively, all of the Debtor's insurance policies issued to the Debtor, including, but not limited to, the D&O Liability Insurance Policies, automobile liability policies, workers' compensation policies and general liability policies.

**"Intercreditor Agreement"** means that certain Intercreditor Agreement, dated as of August 18, 2005, as amended by Amendment No. 1 to Intercreditor Agreement dated as of December 23, 2009.

FENNEMORE CRAIG JONES VARGAS

LAS VEGAS

#4194901.11

**"Interest"** means any legal, equitable, contractual or other right of any Person in the ownership of the Debtor, whether or not transferable and whether or not reflected in a note or agreement that is not a Claim, and the legal, equitable, contractual or other rights of any Person to acquire or receive any of the foregoing that is not a Claim.

**"Interim Compensation Order"** means the Order Granting Motion for Administrative Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals, entered by the Bankruptcy Court on February 1, 2012 and appearing on the docket of the Chapter 11 Case as Dkt. 340.

**"Investors"** means Holders of Allowed Second Lien Notes Claims that are party to the Backstopped Rights Offering Agreement.

**"Liability Insurance Policies"** means the comprehensive liability insurance policies maintained by the Debtor with CNA Insurance Company and Lexington Insurance Company.

**"Lien"** means **"lien,"** as defined in section 101(37) of the Bankruptcy Code and, with respect to any Asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a perfected security interest, in respect of such Asset.

**"Litigation Claims"** means all rights, claims, torts, Liens, liabilities, obligations, actions, Causes of Action, Avoidance Actions, derivative actions, proceedings, debts, contracts, judgments, damages and demands whatsoever in law or in equity, whether known or unknown, contingent or otherwise, that the Debtor or its Estate may have against any Person, including but not limited to those listed in the Noteholder Plan Supplement.

**"Local Rules"** means the local, administrative and chambers rules of the Bankruptcy Court.

**"Majority Term Lender Cash Collateral Stipulation"** means the Stipulation between Debtor and Majority Term Lenders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 552 and Fed. R. Bankr. P. 4001(b) and (c) Regarding Debtor's Use of Term Lenders' Cash Collateral, Entry into DIP Agreement, and Adequate Protection, filed on January 27, 2012 and appearing on the docket of the Chapter 11 Case as Dkt. 319, as the same may be amended or modified.

**"Majority Term Lenders"** means Liberty Harbor Master Fund I, L.P., and Goldman Sachs Palmetto State Credit Fund, L.P., and any successors thereto or assigns thereof.

**"Management Equity Incentive Plan"** means the post-Effective Date management incentive compensation program that may be adopted and administered in the sole discretion of the New Board of Directors of Reorganized Ahern, which program shall be subject to a vesting schedule and other customary conditions, which may include up to 10% of the New Equity Interests, as determined by the New Board of Directors after the Effective Date.

FENNEMORE CRAIG JONES VARGAS

LAS VEGAS

#4194901.11

**"New Board of Directors"** means the initial board of directors of Reorganized Ahern. The identity of the New Board of Directors shall be set forth in the Noteholder Plan Supplement.

**"New Equity Interest"** means any share of common stock, preferred stock, membership interest or other instrument evidencing an ownership interest in Reorganized Ahern, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest in Reorganized Ahern that is issued by Reorganized Ahern in connection with the implementation of, and as authorized by, the Noteholder Plan, subject to dilution for the issuance of Rights Offering Equity Interests and New Warrants.

**"New Warrants"** means one or more tranches of warrants, pursuant to which the holder or holders thereof may exercise rights, pursuant to the terms of the New Warrant Agreement, to purchase up to 3% of the New Equity Interests in Reorganized Ahern, subject to dilution for the issuance of the Rights Offering Equity Interests subject to the terms and conditions of the Noteholder Plan.

**"New Warrant Agreement"** means the agreement to be entered into on the Effective Date providing for the issuance of the New Warrants, substantially in the form to be filed with the Noteholder Plan Supplement.

**"Noteholder Disclosure Statement"** means the Disclosure Statement for the Plan of Reorganization for Ahern Rentals, Inc. Proposed by Certain Holders of the 9¼% Senior Secured Notes Due 2013, which was approved by the Bankruptcy Court on [_____], 2013.

**"Noteholder Plan"** means this "**Noteholder Plan**" as defined in the introduction above.

**"Noteholder Plan Supplement"** means the compilation of documents, including Reorganized Ahern's Organizational Documents, the Warrant Agreement, employment agreements (if any), the Registration Rights Agreement, the Exit Financing Facility Commitment Letter, and any exhibits to the Noteholder Plan or Noteholder Disclosure Statement that are not included herewith. The Noteholder Plan Supplement will be filed with the Bankruptcy Court seven (7) days before the Voting Deadline.

**"Other Priority Claim"** means any accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Administrative Claims and Priority Tax Claims.

**"Other Secured Claim"** means any Secured Claim that existed on the Petition Date other than a First Lien Term Loan Claim or Second Lien Notes Claim.

**"Person"** means **"person,"** as defined in section 101(41) of the Bankruptcy Code.

**"Personal Injury Claim"** means any Claim for personal injuries or wrongful death that arose prior to the Petition Date and is subject to coverage under the Liability Insurance Policies.

**"Petition Date"** means December 22, 2011, the date on which the Debtor filed its voluntary petition commencing the Chapter 11 Case.

FENNEMORE CRAIG JONES VARGAS

LAS VEGAS

#4194901.11

**"Priority Tax Claim"** means a Claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

**"Pro Rata"** means, with reference to any Distribution on account of or in exchange for any Claim in any Class, the proportion that the amount of an Allowed Claim (numerator) bears to the aggregate amount of all Allowed Claims (denominator) in such Class upon the final resolution of all Disputed Claims.

**"Professional"** means a Person: (i) retained pursuant to a Final Order of the Bankruptcy Court in accordance with sections 327, 328, 363 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 363 or 331 of the Bankruptcy Code; or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**"Professional Fee Claim"** means a Claim for compensation and reimbursement submitted pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code of Persons: (i) employed pursuant to a Final Order of the Bankruptcy Court under sections 327, 328 or 1103 of the Bankruptcy Code; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code or by other Final Order, in each case, to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount) and after applying any retainer that has been provided to such Professional.  To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Allowed Professional Fees.

**"Proponents"** means the **"Proponents"**, as defined in the introduction above.

**"Proponents' Fees"** means the reasonable fees and expenses of the Proponents' legal, financial and operational advisors incurred by the Proponents in connection with the Chapter 11 Case through the Effective Date, including the fees and expenses of: (i) Bracewell & Giuliani LLP; (ii) Fennemore Craig Jones Vargas; (iii) Lewis and Roca LLP; (iv) Willkie Farr & Gallagher LLP; (v) Houlihan Lokey; (vi) Incline LLC; and (vii) any operational/industry advisor or other advisor engaged by the Proponents.

**"Record Date"** means [March 8], 2013, or the date that the order approving the Noteholder Disclosure Statement with respect to the Noteholder Plan is entered.

**"Registration Rights Agreement"** means the agreement between Reorganization Ahern and certain holders of New Equity Interests which will govern the registration rights of the New Equity Interests.

**"Reinstate"** or **"Reinstated"** or **"Reinstatement"** means (i) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code or (ii) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (a) curing any such default that occurred before or after the

Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (b) reinstating the maturity of such Claim as such maturity existed before such default; (c) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and (d) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Holder of such Claim; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence, prohibiting certain transactions or actions contemplated by the Noteholder Plan, or conditioning such transactions or actions on certain factors, shall not be required to be reinstated in order to accomplish reinstatement and shall be deemed cured on the Effective Date.

"**Rejection Claims Bar Date**" means the first to occur of (i) no later than the thirtieth (30th) day following the later of (a) the Confirmation Date and (b) entry of any order prior to the Confirmation Order approving the rejection of any Executory Contract or Unexpired Lease, or (ii) any other date established by order of the Bankruptcy Court .

"**Rejection Damages Claim**" means any Claim for damages allowed by the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code, or by other Final Order, related to the rejection of an Executory Contract or Unexpired Lease of the Debtor, other than an Insider Rejection Damages Claim.

"**Released Parties**" means, collectively, the (i) Debtor and its Estate, (ii) the Debtor's non-executive employees; (iii) Reorganized Ahern; (iv) the Proponents, and (v) each of the respective officers, directors, employees, members, affiliates, financial advisors, attorneys, Professionals, accountants, investment bankers, consultants, agents, and other representatives and advisors of the parties in (iii) and (iv) above.

"**Reorganized Ahern**" means the Debtor on or after the Effective Date, which shall be organized as a Delaware limited liability company.

"**Reorganized Ahern Bylaws**" means the bylaws (or similar corporate document) of Reorganized Ahern substantially in the form annexed to the Noteholder Plan Supplement.

"**Reorganized Ahern Certificate of Incorporation**" means the certificate of incorporation (or similar corporate document) of Reorganized Ahern substantially in the form annexed to the Noteholder Plan Supplement.

"**Reorganized Ahern Organizational Documents**" means, collectively, the Reorganized Ahern Certificate of Incorporation, the Reorganized Ahern Bylaws and the Reorganized Ahern Shareholders Agreement.

"**Reorganized Ahern Shareholders Agreement**" means the agreement between the shareholders of Reorganized Ahern setting forth the rights and obligations, including customary registration rights provisions, of Holders of Reorganized Ahern New Equity Interests, substantially in the form annexed to the Noteholder Plan Supplement.

**"Retained Causes of Action"** means any Causes of Action retained by Reorganized Ahern.

**"Rights Offering Equity Interests"** means any New Equity Interests that are issued in connection with the Backstopped Rights Offering.

**"Schedules"** means the schedules of assets and liabilities and any amendments thereto filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code.

**"SEC"** means the Securities and Exchange Commission.

**"Second Lien Agents"** means, collectively, the Second Lien Collateral Agent and Second Lien Indenture Trustee.

**"Second Lien Agents' Fees"** means any reasonable, unpaid fees of the Second Lien Agents, and reasonable, unpaid out-of-pocket costs and expenses, including reasonable fees and expenses of counsel, incurred by the Second Lien Agents through the Effective Date, except any such costs and expenses as may be attributable to the Second Lien Agents' negligence or willful misconduct.

**"Second Lien Collateral"** means the Collateral subject to the Lien under the Second Lien Loan Documents.

**"Second Lien Collateral Agent"** means (1) the Second Lien Indenture Trustee with respect to all Second Lien Collateral other than "Control Collateral" as defined in the Intercreditor Agreement, and (2) Wells Fargo Bank, National Association, as successor in interest to Wachovia Bank, National Association, with respect to all Control Collateral, each in its capacity as the collateral agent with respect to the Second Lien Notes or any successor thereto.

**"Second Lien Indenture"** means that certain 9¼% Senior Secured Notes Due 2013 Indenture, dated August 18, 2005, as amended by the First Supplemental Indenture dated December 23, 2009.

**"Second Lien Indenture Trustee"** means U.S. Bank, National Association, as successor trustee to Wells Fargo Bank, National Association, in its capacity as the indenture trustee with respect to the Second Lien Indenture or any successor thereto.

**"Second Lien Notes Documents"** means Second Lien Indenture, together with all other documents related to the Second Lien Notes, together with any and all other amendments, supplements, or modification to the foregoing.

**"Second Lien Notes Claims"** means all Claims arising under or in any way related to the Second Lien Notes. The aggregate amount of the Second Lien Notes Claims as of the Petition Date is $267.7 million.

**"Second Lien Notes"** means the 9¼% Senior Secured Notes Due 2013 issued pursuant to the Second Lien Indenture.

FENNEMORE CRAIG JONES
VARGAS

LAS VEGAS

#4194901.11

"**Secured Claim**" means a Claim that is secured by a Lien against property of the Estate to the extent of the value of any interest in such property of the Estate securing such Claim as of the Petition Date, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court Final Order, or to the extent of the amount of such Claim subject to setoff in accordance with section 553 of the Bankruptcy Code, in either case as determined pursuant to section 506(a) of the Bankruptcy Code.

"**Substantial Consummation**" means "**substantial consummation,**" as defined in section 1101(2) of the Bankruptcy Code.

"**U.S. Trustee**" means the Office of the United States Trustee for the District of Nevada.

"**Unexpired Lease**" means a lease of non-residential real property to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"**Unimpaired**" means not Impaired.

"**Voting Deadline**" means the deadline provided for in the order approving the Noteholder Disclosure Statement for the receipt of Ballots voting to accept or reject the Noteholder Plan, as the same may be extended by the Proponents.

## B.    Rules Of Interpretation And Computation Of Time

1.    **Rules Of Interpretation.**  For purposes of the Noteholder Plan only: (a) any reference in the Noteholder Plan to a contract, instrument, release, or other agreement or documents being in particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Noteholder Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in the Noteholder Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to the Noteholder Plan; (d) the words "herein," "hereof," "hereto," and "hereunder" refer to the Noteholder Plan in its entirety rather than to a particular portion of the Noteholder Plan; (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Noteholder Plan; and (f) the rules of construction and definitions set forth in sections 101 and 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply unless otherwise expressly provided.  All Exhibits, Annexes and/or Noteholder Plan Schedules attached hereto are incorporated into and are a part of the Noteholder Plan as if set forth in full herein.

2.    **Computation Of Time.**  In computing any period of time prescribed or allowed by the Noteholder Plan, unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) will apply.

# ARTICLE II.
## TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Claims against the Debtor set forth in this Article II are not classified within any Classes.  Holders of such Claims are not entitled to vote on the Noteholder Plan.  The treatment of the Claims set forth below is consistent with the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.

### A.    Administrative Claims

Except with respect to Administrative Claims that are Professional Fee Claims, each Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed Administrative Claim, on the latest of: (i) the Distribution Date; (ii) the date on which its Administrative Claim becomes an Allowed Administrative Claim; (iii) the date on which its Administrative Claim becomes payable under any agreement with the Debtor relating thereto; (iv) in respect of liabilities incurred in the ordinary course of business, the date upon which such liabilities are payable in the ordinary course of the Debtor's business, consistent with past practice; and (v) such other date as may be agreed upon between the Holder of such Allowed Administrative Claim and the Debtor or Reorganized Ahern, as the case may be, (a) Cash equal to the unpaid portion of its Allowed Administrative Claim or (b) such other treatment as to which the Holder of such Allowed Administrative Claim may agree.

### B.    DIP Loan

Except to the extent that Reorganized Ahern and the Holder of a DIP Loan Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of each DIP Loan Claim, each DIP Loan Claim shall be paid in full in Cash by Reorganized Ahern on the Effective Date.

### C.    Professional Fee Claims

Professionals or other Persons asserting a Professional Fee Claim for services rendered before the Effective Date must file and serve on the Debtor and such other Persons who are designated by the Bankruptcy Rules, the Confirmation Order, the Interim Compensation Order or other Final Order of the Bankruptcy Court an application for final allowance of such Professional Claim for accrued professional compensation no later than the Administrative Claims Bar Date. Objections to any Claim for accrued professional compensation must be filed and served on Reorganized Ahern and the Office of the U.S. Trustee and the requesting party no later than the Administrative Claims Objection Deadline.  The Holder of an Allowed Professional Fee Claim shall receive in full satisfaction, settlement, release and discharge of and in exchange for its Allowed Professional Fee Claim Cash equal to the unpaid portion of its Allowed Professional Fee Claim.

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and Reorganized Ahern may employ and pay any counsel or other advisors for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further Final Order or approval of the Bankruptcy Court.

FENNEMORE CRAIG JONES
VARGAS

LAS VEGAS

#4194901.11

The Proponents' Fees and the Second Lien Agents' Fees shall be paid in full (or reimbursed if previously paid by the Proponents, as the case may be) in cash on the Effective Date, without the need to obtain further approval of the Bankruptcy Court or to comply with sections 327 through 331 and 1103 of the Bankruptcy Code or any U.S. Trustee guidelines, as applicable.

**D.** **Priority Tax Claims**

Each Holder of an Allowed Priority Tax Claim, if any, will, in full and final satisfaction of such Claim, be paid in full (or be treated in compliance with section 1129(a)(9)(C) of the Bankruptcy Code) by Reorganized Ahern on the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first Business Day following the fourteenth (14th) day after the date on which an order allowing such Claim becomes a Final Order; and (iv) such date as is agreed to by the Holder of such Claim and the Debtor or Reorganized Ahern, as the case may be.

## ARTICLE III.
### TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

**A.** **Summary Of Classification**

Pursuant to the Noteholder Plan and in accordance with section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors (except Administrative Claims, Professional Fee Claims and Priority Tax Claims) and Equity Interests are placed in the Classes described below. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in such other Classes to the extent that any remainder of the Claim qualifies within the definition of such other Classes. A Claim is also classified in a particular Class only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date. Notwithstanding the foregoing, any Holder of a Claim in the Classes below described as "entitled to vote" to which no objection to the Claim has been filed on or before the commencement of the Confirmation Hearing or such other date as the Bankruptcy Court determines, shall be entitled to vote to accept or reject the Noteholder Plan.

FENNEMORE CRAIG JONES VARGAS

LAS VEGAS

#4194901.11

| Class | Claim | Treatment | Voting Rights |
|-------|-------|-----------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Deemed to Accept |
| Class 2 | Other Priority Claims | Unimpaired | Deemed to Accept |
| Class 3 | First Lien Term Loan Claims | Unimpaired | Deemed to Accept |
| Class 4 | Second Lien Notes Claims | Impaired | Entitled to Vote |
| Class 5 | Insider Claims | Impaired | Entitled to Vote |
| Class 6 | Personal Injury Claims | Unimpaired | Deemed to Accept |
| Class 7 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| Class 8 | Equity Interests | Impaired | Entitled to Vote |

### B. Acceptance By Impaired Class

Classes 4, 5 and 8 are Impaired under the Noteholder Plan. Any one of the Impaired Classes of Claims shall have accepted the Noteholder Plan if (i) Holders of at least two-thirds (2/3) in amount of Allowed Claims actually voting in such Impaired Class have voted to accept the Noteholder Plan and (ii) Holders of more than one-half (1/2) in number of Allowed Claims actually voting in such Class have voted to accept the Noteholder Plan, in each case not counting the vote of any Insider or any Holder whose vote is designated under section 1126(e) of the Bankruptcy Code. The Impaired Class of Equity Interests shall have accepted the Noteholder Plan if Holders of at least two-thirds (2/3) in amount of the Equity Interests actually voting in such Impaired Class have voted to accept the Noteholder Plan, or any Holder whose vote is designated under section 1126(e) of the Bankruptcy Code.

In the event of a controversy as to whether any Class of Claims or Equity Interests is Impaired under the Noteholder Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

### C. Cramdown

To the extent necessary, the Proponents will request confirmation of the Noteholder Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. The Proponents reserve the right to modify the Noteholder Plan to the extent, if any, that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

**D.     Treatment Of Claims And Equity Interests**

**1.     Class 1: Other Secured Claims**

*Classification*: Class 1 consists of Other Secured Claims against the Debtor.

*Treatment*: Unless the Holder of an Allowed Other Secured Claim agrees to a different treatment, on the Effective Date, or as soon as reasonably practicable, each Holder of an Allowed Other Secured Claim shall (a) have its Allowed Other Secured Claim Reinstated, or (b) receive, in full satisfaction, settlement, release and discharge of and in exchange for, such Allowed Other Secured Claim, either (i) Cash in the full amount of such Allowed Other Secured Claim, including any postpetition interest accrued pursuant to section 506(b) of the Bankruptcy Code, (ii) the proceeds of the sale or disposition of the Collateral securing such Allowed Other Secured Claim to the extent of the value of the Holder's secured interest in such Collateral, (iii) the Collateral securing such Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (iv) such other Distribution as necessary to satisfy the requirements of section 1129 of the Bankruptcy Code. The manner and treatment of each Allowed Other Secured Claim shall be determined by the Noteholders and transmitted, in writing, to the Holder of such Other Secured Claim on or prior to the Effective Date. If the Allowed Other Secured Claim of a Holder exceeds the value of the Collateral that secures it, such Holder will have an Allowed Other Secured Claim equal to the Collateral's value and an Allowed General Unsecured Claim for the deficiency.

*Voting*: Allowed Other Secured Claims are Unimpaired, and Holders of Allowed Other Secured Claims are conclusively deemed to have accepted the Noteholder Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Noteholder Plan.

**2.     Class 2: Other Priority Claims**

*Classification*: Class 2 consists of the Other Priority Claims against the Debtor.

*Treatment*: Unless the Holder of an Allowed Other Priority Claim agrees to a different treatment, each Holder of an Allowed Other Priority Claim, if any, shall, in full satisfaction, settlement, release and discharge of and in exchange for Allowed Other Priority Claims, be paid in full in Cash by Reorganized Ahern upon the latest of: (a) the Effective Date or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court; (c) the first Business Day following the fourteenth (14th) day after such Claim is Allowed; and (d) such date as agreed upon by the Holder of such Claim and the Debtor or Reorganized Ahern.

*Voting*: Allowed Other Priority Claims are Unimpaired, and Holders of Allowed Other Priority Claims are conclusively deemed to have accepted the Noteholder Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Noteholder Plan.

### 3. Class 3: First Lien Term Loan Claims

*Classification*: Class 3 consists of the First Lien Term Loan Claims against the Debtor.

*Treatment*: The First Lien Term Loan Claims are hereby Allowed Claims, not subject to offset, defense, counterclaim, reduction, or credit of any kind whatsoever. Unless the Holder of an Allowed Frist Lien Term Loan Claim agrees to a different treatment, each Holder of an Allowed Fist Lien Term Loan Claim shall, in full satisfaction, settlement, release and discharge of and in exchange for the Allowed First Lien Term Loan Claim, be paid in full in Cash by Reorganized Ahern upon the latest of: (a) the Effective Date or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court; and (c) such date as agreed upon by the Holder of such Claim and the Debtor or Reorganized Ahern.

*Voting*: Allowed First Lien Term Loan Claims are Unimpaired, and Holders of Allowed First Lien Term Loan Claims are conclusively deemed to have accepted the Noteholder Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed First Lien Term Loan Claims are not entitled to vote to accept or reject the Noteholder Plan.

### 4. Class 4: Second Lien Notes Claims

*Classification*: Class 4 consists of the Second Lien Notes Claims against the Debtor.

*Treatment*: The Second Lien Notes Claims are hereby Allowed Claims, not subject to offset, defense, counterclaim, reduction, or credit of any kind whatsoever. Unless the Holder of an Allowed Second Lien Notes Claim agrees to a different treatment, each Holder of an Allowed Second Lien Notes Claim shall, in full satisfaction, settlement, release and discharge of and in exchange for the Allowed Second Lien Notes Claim, receive its Pro Rata share of each of the New Equity Interests of Reorganized Ahern, subject only to dilution from: (a) the issuance of New Equity Interests in connection with the Backstopped Rights Offering, (b) the exercise of New Warrants of Reorganized Ahern issued to Holders of existing Equity Interests in the Debtor; and (c) New Equity Interests issued in connection with a Management Equity Incentive Plan. Distributions with respect to Allowed Second Lien Notes Claims shall occur upon the later of: (i) the Effective Date or as soon thereafter as practicable; and (ii) such date as may be fixed by the Bankruptcy Court. All such Distributions shall be made to the Second Lien Indenture Trustee unless the Second Lien Indenture Trustee consents to the direct Distribution to Holders of Second Lien Notes Claims through DTC.

*Voting*: Allowed Second Lien Notes Claims are Impaired, and Holders of Allowed Second Lien Notes Claims are entitled to vote to accept or reject the Noteholder Plan.

### 5. Class 5: Insider Claims

*Classification*: Class 5 consists of the Insider Claims against the Debtor.

*Treatment*: Unless the Holder of an Allowed Insider Claim agrees to a different treatment, each Holder of an Allowed Insider Claim shall, in full satisfaction, settlement, release, and

discharge of, and in exchange for the Allowed Insider Claim, be paid in Cash by Reorganized Ahern in semi-annual payments over a period of 2 years with interest accruing on such Allowed Claim at a rate to be determined by the Bankruptcy Court, upon the later of: (a) the resolution of all litigation relating to, or arising out of Insider Causes of Action (pursuant to one or more Final Orders); (b) resolution of any Avoidance Actions against an Insider who is a Holder of an Insider Claim; and (c) such other date as may be fixed by the Bankruptcy Court.

*Voting*: Allowed Insider Claims are Impaired, and Holders of Allowed Insider Claims are entitled to vote to accept or reject the Noteholder Plan.

### 6. Class 6: Personal Injury Claims

*Classification*: Class 6 consists of the Personal Injury Claims against the Debtor.

*Treatment*: Unless the Holder of a Personal Injury Claim agrees to a different treatment, each Holder of an Allowed Personal Injury Claim shall, in full satisfaction, settlement, release, and discharge of, and in exchange for the Allowed Personal Injury Claim, be paid in full in Cash upon the Effective Date, or as soon as reasonably practicable thereafter, by Reorganized Ahern; provided that no Distributions shall be made on account of Allowed Personal Injury Claims until the insurance coverage with respect to such Allowed Personal Injury Claims has been exhausted.

*Voting*: Allowed Personal Injury Claims are Unimpaired, and Holders of Allowed Personal Injury Claims are conclusively deemed to have accepted the Noteholder Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Personal Injury Claims are not entitled to vote to accept or reject the Noteholder Plan.

### 7. Class 7: General Unsecured Claims

*Classification*: Class 7 consists of the General Unsecured Claims against the Debtor.

*Treatment*: Unless the Holder of a General Unsecured Claim agrees to a different treatment, each Holder of an Allowed General Unsecured Claim shall, in full satisfaction, settlement, release, and discharge of, and in exchange for the Allowed General Unsecured Claim, be paid in full in Cash by Reorganized Ahern upon the Effective Date, or as soon as reasonably practicable thereafter.

*Voting*: Allowed General Unsecured Claims are Unimpaired, and Holders of Allowed General Unsecured Claims are conclusively deemed to have accepted the Noteholder Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed General Unsecured Claims are not entitled to vote to accept or reject the Noteholder Plan.

### 8. Class 8: Equity Interests

*Classification*: Class 8 consists of the Equity Interests in the Debtor.

*Treatment*: Upon the Effective Date, Holders of existing Equity Interests who vote in favor of the Noteholder Plan shall receive their Pro Rata Distribution of the New

Warrants. Holders of existing Equity Interests who vote in favor of the Noteholder Plan shall be deemed by casting such vote to have agreed not to compete, directly or indirectly with Reorganized Ahern's business or to solicit, directly or indirectly, any employee of the Debtor or Reorganized Ahern for a period of two years after the Effective Date. Holders of existing Equity Interests who do not vote in favor of the Noteholder Plan shall not receive any distribution and shall not retain any property or Interest in Reorganized Ahern or any of its assets or properties.

Distributions of the New Warrants to Holders of Equity Interests shall be made upon the later of: (a) the resolution of all litigation relating to, or arising out of Insider Causes of Action and Avoidance Actions (pursuant to one or more Final Orders); and (b) such other date as may be fixed by the Bankruptcy Court.

*Voting*: Equity Interests are Impaired, and Holders of existing Equity Interests are entitled to vote to accept or reject the Noteholder Plan.

### E.    Allowed Claims

Notwithstanding any provision herein to the contrary, the Debtor and/or Reorganized Ahern shall only make Distributions to Holders of Allowed Claims. No Holder of a Disputed Claim will receive any Distribution on account thereof unless and until and only to the extent that its Disputed Claim becomes an Allowed Claim. In accordance with section 502(d) of the Bankruptcy Code, no Holder of a Claim will receive any Distribution on account thereof to the extent such Holder is a transferee of a voidable transfer as provided therein.

### F.    Postpetition Interest

In accordance with section 502(b)(2) of the Bankruptcy Code, the amount of all Claims against the Debtor shall be calculated as of the Petition Date. Except as otherwise explicitly provided herein, in a Final Order of the Bankruptcy Court or in a section of the Bankruptcy Code, no Holder of a Claim shall be entitled to or receive postpetition interest.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    Noteholder Plan Funding

Unless otherwise set forth herein, Cash payments under the Noteholder Plan shall be funded from Cash on hand, borrowings under the Exit Financing Facility and the proceeds of the Backstopped Rights Offering.

### B.    Reorganized Ahern

Upon the Effective Date, Reorganized Ahern shall be converted from a Nevada corporation to a Delaware limited liability company. On or before the Effective Date, the Reorganized Ahern Organizational Documents shall be executed and, to the extent required, the Reorganized Ahern Organizational Documents shall (i) include, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code; and (ii) to the extent

necessary or appropriate, include such provisions as may be needed to effectuate and consummate the Noteholder Plan and the transactions contemplated herein. After the Effective Date, Reorganized Ahern shall be responsible for the preparation of all reports, tax returns and other governmental filings required to be filed by the Debtor and Reorganized Ahern and all obligations related thereto.

### C. Additional Reorganized Ahern Provisions

The Reorganized Ahern Organizational Documents, and resolutions or similar documents related to the formation and governance of Reorganized Ahern under the Noteholder Plan, shall be subject to applicable bankruptcy and/or state law.

### D. New Financing

On the Effective Date, (a) the Exit Financing Facility, together with new promissory notes and guarantees evidencing the obligations of Reorganized Ahern thereunder, (b) the Backstopped Rights Offering Agreement, and (c) and all other documents, instruments, mortgages, and agreements to be entered into, delivered, or confirmed thereunder on the Effective Date, shall become effective. The obligations incurred by Reorganized Ahern pursuant to the Exit Financing Facility and related documents shall be paid as set forth in the Exit Financing Facility Documents. The obligations incurred by Reorganized Ahern pursuant to the Backstopped Rights Offering shall be paid as set forth in the Backstopped Rights Offering Agreement.

### E. Effective Date Events

On the Effective Date, or as soon as reasonably practicable thereafter: (i) the DIP Loan Notes, First Lien Term Loans and Second Lien Notes shall be cancelled and extinguished and of no further force or effect except as set forth below; (ii) the Equity Interests of the Debtor shall be cancelled and extinguished and be of no further force or effect; (iii) Reorganized Ahern shall execute and deliver the Exit Financing Facility Documents to the Exit Financing Facility Agents; (iv) Reorganized Ahern or the Distribution Agent shall deliver the New Equity Interests and Rights Offering Interests of Reorganized Ahern in accordance with the provisions of the Noteholder Plan and the Backstopped Rights Offering Agreement; and (iv) the DIP Loan Documents, the First Lien Term Loan Documents and the Second Lien Notes Documents shall be of no further effect except as set forth below.

The DIP Loan Documents, the First Lien Term Loan Documents and the Second Lien Notes Documents will continue in effect solely for the purposes of: (i) allowing the DIP Loan Agent, First Lien Term Loan Agents and Second Lien Indenture Trustee, to receive the Distributions required to be made to them or at their direction pursuant to the Noteholder Plan and/or the DIP Loan Documents, the First Lien Term Loan Documents and the Second Lien Notes Documents, and (ii) allowing and preserving the rights of the Second Lien Agents to (a) make Distributions in satisfaction of Allowed Second Lien Notes Claims, (b) exercise any applicable charging liens against any such Distributions, and (c) seek and obtain compensation and reimbursement for any fees, expenses (including attorney's fees) or indemnity to the extent permitted by the Second Lien Notes Documents. From and after the Effective Date, the Second Lien Agents will have no duties or obligations under the Second Lien Notes Documents other than to make Distributions.

### F.   Post-Effective Date Officers And Directors Of Reorganized Ahern

On the Effective Date, the term of each member of the current board of directors of the Debtor shall automatically expire.   The New Board of Directors of Reorganized Ahern of Reorganized Ahern shall be disclosed in the Noteholder Plan Supplement.   Unless otherwise set forth in the Noteholder Plan Supplement, the current officers and management team of the Debtor shall be entitled to maintain their current positions.

### G.   No Corporate Action Required

As of the Effective Date: (i) the adoption, execution, delivery and implementation or assignment of all contracts, leases, instruments, releases and other agreements related to or contemplated by the Noteholder Plan; and (ii) the other matters provided for under or in furtherance of the Noteholder Plan involving corporate action to be taken by or required of the Debtor, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without further order of the Bankruptcy Court or any requirement of further action by Reorganized Ahern's Board of Directors or officers of the Debtor.   In particular, the adoption of the Reorganized Ahern Organizational Documents, the selection of directors and officers of the Debtor or Reorganized Ahern, and all other actions contemplated by or described in the Noteholder Plan with respect thereto, shall be authorized and approved and be binding and in full force and effect in all respects (subject to the provisions of the Noteholder Plan and the Confirmation Order), in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule (other than filing such organizational documents with the applicable governmental unit as required by applicable law) or the vote, consent, authorization, or approval of any Person.   Notwithstanding the forgoing, Reorganized Ahern shall take all action required to effectuate the Exit Financing Facility Documents and any other action required to implement the Noteholder Plan.

### H.   Effectuation Of Transactions

On the Effective Date, the appropriate officers of the Debtor and Reorganized Ahern, as applicable, and members of the applicable Board of Directors are authorized to issue, execute, and deliver the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions, and instruments contemplated by or described in the Noteholder Plan in the name of and on behalf of the Debtor and Reorganized Ahern, and to otherwise fully consummate the transactions contemplated by the Noteholder Plan, in each case without further notice to or Final Order of the Bankruptcy Court, act or action under applicable law, regulation, Final Order, or rule or any requirement of further action, vote, or other approval or authorization by any Person.

### I.   Filing Of Noteholder Plan And Confirmation Order

To the extent required by applicable law, on the Effective Date a certified copy of the Noteholder Plan and the Confirmation Order shall be filed.   The Debtor, from the Confirmation Date until the Effective Date, is authorized and directed to take any action or carry out any proceeding necessary, if any, to effectuate the Noteholder Plan pursuant to applicable law.

### J. Vesting Of Assets In Reorganized Ahern

Except as otherwise provided in the Noteholder Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in the Debtor's estate, including all Causes of Action, and any property acquired by the Debtor pursuant to the Noteholder Plan shall vest in Reorganized Ahern free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens, if any, granted to secure the repayment of the Exit Financing Facility, and any Liens relating to Secured Claims that are Reinstated ). On and after the Effective Date, Reorganized Ahern may operate its business and may use, acquire, or dispose of property and compromise or settle any Retained Causes of Action or interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### ARTICLE V.
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Assumption And Rejection Of Executory Contracts And Unexpired Leases

Any Executory Contract or Unexpired Lease that: (i) has not expired by its own terms on or prior to the Effective Date; (ii) has not been assumed or rejected by the Debtor during the pendency of the Chapter 11 Case; (iii) is not listed in the Noteholder Plan Supplement as Executory Contracts or Unexpired Leases to be rejected (which may be modified and amended up to the date the Bankruptcy Court enters the Confirmation Order); and (iv) is not the subject of a pending motion to reject such Executory Contract or Unexpired Lease, shall be deemed assumed by the Debtor as of immediately prior to the Effective Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such assumption pursuant to section 365(a) and 1123 of the Bankruptcy Code. Any Executory Contract or Unexpired Lease listed in the Noteholder Plan Supplement as an Executory Contract or Unexpired Lease to be rejected by the Debtor shall be deemed rejected by the Debtor as of immediately prior to the Effective Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejection pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

Upon the Effective Date, each counterparty to an assumed Executory Contract or Unexpired Lease listed shall be deemed to have consented to assumption contemplated by section 365(c)(1)(B) of the Bankruptcy Code, to the extent such consent is necessary for such assumption. To the extent applicable, all Executory Contracts or Unexpired Leases of Reorganized Ahern assumed pursuant to this Article V shall be deemed modified such that the transactions contemplated by the Noteholder Plan shall not be a "change of control," however such term may be defined in the relevant Executory Contract or Unexpired Lease and any required consent under any such Executory Contract or Unexpired Lease shall be deemed satisfied by entry of the Confirmation Order. Also, to the extent applicable, all Executory Contracts or Unexpired Leases of the Debtor assumed pursuant to this Article V shall be assigned to Reorganized Ahern on the Effective Date, and such assignment shall not be a "change of control," however such term may be defined in the relevant Executory Contract or Unexpired Lease, and any required consent under any such Executory Contract or Unexpired Lease shall be deemed satisfied by entry of the Confirmation Order.

FENNEMORE CRAIG JONES VARGAS

LAS VEGAS

#4194901.11

Unless otherwise specified on the Noteholder Plan Supplement, each executory contract and unexpired lease listed or to be listed on the Noteholder Plan Supplement shall include modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed on the Noteholder Plan Supplement.

Notwithstanding anything contained in the Noteholder Plan to the contrary, unless subject to a motion for approval or rejection that has been filed and served prior to the Confirmation Date, all of the Debtor's insurance policies and any agreements, documents or instruments relating thereto, shall be treated as executory contracts under the Noteholder Plan and shall be assumed pursuant to the Noteholder Plan, effective as of the Effective Date. Nothing contained in this paragraph shall constitute or be deemed a waiver of any Cause of Action that the Debtor may hold against any Entity, including, without limitation, the insurer, under any of the Debtor's insurance policies.

### B. Cure Of Defaults

The Debtor or Reorganized Ahern shall Cure any defaults respecting each Executory Contract or Unexpired Lease assumed pursuant to this Article V upon the latest of (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court or agreed upon by the Debtor, and after the Effective Date, Reorganized Ahern; and (iii) the first Business Day following the fourteenth (14th) day after the entry of a Final Order resolving any dispute regarding (a) a Cure amount, (b) the ability of the Debtor or Reorganized Ahern to provide adequate assurance of future performance under the Executory Contract or Unexpired Lease assumed pursuant to the Noteholder Plan in accordance with section 365(b)(1) of the Bankruptcy Code, or (c) any other disputed matter pertaining to assumption, assignment or the Cure of a particular Executory Contract or an Unexpired Lease; provided, however, that upon resolution of a dispute over a Cure amount, Reorganized Ahern may reject the Executory Contract or Unexpired Lease notwithstanding a previous listing as assumed. The proposed Cure amounts, if any, that will be paid as provided by above will be listed in the Noteholder Plan Supplement (which may be supplemented and amended up to and including the commencement of the Confirmation Hearing).

### C. Objection To Cure Amounts

Any party to an Executory Contract or Unexpired Lease who objects to the Cure amounts listed in the Noteholder Plan Supplement must file and serve an objection on the Debtor's counsel no later than the deadline set by the Bankruptcy Court for filing Noteholder Plan objections. Failure to file and serve a timely objection shall be deemed consent to the Cure amounts listed in the Noteholder Plan Supplement. Any Cure Amounts shall be the responsibility of Reorganized Ahern. If there is a dispute regarding: (i) the amount of any Cure payment; (ii) the ability of Reorganized Ahern to provide "adequate assurance of future performance" under the Executory Contract or Unexpired Lease to be assumed or assigned; or (iii) any other matter pertaining to assumption, the Cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of an order resolving the dispute and approving the assumption.

### D. Confirmation Order

The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumptions described in this Article V, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. Notwithstanding the foregoing, if, as of the date the Bankruptcy Court enters the Confirmation Order, there is pending before the Bankruptcy Court a dispute concerning the Cure amount or adequate assurance for any particular Executory Contract or Unexpired Lease (or if the time period for a non-Debtor to object to the Cure has not yet lapsed), the assumption of such Executory Contract or Unexpired Lease shall be effective as of the date the Bankruptcy Court enters an order resolving any such dispute and authorizing assumption by the Debtor.

### E. Rejection Claims Bar Date

All proofs of Claims with respect to Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be filed on or before the Rejection Claims Bar Date. Any Claim not filed within such time shall be forever barred.

### ARTICLE VI.
### PROVISIONS GOVERNING DISTRIBUTIONS

### A. Distributions

Except as otherwise explicitly provided for in the Noteholder Plan, the Disbursing Agent shall be responsible for making Distributions described in the Noteholder Plan. Except as otherwise provided in the Noteholder Plan or the Confirmation Order, all Cash necessary for Reorganized Ahern to make payments pursuant to the Noteholder Plan shall be obtained from a combination of: (i) existing Cash balances and the operations of the Debtor and Reorganized Ahern, (ii) Cash from the Exit Financing Facility; and (iii) Cash from the Backstopped Rights Offering.

### B. Timing And Calculation Of Amounts To Be Distributed

Except as otherwise provided in the Noteholder Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, on the next Distribution Date or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtor shall receive the full amount of the Distributions that the Noteholder Plan provides for Allowed Claims in the applicable Class and in the manner provided herein. All Distributions provided for in the Noteholder Plan shall be made only to the extent permitted by applicable law. In the event that any payment or act under the Noteholder Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof. Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the Distributions provided for herein, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

### C. Rights And Powers Of Disbursing Agent

The Disbursing Agent shall be empowered to: (i) affect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Noteholder Plan; (ii) make all Distributions contemplated hereby; (iii) employ Professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by an order of the Bankruptcy Court, pursuant to the Noteholder Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof. The Disbursing Agent shall be deemed to hold all property to be distributed hereunder in trust for the Persons entitled to receive the same. The Disbursing Agent shall not hold an economic or beneficial interest in such property. Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent from and after the Effective Date, including, without limitation, reasonable fees and expenses of counsel, shall be paid in Cash by Reorganized Ahern without further order of the Bankruptcy Court within twenty (20) days of receipt of an invoice by Reorganized Ahern. In the event that Reorganized Ahern objects to the payment of such invoice for post-Effective Date fees and expenses, in whole or in part, and the parties cannot resolve such objection after good faith negotiation, the Bankruptcy Court shall retain jurisdiction to make a determination as to the extent to which the invoice shall be paid by Reorganized Ahern.

With respect to a Holder of a Claim whose Distribution is governed by an agent or other agreement which is administered by an indenture trustee, agent or servicer, such Distributions shall be deposited with the appropriate agent or servicer, who shall then deliver such Distributions to Holders of Claims in accordance with the provisions of the Noteholder Plan and the terms of the relevant indenture or other governing agreement; provided, however, that Distributions to the Disbursing Agent (other than the Debtor or Reorganized Ahern) under the Noteholder Plan will be deemed payment in full, regardless of whether such agent (other than the Debtor or Reorganized Ahern) ultimately distributes such Distribution to the appropriate Claim or Equity Interest Holder.

From and after the Effective Date, the Disbursing Agent shall be exculpated by all Persons and Entities, including, without limitation, Holders of Claims and Equity Interests and other parties in interest, from any and all Claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Noteholder Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Noteholder Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct of such Disbursing Agent. No Holder of a Claim or an Equity Interest or other party in interest shall have or pursue any Claim or Cause of Action against the Disbursing Agent for making payments in accordance with the Noteholder Plan or for implementing the provisions of the Noteholder Plan.

### D. Providing For Claims Payments

Distributions to Holders of Allowed Claims shall be made by the Disbursing Agent: (i) at the addresses set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such Holders if no proof of Claim is filed or if the Debtor has not been notified of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of Claim; or (iii) at the

FENNEMORE CRAIG JONES VARGAS

LAS VEGAS

#4194901.11

addresses reflected in the Schedules if no proof of Claim has been filed and the Disbursing Agent has not received a written notice of a change of address. If the Second Lien Indenture Trustee consents to direct Distributions to Holders of Second Lien Notes Claims, such Distributions shall be made through the facilities of DTC. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Disbursing Agent is notified of such Holder's then-current address, at which time all returned Distributions shall be made to such Holder without interest. Amounts in respect of undeliverable Distributions made through the Disbursing Agent shall be returned to Reorganized Ahern until such Distributions are claimed. All claims for undeliverable Distributions shall be made on or before the second (2nd) anniversary of the Effective Date. After such date, all unclaimed property shall revert to Reorganized Ahern and the Claim of any Holder or successor to such Holder with respect to such property shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary. Nothing contained in the Noteholder Plan shall require Reorganized Ahern or the Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

### E. Means Of Cash Payments

Payments of Cash made pursuant to the Noteholder Plan shall be in U.S. dollars and shall be made, at the option and in the discretion of the Debtor or the Disbursing Agent, as the case may be, by (i) checks drawn on, or (ii) wire transfer from, a domestic bank selected by the Debtor or the Disbursing Agent, as the case may be. Cash payments to foreign Creditors may be made, at the option of the Debtor or the Disbursing Agent, in such funds and by such means as are necessary or customary in the applicable foreign jurisdiction.

### F. Time Bar To Cash Payments

Checks issued by the Disbursing Agent on account of Allowed Claims shall be null and void if not negotiated within 180 days from and after the date of issuance thereof. Requests for re-issuance of any check shall be made directly to the Disbursing Agent by the Holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such a voided check shall be made on or before the later of (a) the fifth (5th) anniversary of the Effective Date or (b) 180 days after the date of issuance of such check, if such check represents a final Distribution hereunder on account of such Claim. After such date, all Claims in respect of voided checks shall be discharged and forever barred and Reorganized Ahern shall retain all monies related thereto.

### G. Application Of Record Date

At the close of business on the Record Date, the claims registers for all Claims shall be closed, and there shall be no further changes in the record Holders of Claims. Except as provided herein, the Debtor, Reorganized Ahern, the Disbursing Agent, and each of their respective agents, successors, and assigns shall have no obligation to recognize any transfer of Claims occurring after the Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record Holders stated on the Claims registers as of the close of business on the Distribution Date irrespective of the number of Distributions to be made under the Noteholder Plan to such Persons or the date of such Distributions.

### H.    Claims Paid By Third Parties

The Debtor, or the Disbursing Agent, as applicable, shall reduce in part or in full a Claim to the extent that the Holder of such Claim receives payment in part or in full on account of such Claim from a party that is not the Debtor or the Disbursing Agent.  To the extent a Holder of a Claim receives a Distribution on account of such Claim receives payment from a party that is not the Debtor or the Disbursing Agent on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the Distribution to Reorganized Ahern, to the extent the Holder's total recovery on account of such Claim from the third party and under the Noteholder Plan exceeds the amount of such Claim as of the date of any such Distribution under the Noteholder Plan.

### I.    Insurance Claims

No Distributions under the Noteholder Plan shall be made on account of Allowed Claims covered by the Debtor's Insurance Policies, including but not limited to Allowed Personal Injury Claims, until the insurance coverage with respect to such Allowed Claims has been exhausted.  To the extent that the Debtor's insurers agree to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurer's agreement, such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

### J.    Applicability Of Insurance Policies

Except as otherwise provided in the Noteholder Plan, Distributions to Holders of Allowed Claims, including but not limited to Allowed Personal Injury Claims, shall be made in accordance with the provisions of any applicable Insurance Policy.  Nothing contained in the Noteholder Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Person may hold against any other Person, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

### K.    Allocation Of Noteholder Plan Distributions Between Principal And Interest

To the extent that any Allowed Claim entitled to a Distribution under the Noteholder Plan is comprised of principal and accrued but unpaid interest thereon, such Distribution shall, for the Debtor's U.S. federal income tax purposes, be allocated on the Debtor's books and records to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

### L.    Setoffs

Except as provided in the Noteholder Plan, the Debtor or Reorganized Ahern may, but shall not be required to, set off or offset against any Claim, and the payments or other Distributions to be made pursuant to the Noteholder Plan in respect of such Claim, Claims of any nature whatsoever that the Debtor may have against the Claim's Holder; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or Reorganized Ahern of any claim that the Debtor may have against such Holder.  Nothing herein shall be deemed to expand rights to setoff under applicable law.  Unless

FENNEMORE CRAIG JONES VARGAS

LAS VEGAS

#4194901.11

otherwise provided in an order of the Bankruptcy Court, nothing contained in the Noteholder Plan is intended to limit the ability of any Creditor to effectuate rights of setoff or recoupment preserved or permitted by the provisions of sections 553, 555, 556, 559, 560, or 561 of the Bankruptcy Code or pursuant to the common law right of recoupment.

### M. Fractional Distributions

Notwithstanding any other provision of the Noteholder Plan to the contrary, no fractional New Equity Interests or New Warrants to purchase fractional amount of New Equity Interests will be made pursuant to the Noteholder Plan. Whenever any Distribution would otherwise call for Distribution of a fraction of New Equity Interest or a New Warrant to purchase a fraction amount of New Equity Interests, such number of New Equity Interests or New Warrants to be distributed shall be rounded down to the nearest whole number.

### N. Prepayment

Except as otherwise provided in the Noteholder Plan, any ancillary documents entered into in connection with the Noteholder Plan, or the Confirmation Order, Reorganized Ahern will have the right to prepay, without penalty, all or any portion of an Allowed Claim entitled to payment in Cash at any time following the Effective Date; provided, however, that any such prepayment will not be violative of, or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

### O. No Distribution In Excess Of Allowed Amounts

Notwithstanding anything to the contrary set forth in the Noteholder Plan, no Holder of an Allowed Claim will receive in respect of such Claim any Distribution of a value as of the Effective Date in excess of the Allowed amount of such Claim (excluding payments on account of interest due and payable from and after the Effective Date pursuant to the Noteholder Plan, if any).

### P. Joint Distributions

The Debtor or the Disbursing Agent may, in their sole discretion, make Distributions jointly to any Holder of a Claim and any other entity who has asserted, or whom the Debtor has determined to have, an interest in such Claim. Except as otherwise provided in the Noteholder Plan or in the Confirmation Order, and notwithstanding the joint nature of any Distribution, all Distributions made by the Debtor or the Disbursing Agent will be in exchange for and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtor and Reorganized Ahern or any of its assets or properties as set forth in Article III hereof.

### Q. Statements

The Debtor and the Disbursing Agent shall maintain a record of the names and addresses of all Holders of Allowed General Unsecured Claims as of the Effective Date for purposes of mailing Distributions to them. The Debtor and the Disbursing Agent may rely on the name and address set forth in the Schedules and/or proofs of Claim as of the Record Date as being true and correct unless and until notified in writing. The Debtor and Reorganized Ahern shall file all tax

returns and other filings with governmental authorities on behalf of the Debtor and Reorganized Ahern and the Assets it holds.

### R.    Further Authorization

Reorganized Ahern shall be entitled to seek such orders, judgments, injunctions, and rulings as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions of the Noteholder Plan.

## ARTICLE VII.
## RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

### A.    Resolution Of Disputed Claims

Holders of Claims must file proofs of Claims on or prior to the applicable Bar Date. No later than the Claims Objection Deadline (unless extended by an order of the Bankruptcy Court), the Debtor or Reorganized Ahern, as the case may be, shall file objections to Claims that were required to be filed by the applicable Bar Date with the Bankruptcy Court and serve such objections upon Holders of such Claims to which objections are made. Nothing contained herein, however, shall limit Reorganized Ahern's right to object to Claims, if any, filed or amended after the Claims Objection Deadline.

Holders of Administrative Claims must file a request for payment on or prior to the Administrative Claims Bar Date. No later than the Administrative Claims Objection Deadline (unless extended by an order of the Bankruptcy Court), the Debtor or Reorganized Ahern, as the case may be, shall file objections to the Administrative Claims with the Bankruptcy Court and serve such objection upon Holders of such Administrative Claims to which objections are made. Nothing contained herein, however, shall limit Reorganized Ahern's right to object to Administrative Claims, if any, filed or amended after the Administrative Claims Objection Deadline.

### B.    No Distribution Pending Allowance

No payments or Distributions, if any contemplated by the Noteholder Plan, will be made with respect to all or any portion of a Disputed Claim or Equity Interest unless and until all objections to such Disputed Claims or Equity Interests have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim or Allowed Equity Interest.

### C.    Resolution Of Objections After Effective Date

From and after the Effective Date, Reorganized Ahern may propose settlements of, or withdraw objections to, all pending or filed Disputed Claims and may settle or compromise any Disputed Claim without notice and a hearing and without approval of the Bankruptcy Court.

### D.    Distributions After Allowance

From and after the Effective Date, the Disbursing Agent will make Distributions quarterly (i) on account of any Disputed Claim that has become an Allowed Claim during the preceding

calendar quarter, and (ii) on account of previously Allowed Claims that would have been distributed to Holders of such Claims on the dates Distributions previously were made to Holders of Allowed Claims in such Class had the Disputed Claims that have become Allowed Claims been Allowed on such dates. Such Distributions will be made pursuant to the applicable provisions of Article VI hereof.

### E. Disputed Claims Reserve

From and after the Effective Date, and until such time as all Disputed Claims have been compromised and settled or determined by Final Order, the Disbursing Agent shall reserve and hold in escrow for the benefit of each Holder of a Disputed Claim and any dividends, gains, or income attributable thereto, in an amount equal to Distributions which would have been made to the Holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the amount of the Disputed Claim, (ii) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code for purposes of allowance, which amount, unless otherwise ordered by the Bankruptcy Court, shall constitute and represent the maximum amount in which such Claim ultimately may become an Allowed Claim, or (iii) such other amount as may be agreed upon by the Holder of such Disputed Claim and Reorganized Ahern. Any amount reserved and held for the benefit of a Holder of a Disputed Claim shall be treated as a payment and reduction on account of such Disputed Claim for purposes of computing any additional amounts to be paid in the event the Disputed Claim ultimately becomes an Allowed Claim. In the event that a Disputed Claim is not Allowed, in whole or in part, Holders of Allowed Claims in the same Class as the Holder of the Claim that is not Allowed shall receive their Pro Rata share of any amount reserved on account of the Claim that is not Allowed. Such Cash reserved for the benefit of Holders of Disputed Claims shall be either (x) held by the Disbursing Agent in an interest-bearing account or (y) invested in interest-bearing obligations issued by the United States Government and guaranteed by the United States Government, and having (in either case) a maturity of not more than thirty (30) days, for the benefit of such Holders pending determination of their entitlement thereto under the terms of the Noteholder Plan. No payments or Distributions shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof by Final Order.

### F. Estimation Of Claims

The Debtor (before the Effective Date) or Reorganized Ahern (on or after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any party or Person, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor (before the Effective Date) or Reorganized Ahern (after the Effective Date), may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim. All of the objection, estimation, settlement and resolution procedures set forth in the Noteholder Plan are cumulative and not necessarily exclusive of one

FENNEMORE CRAIG JONES
VARGAS

LAS VEGAS

#4194901.11

another. Claims may be estimated and subsequently compromised, objected to, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### G. Deadline To File Objections To Claims

The Debtor reserves its right to file objections to Claims, if any, on or before the applicable Claim Objection Deadline.

### H. Late-Filed Claims

Except with respect to Claims, proof of which is made in compliance with the requirements of sections 502(e) and 509 of the Bankruptcy Code, no Claim filed after the Bar Date or, as applicable, the Administrative Claims Bar Date, shall be allowed, and all such Claims are hereby disallowed in full. After the Bar Date or the Administrative Claim Bar Date, as applicable, no Creditor shall be permitted to amend any claim to increase the claimed amount, unless permitted by the Bankruptcy Court, subject to the Debtor's or Reorganized Ahern's right to object to such increase; and any such amendment shall be disallowed, unless permitted by the Bankruptcy Court, subject to the Debtor's or Reorganized Ahern's right to object to such increase, to the extent of the late-filed increase in the claimed amount.

### I. Reservation Of Right To Object To Allowance Or Asserted Priority Of Claims

Nothing herein will waive, prejudice or otherwise affect the rights of the Debtor, Reorganized Ahern or Holders of any Claims to object at any time, including after the Effective Date, to the allowance or asserted priority of any Claim, except with respect to any Allowed Claim.

## ARTICLE VIII.
## CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

### A. Conditions Precedent To Confirmation

The Confirmation of the Noteholder Plan shall be conditioned upon, and shall not occur, unless and until each of the following conditions have been satisfied or waived pursuant to the terms of this Article VIII:

    i.      The Bankruptcy Court shall have entered an order, in form and in substance acceptable to the Proponents, approving the Noteholder Disclosure Statement with respect to the Noteholder Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code;

    ii.     The Noteholder Plan and all schedules, documents, supplements and exhibits relating to the Noteholder Plan, including, but not limited to, any Noteholder Plan Supplement, shall have been filed in form and in substance acceptable to the Proponents; and

    iii.    The proposed Confirmation Order shall be in form and substance acceptable to the Proponents.

FENNEMORE CRAIG JONES
VARGAS

LAS VEGAS

#4194901.11

**B.    Conditions Precedent To The Effective Date**

The Effective Date shall be conditioned upon, and shall not occur, and the Noteholder Plan shall not be consummated unless and until each of the following conditions have been satisfied or waived pursuant to the terms of this Article VIII:

    i.    The Confirmation Order, in form and substance acceptable to the Proponents, shall have been entered by the Bankruptcy Court and shall have become a Final Order;

    ii.    The Exit Financing Facility shall have been executed and delivered by all of the Persons that are parties thereto, in a form and substance acceptable to the Proponents, and all conditions precedent to the consummation thereof shall have been waived, or satisfied in accordance with the terms thereof, and funding pursuant to the Exit Financing Facility shall have occurred;

    iii.    The Backstopped Rights Offering shall have been consummated and funded by the Investors.

    iv.    All documents necessary to implement the transactions contemplated by the Noteholder Plan shall be in form and substance acceptable to the Proponents  and approved by the Bankruptcy Court;

    v.    All actions documents, certificates, and agreements necessary to implement the Noteholder Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws;

    vi.    The Bankruptcy Court shall have entered one or more orders (which may include the Confirmation Order) authorizing the assumption and rejection of Executory Contracts and Unexpired Leases by the Debtor as contemplated herein in form and substance acceptable to the Proponents;

    vii.    Sufficient Cash and other Assets shall be set aside, reserved and withheld by the Debtor to make the Distributions required to be paid on the Effective Date or within sixty (60) days thereafter by the Bankruptcy Code and the Noteholder Plan;

    viii.    All authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents that are necessary to implement the Noteholder Plan and that are required by law, regulation, or order have been received; and

    ix.    The New Equity Interests shall have been authorized in the amounts set forth in the Noteholder Plan and on terms reasonably satisfactory to the Proponents.

**C.    Failure Of Conditions Precedent**

In the event that one or more of the conditions specified in Article VIII(B) hereof have not occurred or been waived as permitted by Article VIII(E) hereof on or before March 1, 2014 or such other date agreed to by the Proponents (i) the Confirmation Order shall be vacated, (ii) no Distributions under the Noteholder Plan shall be made, (iii) the Debtor and all Holders of Claims

FENNEMORE CRAIG JONES VARGAS

LAS VEGAS

#4194901.11

and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iv) the Debtor's obligations with respect to Claims and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed to be a waiver or release of any Claims or Equity Interests by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor. For the avoidance of doubt, and notwithstanding anything in the Noteholder Disclosure Statement or the Noteholder Plan to the contrary, if the Noteholder Plan is not confirmed or does not become effective, nothing in the Noteholder Plan or the Noteholder Disclosure Statement shall be construed as a waiver of any rights or Claims of the Noteholders.

### D.    Notice Of Effectiveness

When all of the steps contemplated by Article VIII(B) hereof have been completed, the Debtor shall file with the Bankruptcy Court and serve upon all Creditors and all potential Holders of Administrative Claims known to the Debtor (whether or not disputed), a Notice of Effective Date of Noteholder Plan. The Notice of Effective Date of Noteholder Plan shall include notice of the Administrative Claims Bar Date.

### E.    Waiver Of Conditions Precedent

The Proponents and, if applicable, Reorganized Ahern shall have the right to waive any of the conditions precedent set forth in this Article VIII at any time without leave of or notice to the Bankruptcy Court and without any formal action other than proceeding with consummation of the Noteholder Plan.

### ARTICLE IX.
### TRANSFER OF ASSETS, DISCHARGE, RELEASES, INJUNCTION AND SETTLEMENT

### A.    Vesting And Transfer Of Assets And Assumption Of Liabilities

Subject to and as provided for in the Noteholder Plan, the Assets shall be vested and/or transferred to Reorganized Ahern on the Effective Date, free and clear of all Claims, Liens, encumbrances, and other interests, except as provided herein, and Reorganized Ahern shall assume all obligations required under the Noteholder Plan, which obligations shall be performed by Reorganized Ahern.

### B.    Discharge Of Claims

Except as provided in the Noteholder Plan or in the Confirmation Order, the rights afforded under the Noteholder Plan and the treatment of Claims under the Noteholder Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims against the Debtor arising on or before the Effective Date, including any interest accrued on Claims from the Petition Date. In accordance with the foregoing, except as provided in the Noteholder Plan or the Confirmation Order, the Confirmation Order will be a judicial determination, as of the Effective Date, of a discharge of all Claims and other Case debts and liabilities against the Debtor, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment

obtained against the Debtor at any time, to the extent that such judgment relates to a discharged Claim.

### C.    Claims Enjoined

Except as provided in the Noteholder Plan or the Confirmation Order or agreed to by the Proponents or Reorganized Ahern, as of the Effective Date all entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged pursuant to the terms of the Noteholder Plan will be permanently enjoined from taking any enforcement actions on account of any such discharged Claim, debt or other liability, including, but not limited to, (i) commencing or continuing in any manner any action or other proceeding, (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order, (iii) creating, perfecting or enforcing any Lien or encumbrance, (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or Reorganized Ahern, and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the terms of the Noteholder Plan.

### D.    Compromise And Settlement

The allowance, classification, and treatment of all Allowed Claims and their respective Distributions under the Noteholder Plan take into account and/or conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(c) of the Bankruptcy Code. As of the Effective Date, any and all such rights described in the preceding sentence will be settled, compromised, and released pursuant to the Noteholder Plan and any and all such Causes of Action related thereto are settled, compromised, and released pursuant hereto.

### E.    Releases

As of the Effective Date, to the fullest extent permitted under applicable law, each of the Released Parties shall be, and shall be deemed to be, released from all Causes of Action owned, held, or which could have been, or may be asserted by, any other Released Party whether prior to or subsequent to the Petition Date but in all cases not subsequent to the Effective Date arising from or related to the Debtor, its Assets, businesses, property or Estate, the Chapter 11 Case, the Noteholder Disclosure Statement, the Noteholder Plan or the solicitation of votes on the Noteholder Plan; provided, however, that nothing herein will in any way limit or modify any and all debts or obligations of the Released Parties or the Substantial Consummation obligations of the Released Parties, as required under the Noteholder Plan, all agreements entered into in connection with the Noteholder Plan, or any Final Order of the Bankruptcy Court. As of the Effective Date, for good and valuable consideration, each Holder of a Claim or Equity Interest shall, and shall be deemed to, release the Released Parties (other than the Proponents) from any and all Causes of Action, whether arising prior to or subsequent to the Petition Date but in all cases not subsequent to the Effective Date arising from or related to the Debtor, its Assets, businesses, property or Estate the Chapter 11 Case, the Noteholder Disclosure Statement, the Noteholder Plan or the solicitation of votes on the Noteholder Plan; provided, however, that these releases will have no effect on the liability of any Released Party arising out of gross negligence or willful misconduct; and provided further that nothing herein will in any way limit or modify

any and all debts or obligations owed pursuant to the Noteholder Plan, or any Final Order of the Bankruptcy Court.

### F.   Exculpation

The Released Parties shall incur no liability to any Holder of a Claim or Equity Interest for any act, event, or omission in connection with, or arising out of, the Chapter 11 Case, the confirmation of the Noteholder Plan, the solicitation in connection with the Noteholder Plan, the consummation of the Noteholder Plan or the administration of the Noteholder Plan or the property to be distributed under the Noteholder Plan, in each case relating to any fact or circumstance existing prior to or as of the Effective Date, except for gross negligence and willful misconduct or the obligations of any Person or Entity with respect to their obligations pursuant to the Noteholder Plan. Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Noteholder Plan.

### G.   Supplemental Injunction

In order to preserve and promote the settlements contemplated by and provided for in the Noteholder Plan and as described in Article IX of the Noteholder Plan, except as otherwise expressly provided in the Noteholder Plan or the Confirmation Order, all Persons and any Person claiming by or through them, which have held or asserted, which currently hold or assert, or which may hold or assert any Claims or any other Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies, or liabilities of any nature whatsoever, and all Equity Interests, or other rights of a Holder of an equity security or other ownership interest, against any of the Released Parties based upon, attributable to, arising out of or relating to any Claim against or Equity Interest in the Debtor, whenever and wherever arising or asserted, whether sounding in tort, contract, warranty or any other theory of law, equity or admiralty, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any such Claims or other Causes of Action, obligations, suits, judgments, damages, debts, rights remedies or liability, and all Equity Interests or other rights of a Holder of an equity security or other ownership interest, arising prior to the Effective Date, including, but not limited to (i) commencing or continuing in any manner any action or other proceeding, (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order, (iii) creating, perfecting or enforcing any Lien or encumbrance, (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any Released Party, and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the terms of the Noteholder Plan.

### ARTICLE X.
### RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain such exclusive jurisdiction over the Chapter 11 Case after the Effective Date as is legally permissible, including jurisdiction to:

i.    Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance, priority or classification of Claims or Equity Interests;

ii.    Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Noteholder Plan for periods ending on or before the Effective Date;

iii.    Resolve any matters related to the assumption of any executory contract and unexpired lease to which the Debtor is a party or with respect to which the Debtor or Reorganized Ahern may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including any disputed cure amount;

iv.    Ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Noteholder Plan;

v.    Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor or Reorganized Ahern that may be pending on the Effective Date or brought thereafter prior to the closing of the Chapter 11 Case;

vi.    Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Noteholder Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Noteholder Plan, the Noteholder Disclosure Statement or the Confirmation Order;

vii.    Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of any order, the Noteholder Plan, the Confirmation Order, or obligations of any Persons incurred in connection with such order, the Noteholder Plan, or the Confirmation Order;

viii.    Modify the Noteholder Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code; modify the Noteholder Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Noteholder Plan, the Disclosure Statement, the Noteholder Plan Supplement, or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Noteholder Plan, the Noteholder Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with the Noteholder Plan, the Noteholder Disclosure Statement, the Noteholder Plan Supplement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Noteholder Plan;

ix.     Issue injunctions, enforce the injunctions contained in the Noteholder Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Noteholder Plan or the Confirmation Order;

x.      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or Distributions pursuant to the Noteholder Plan are enjoined or stayed;

xi.     Determine any other matters that may arise in connection with or relate to the Noteholder Plan, the Noteholder Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Noteholder Plan, the Noteholder Disclosure Statement or the Confirmation Order;

xii.    Enter an order closing the Chapter 11 Case;

xiii.   Hear and decide any Claim or Cause of Action of the Debtor or Reorganized Ahern pending on the Effective Date;

xiv.    Decide or resolve any matter over which the Bankruptcy Court has jurisdiction pursuant to section 505 of the Bankruptcy Code;

xv.     Resolve any Disputed Claims;

xvi.    Recover all assets of the Debtor and property of the Debtor's Estate, wherever located, including resolving any Avoidance Actions;

xvii.   Determine the scope of any discharge of the Debtor under the Noteholder Plan or the Bankruptcy Code; and

xviii.  Resolve any disputes regarding whether a Cause of Action constitutes a Retained Cause of Action.

provided, however, that the foregoing is not intended to (1) expand the Bankruptcy Court's jurisdiction beyond that allowed by applicable law, (2) impair the rights of an Entity to (i) invoke the jurisdiction of a court, commission, or tribunal, including, without limitation, with respect to matters relating to a governmental unit's police and regulatory powers, and (ii) contest the invocation of any such jurisdiction; provided, further, that the invocation of such jurisdiction, if granted, shall not extend to the allowance or priority of Claims or the enforcement of any money judgment against the Debtor or Reorganized Ahern, as the case may be, entered by such court, commission, or tribunal, and (3) impair the rights of an Entity to (i) seek the withdrawal of the reference in accordance with 28 U.S.C. § 157(d) and (ii) contest any request for the withdrawal of reference in accordance with 28 U.S.C. § 157(d).

# ARTICLE XI.
## MISCELLANEOUS PROVISIONS

### A.    Effectuating Documents; Further Transactions; And Timing

Each of the officers of the Debtor and Reorganized Ahern are authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Noteholder Plan and any obligations issued transferred, or cancelled pursuant to the Noteholder Plan and transactions contemplated by the Noteholder Plan. All transactions that are required to occur on the Effective Date under the terms of the Noteholder Plan shall be deemed to have occurred simultaneously. The Debtor and Reorganized Ahern are authorized and directed to do such acts and execute such documents as are necessary to implement the Noteholder Plan.

### B.    Cancellation Of Existing Agreements

On the latest to occur of (i) the Effective Date; (ii) the entry of an order resolving all Claims in the Chapter 11 Case; and (iii) the final Distribution made to Holders of Allowed Claims in accordance with the terms of the Noteholder Plan, unless otherwise provided in the Noteholder Plan, any document, agreement, or instrument evidencing any Disputed Claim that is disallowed shall be deemed automatically cancelled and terminated without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtor under such documents, agreements, or instruments evidencing such Claims shall be discharged.

### C.    Exemption From Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, (i) the issuance, Distribution, transfer, or exchange of Estate property; (ii) the creation, modification, consolidation, or recording of any deed of trust or other interest, or the securing of additional indebtedness by such means or by other means in furtherance of, or in connection with the Noteholder Plan or the Confirmation Order; (iii) the making, assignment, modification, or recording of any lease or sublease; or (iv) the making, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Noteholder Plan, Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

### D.    Modification Of The Noteholder Plan

Prior to Confirmation, the Proponents may alter, amend, or modify the Noteholder Plan under section 1127(a) of the Bankruptcy Code at any time. After the Confirmation Date and prior to the Effective Date, the Proponents may, under sections 1127(b), (c), and (d) of the Bankruptcy Code, alter, amend, or modify the Noteholder Plan or institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Noteholder Plan or

FENNEMORE CRAIG JONES
VARGAS

LAS VEGAS

#4194901.11

the Confirmation Order, and to make appropriate adjustments and modifications to the Noteholder Plan or the Confirmation Order as may be necessary to carry out the purposes and effects of the Noteholder Plan, so long as such proceedings do not materially adversely affect the treatment of Holders of Claims under the Noteholder Plan.

**E. Revocation Of The Noteholder Plan**

The Proponents reserve the right to revoke or withdraw the Noteholder Plan at any time prior to the Confirmation Date. If the Noteholder Plan is withdrawn or revoked or if the Bankruptcy Court denies confirmation of the Noteholder Plan, then the Noteholder Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person, nor shall the withdrawal or revocation of the Noteholder Plan prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor. In the event the Noteholder Plan is withdrawn or revoked, nothing set forth herein shall be deemed an admission of any sort and the Noteholder Plan and any transaction contemplated thereby shall be inadmissible into evidence in any proceeding.

**F. Term Of Bankruptcy Injunction Or Stays**

All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. Upon the Effective Date, the injunction provided in Article IX hereof shall apply.

**G. Dissolution Of Committee**

On the Effective Date, the Committee shall cease to exist, except with respect to any application for compensation or reimbursement of costs and expenses in connection with services rendered prior to the Effective Date, any objection to any Professional Fee Claim, or any appeals of the Confirmation Order. Following the Effective Date, none of the Committee's professionals shall be precluded from representing any Entity created by the Noteholder Plan.

**H. Governing Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any contract, instrument, release, or other agreement entered into in connection with the Noteholder Plan or in any document which remains unaltered by the Noteholder Plan, the rights, duties, and obligations of the Debtor and any other Person arising under the Noteholder Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada without giving effect to Nevada choice of law provisions.

**I. Plan Supplement**

The Noteholder Plan Supplement shall be filed with the Clerk of the Bankruptcy Court at least seven (7) days prior to the Voting Deadline; provided, however, that the Proponents may amend the documents contained in the Noteholder Plan Supplement, subject to Article XI(D) hereof, through and including the Effective Date in a manner consistent with the Noteholder Plan and the Noteholder Disclosure Statement. Each of the documents contained in the Noteholder

Plan Supplement as to form and substance shall be subject to the consent of the Noteholders, which consent shall not be unreasonably withheld. Upon its filing with the Bankruptcy Court, the Noteholder Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.

### J.    Expedited Tax Determination

Reorganized Ahern may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, Reorganized Ahern for all taxable periods through the Effective Date.

### K.    Post-Confirmation Date Fees And Expenses

From and after the Confirmation Date, Reorganized Ahern shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, (i) retain professionals and (ii) pay the reasonable fees and expenses (including reasonable professional fees and expenses) incurred by the Debtor or Reorganized Ahern, as the case may be, related to implementation and consummation of or consistent with the provisions of the Noteholder Plan.

### L.    Substantial Consummation

On the Effective Date, the Noteholder Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### M.    Exhibits/Schedules

All exhibits and schedules to the Noteholder Plan, including the Noteholder Plan Supplement, are incorporated into and are a part of the Noteholder Plan as if set forth in full herein.

### N.    Closing Of The Chapter 11 Case

Reorganized Ahern shall, promptly upon the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court.

### O.    Severability Of Noteholder Plan Provisions

If, prior to Confirmation, any term or provision of the Noteholder Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Noteholder Plan to the extent that the general intent of the Noteholder Plan can be effectuated will remain in full force and effect and will in no way be affected, Impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Noteholder Plan, as it

FENNEMORE CRAIG JONES
VARGAS

LAS VEGAS

#4194901.11

may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### P.    Withholding And Reporting Requirements

In connection with the Noteholder Plan and all instruments issued in connection therewith and Distributions thereon, Reorganized Ahern shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements. Reorganized Ahern shall be authorized to take any and all action that may be necessary to comply with such withholding and recording requirements. Notwithstanding any other provision of the Noteholder Plan, each Holder of an Allowed Claim that has received a Distribution pursuant to the Noteholder Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding, and other tax obligation on account of such Distribution.

### Q.    Fees And Reporting To The U.S. Trustee

Prior to the Effective Date, the Debtor, and after the Effective Date, the Reorganized Ahern, is obligated to pay the U.S. Trustee quarterly fees based upon all disbursements in accordance with the sliding scale set forth in 28 U.S.C. § 1930(a)(6). These fees accrue throughout the pendency of the Chapter 11 Case and until entry of a final decree. U.S. Trustee fees paid prior to confirmation of the Noteholder Plan will be reported in operating reports required by sections 704(8), 1106(a)(1), 1107(a) of the Bankruptcy Code and the United States Trustee Guidelines. All U.S. Trustee quarterly fees accrued prior to confirmation of the Noteholder Plan will be paid on or before the Effective Date pursuant to section 1129(a)(12) of the Bankruptcy Code. All U.S. Trustee fees accruing post-confirmation are due on a calendar quarter basis and reported both on post-confirmation operating reports and in post-confirmation operating reports required by the United States Trustee Guidelines.

### R.    Binding Effect

The Noteholder Plan shall be binding upon and inure to the benefit of the Debtor and the Estate, Reorganized Ahern and all present and former Holders of Claims against and Equity Interests in the Debtor, whether or not such Holders will receive or retain any property or interest in property under the Noteholder Plan, their respective successors and assigns, including, without limitation, all other parties in interest in the Chapter 11 Case.

Dated: February 8, 2013

Respectfully submitted,

By: ___/s/ Laurel E. Davis___
Laurel E. Davis (NV Bar No. 3005)
FENNEMORE CRAIG JONES VARGAS
300 South Fourth Street, Suite 1400
Las Vegas, Nevada 89101
Telephone: (702) 692-8000
E-mail: ldavis@fclaw.com

and

Kurt A. Mayr, Esq.*
BRACEWELL & GIULIANI LLP
Goodwin Square
225 Asylum Street, Suite 2600
Hartford, Connecticut 06103
Telephone: (860) 947-9000
Facsimile: (860) 246-3201
Email: kurt.mayr@bgllp.com

Daniel S. Connolly, Esq.*
BRACEWELL & GIULIANI LLP
1251 Avenue of the Americas, 49th Fl.
New York, New York 10020
Telephone: (212) 508-6100
Facsimile: (212) 508-6101
Email: daniel.connolly@bgllp.com

*Admitted Pro Hac Vice

Counsel for the Proponents

7926041.1/030988.0001

FENNEMORE CRAIG JONES
VARGAS

LAS VEGAS

- 44 -

#4194901.11