# EXHIBIT B

# APPENDIX C

# LIQUIDATION ANALYSIS

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

EAST\52216559.5

104500-002/1750782.doc

# LIQUIDATION ANALYSIS[1]

*1. Introduction*

Pursuant to the "best interests of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code, a chapter 11 plan may not be confirmed unless the plan provides each holder of a claim or interest who does not otherwise vote in favor of the plan with property of a value as of the effective date of the plan that is not less than the amount that such holder would receive or retain if the Debtor's assets were liquidated under chapter 7 of the Bankruptcy Code.

To demonstrate that the Debtor's Plan satisfies the "best interests" test, the Debtor, with the assistance of their advisors, has prepared a hypothetical liquidation analysis (the "Liquidation Analysis"). The Liquidation Analysis is based upon certain assumptions discussed in the Disclosure Statement and in the notes accompanying the Liquidation Analysis set forth herein (the "Notes"). Asset values discussed in the Liquidation Analysis may differ materially from values referred to in the Plan and Disclosure Statement.

In the Liquidation Analysis, the Debtor determined a hypothetical liquidation value of its business if a chapter 7 trustee were appointed and charged with reducing to cash any and all of the Debtor's assets. The Debtor compared the potential liquidation value of the Debtor's assets to the potential value of the Debtor's assets under the Plan. As reflected in more detail in the Liquidation Analysis and in Article V (Summary of the Plan of Reorganization) of the Disclosure Statement, the Debtor believes that the value of the distributions provided to Holders of Allowed Claims under the Plan would be greater than under a hypothetical chapter 7 liquidation, thus the Debtor believes the Plan satisfies the "best interests" test with respect to the Debtor.

The Debtor believes that Holders of Allowed Claims in each Impaired Class will receive at least as much under the Plan as they would if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. The Liquidation Analysis reflects the estimated cash proceeds, net of liquidation-related costs, which would be realized if the Debtor was to be liquidated in accordance with chapter 7 of the Bankruptcy Code.

*2. Scope, Intent, and Purpose of the Liquidation Analysis*

The determination of the hypothetical proceeds from, and costs of the liquidation of the Debtors' assets, is an uncertain process involving the extensive use of estimates and assumptions that although considered reasonable by the Debtor, are inherently subject to significant business and economic uncertainties and contingencies beyond the control of the Debtor. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual chapter 7 liquidation and unanticipated events and circumstances could affect the ultimate results in an actual chapter 7 liquidation. The Debtor prepared the Liquidation Analysis for the sole purpose of generating a reasonable good-faith estimate of the proceeds that would be generated if the Debtor's assets were liquidated in accordance with chapter 7 of the Bankruptcy Code upon

---

[1] Unless otherwise specifically set forth in the Liquidation Analysis, all capitalized terms used, but not defined herein, shall have the same meanings ascribed to the them in the Plan and Disclosure Statement.

i

conversion of the Chapter 11 Case. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants. No independent appraisals were conducted in preparing the Liquidation Analysis. Accordingly, while deemed reasonable based on the facts currently available, neither the Debtor nor its advisors make any representations or warranties that the actual results would or would not approximate the estimates and assumptions represented in the Liquidation Analysis and actual results could vary materially.

In preparing the Liquidation Analysis, the Debtor estimated Allowed Claims based upon a review of its books and records. The Liquidation Analysis includes estimates for Claims which could be asserted and Allowed in a chapter 7 liquidation, including Administrative Claims, Liquidation Costs (as defined herein), trustee fees, and other Allowed Claims. To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims. Therefore, the Debtor's estimates of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including, determining the value of any distribution to be made on account of Allowed Claims and Interests under the Plan. Nothing contained in the liquidation analysis is intended to be or constitutes a concession or admission of the Debtor. The actual amount of Allowed Claims in the Chapter 11 Case could materially differ from the estimated amounts set forth in the Liquidation Analysis.

### 3. *Conversion Date and Appointment of a Chapter 7 Trustee*

The Liquidation Analysis assumes conversion of the Debtor's Chapter 11 Case to a chapter 7 liquidation case on March 31, 2013 (the "Conversion Date"), which is the presumed Effective Date of the Plan. On the Conversion Date, it is assumed that the Bankruptcy Court would appoint one chapter 7 trustee (the "Trustee") to oversee the liquidation of the chapter 7 bankruptcy estate (the "Estate"). The Liquidation Analysis is based on estimates of the Debtor's projected assets and liabilities as of March 31, 2013 (the Debtor is using unaudited October 31, 2012 balances as a proxy unless otherwise footnoted). Such estimates are derived from the Debtor's financial statements or more recent financial information, where available. The Debtor does not believe the use of such estimates will result in a material change to estimated recoveries on the Conversion Date unless otherwise noted.

### 4. *Debtors' Assets*

The Liquidation Analysis assumes a liquidation of all of the Debtor's assets. As described in more detail below, the Debtor has nine major categories of assets: (a) cash and equivalents; (b) accounts receivable; (c) rental equipment; (d) transportation equipment; (e) parts and merchandise; (f) new equipment; (g) furniture and fixtures; (h) leasehold improvements; and (i) other, primarily consisting of deferred financing costs, prepaid expenses, deposits, and other items.

Holders of the Class 1 Term Loan Claims, Class 2 Second Lien Loan Secured Claims, Class 3 Kubota Claims, and Class 4 Other Secured Claims hold first-and second-priority liens against substantially all of the Debtor's assets (the "Collateral).

*5. Liquidation Process*

The Liquidation Analysis assumes an "orderly" liquidation, under which the liquidation of the Debtor's assets and the wind-down of its Estate would occur over a period of six months starting on the Conversion Date. However, the Trustee may not have sufficient funds to conduct an orderly liquidation and maximize value, and thus may be forced to liquidate substantially all of the Debtor's assets immediately. In such an event, the amount of Liquidation Proceeds realized would be materially lower than those assumed in the Liquidation Analysis.

a. Factors Considered in Valuing Hypothetical Liquidation Proceeds

The following include some, but not all, of the factors that could negatively impact the recoveries set forth in the Liquidation Analysis: (a) turnover of key personnel; (b) customer setoffs; (c) non-return of equipment by customers; and (d) delays in the liquidation process. These factors may limit the amount of the proceeds generated by the liquidation of the Debtor's assets (the "Liquidation Proceeds") available to the Trustee. For example, it is possible that the liquidation would be delayed while the Trustee becomes familiar with the Debtor's Chapter 11 Case and the Debtor's business operations. This delay could materially reduce the value of the Liquidation Proceeds. There is also a risk that a significant amount of equipment that is on rent on the Conversion Date is not able to be recovered, particularly given that customers are generally not responsible for the Debtor's equipment if not picked up by the Debtor within three days after the end of the rental period. In addition, there is a risk that the Trustee would be unable to maximize the value of the Debtor's Estate in a controlled liquidation because the Bankruptcy Court may only allow the Trustee to operate the Debtor's business for a limited period under section 721 of the Bankruptcy Code. While the Bankruptcy Code does not set forth a specific time period under which a chapter 7 trustee is allowed to operate a debtor's business, the Bankruptcy Court may conclude that the six month period assumed in the Liquidation Analysis exceeds the time contemplated by the Bankruptcy Code. Should the Bankruptcy Court limit the Trustee's operation of the Debtor's business, the Liquidation Proceeds generated from the sale of the Debtor's assets would likely decrease.

b. Waterfall and Recovery Ranges

The Liquidation Analysis assumes that the proceeds generated from the liquidation of all of the Debtor's assets plus cash estimated to be held by the Debtor on the Conversion Date will be reasonably available to the Trustee. After deducting the costs of liquidation, including the Trustee's fees and expenses and other administrative expenses incurred in the liquidation, the Trustee would allocate net Liquidation Proceeds to Holders of Claims and Interests in accordance with the priority scheme set forth in section 726 of the Bankruptcy Code. The Liquidation Analysis provides for high and low recovery percentages for Claims and Interests upon the Trustee's application of the Liquidation Proceeds. Specifically, these percentages reflect a high and low range of estimated Liquidation Proceeds.

The Debtor used the October 31, 2012 financial statements as a proxy for expected asset and liability values on the Conversion Date (unless otherwise footnoted) and made adjustments to those values to account for any known material changes expected to occur before the Conversion

Date. While the Debtor expects to continue to incur obligations in the ordinary course of business until the Conversion Date (which obligations may not be fully reflected herein), the ultimate inclusion of such additional obligations is not expected to change the results of this Liquidation Analysis in any material form or fashion.

The Debtor's Professionals (a) worked with the Debtor's operational, financial, and accounting personnel, (b) used industry knowledge, and (c) drew upon personal experiences to estimate ranges of recovery by asset class. The Debtor does not provide any assurance of such recoveries but has given its best estimates in this scenario. The table on the following page summarizes the low and high range estimates of the Liquidation Proceeds that would be available to Holders of Allowed Claims and Interests for distribution in a chapter 7 liquidation.

**Ahern Rentals, Inc.**
**Liquidation Analysis**
**Estimated as of March 31, 2013**

**Estimated Recovery and Distribution to Claimants**

*($s in thousands)*

| | Estimated Balance (1) | Estimated Recovery Rate Low | Estimated Recovery Rate High | Estimated Liquidation Proceeds Low | Estimated Liquidation Proceeds High |
|---|---|---|---|---|---|
| **Assets Available for Distribution** | | | | | |
| Cash & Cash Equivalents (2) | $2,000 | 100% | 100% | $2,000 | $2,000 |
| Accounts Receivable (2) | 66,368 | 45% | 75% | 29,866 | 49,776 |
| Rental Equipment (3) | 245,080 | 104% | 125% | 255,550 | 306,914 |
| Transportation Equipment (3) | 19,758 | 100% | 102% | 19,700 | 20,076 |
| Parts and Merchandise (3) | 22,910 | 22% | 37% | 5,082 | 8,565 |
| New Equipment (3) | 6,263 | 53% | 69% | 3,338 | 4,316 |
| Furniture and Fixtures | 8,878 | 38% | 51% | 3,393 | 4,485 |
| Leasehold Improvements | 29,937 | 5% | 15% | 1,497 | 4,491 |
| Other | 17,896 | 23% | 36% | 4,040 | 6,468 |
| **Total Assets and Net Proceeds Available for Distribution** | | | | $324,466 | $407,091 |
| **Estimated Chapter 7 Wind-Down Administrative Costs** | | | | | |
| Chapter 7 Trustee Fees (4) | | | | $9,734 | $12,213 |
| Chapter 7 Professional Fees and Costs (5) | | | | 1,800 | 1,800 |
| Wind Down Costs (6) | | | | 11,954 | 0 |
| Carve-Out for Chapter 11 Professional Fees (7) | | | | 1,280 | 1,280 |
| Total Chapter 7 Wind-Down Administrative Costs | | | | $24,768 | $15,293 |
| **Net Proceeds after Chapter 7 Wind-Down Administrative Costs** | | | | $299,698 | $391,799 |
| **Estimated Creditor Recoveries** | Estimated Claim | | | | |
| Super-Priority DIP Loan Claims (8) | $217,759 | 100% | 100% | $217,759 | $217,759 |
| Secured Claims | | | | | |
| Kubota Claims | 144 | 100% | 100% | 144 | 144 |
| Term Loan Claims | 111,543 | 73% | 100% | 81,680 | 111,543 |
| Other Secured Claims | 115 | 100% | 100% | 115 | 115 |
| Second Lien Loan Secured Claims | 18,503 | 0% | 100% | 0 | 18,503 |
| **Estimated Proceeds Available after Payment of Secured Claims** | | | | $0 | $43,735 |
| Administrative Claims | | | | | |
| Unpaid Post-Petition Accounts Payable (2) | 14,958 | 0% | 100% | 0 | 14,958 |
| 503(b)(9) Claims | 534 | 0% | 100% | 0 | 534 |
| Rejection of Assumed Leases | 3,777 | 0% | 100% | 0 | 3,777 |
| **Estimated Proceeds Available after Payment of Administrative Claims** | | | | $0 | $24,467 |
| Other Priority Claims | $71 | 0% | 100% | 0 | 71 |
| Unsecured Claims (9) | $254,575 | 0% | 10% | 0 | 24,395 |
| **Total Claims Paid** | | | | $299,698 | $391,799 |
| **Net Proceeds Available to Equity Interests** | | | | $0 | $0 |

(1) All balances are estimated net book values as of March 31, 2013 (using unaudited October 31, 2012 balances as a proxy unless otherwise footnoted).
(2) Estimated as of March 31, 2013 in accordance with the Debtor's business plan.
(3) Equipment and parts and merchandise high values based on Orderly Liquidation Value provided by Rouse Asset Services as part of September 30, 2012 equipment appraisal with Net Liquidation Value / Orderly Liquidation Value ratio based upon the Net Liquidation Value report prepared by Rouse Asset Services as of March 31, 2012. Equipment and parts and merchandise low values based on Forced Liquidation Value provided by Rouse Asset Services as part of September 30, 2012 appraisal with an estimated 6% reduction for selling commissions and other related costs.
(4) Chapter 7 trustee fees in accordance with section 326 of the Bankruptcy Code and are estimated at 3% of Total Assets and Net Proceeds Available for Distribution.
(5) Assumes a six month wind down period at $300,000 per month to assist in legal and accounting wind down work.
(6) Estimated wind-down costs factored into Net Liquidation Value ratio for high recovery estimate; low recovery estimates assumes six months of declining operating costs.
(7) Estimated fees earned but not yet paid as of March 31, 2013.
(8) Estimated balance as of March 31, 2013 in accordance with Debtor's business plan.
(9) Includes General Unsecured Claims, Second Lien Loan Deficiency Claims and Personal Injury Claims.

v

## Specific Notes to the Asset and Liability Assumptions
## Contained in the Liquidation Analysis

- Cash and Equivalents. Cash is based on the estimated cash balance on the Debtor's financial statements as of March 31, 2013 in accordance with the Debtor's business plan and includes restricted and unrestricted Cash in any of the Debtor's bank, operating, and reserve accounts. The Liquidation Analysis assumes a 100% recovery rate for Cash based on the liquidity of such assets.

- Accounts Receivable. Accounts receivable include amounts owed to the Debtor by its customers and various other parties. Using the October 31, 2012 aging of the Debtor's accounts receivable as a proxy, and assuming that current accounts receivable are more likely to be collected in a liquidation than past due accounts, the Liquidation Analysis assumes a blended recovery rate of 45% - 75% on account of accounts receivable. This recovery is due to the impact of the low return anticipated on accounts receivable in the event of a chapter 7 liquidation.

- Rental Equipment. Rental Equipment generally consists of a broad variety of construction and industrial equipment, including aerial, earthmoving and general rental equipment. The Debtor estimates that the Net Book Value (NBV) of this equipment will be approximately $245.1 million as of March 31, 2013. The estimated high and low recovery values assumed in the Liquidation Analysis were developed using the Debtor's September 30, 2012 equipment appraisal conducted by Rouse Asset Services (the "Rouse Appraisal") as a proxy for estimated orderly liquidation values and forced liquidation values as a percentage of the estimated March 31, 2013 NBV. The high recovery assumes an 11.4% reduction for brokers' fees, facility charges, labor expense, transportation, fees to an auctioneer, and other expenses related to a liquidation of the Debtor's fleet equipment. The low recovery scenario assumes a 6% reduction for auctioneer and other fees related to a liquidation of the Debtor's fleet equipment, with a number of the costs and expenses associated with the high recovery scenario included in wind-down costs in the low recovery scenario.

- Transportation Equipment. Transportation equipment generally includes pick-up trucks, trailers, lowboys, and utility vehicles. The Debtor estimates that the NBV of this equipment will be approximately $19.8 million as of March 31, 2013. The estimated high and low recovery values assumed in the Liquidation Analysis were developed using the September 30, 2012 Rouse Appraisal as a proxy for estimated orderly liquidation values and forced liquidation values as a percentage of the estimated March 31, 2013 NBV. The high recovery assumes an 11.4% reduction for brokers' fees, facility charges, labor expense, transportation, fees to an auctioneer, and other expenses related to a liquidation of the Debtor's fleet equipment. The low recovery scenario assumes a 6% reduction for auctioneer and other fees related to a liquidation of the Debtor's fleet equipment, with a number of the costs and expenses associated with the high recovery scenario included in wind-down costs in the low recovery scenario.

- Parts and Merchandise. The Debtor estimates that the Net Book Value (NBV) of Parts and Merchandise will be approximately $22.9 million as of March 31, 2013. The estimated high and low recovery values assumed in the Liquidation Analysis were developed using the September 30, 2012 Rouse Appraisal as a proxy for estimated orderly liquidation values and forced liquidation values as a percentage of the estimated March 31, 2013 NBV. The high recovery assumes an 11.4% reduction for brokers' fees, facility charges, labor expense, transportation, fees to an auctioneer, and other expenses related to a liquidation of the Debtor's fleet equipment. The low recovery scenario assumes a 6% reduction for auctioneer and other fees related to a liquidation of the Debtor's fleet equipment, with a number of the costs and expenses associated with the high recovery scenario included in wind-down costs in the low recovery scenario.

- New Equipment. The Debtor estimates that the Net Book Value (NBV) of this equipment will be approximately $6.3 million as of March 31, 2013. The estimated high and low recovery values assumed in the Liquidation Analysis were developed using the September 30, 2012 Rouse Appraisal as a proxy for estimated orderly liquidation values and forced liquidation values as a percentage of the estimated March 31, 2013 NBV. The high recovery assumes an 11.4% reduction for brokers' fees, facility charges, labor expense, transportation, fees to an auctioneer, and other expenses related to a liquidation of the Debtor's fleet equipment. The low recovery scenario assumes a 6% reduction for auctioneer and other fees related to a liquidation of the Debtor's fleet equipment, with a number of the costs and expenses associated with the high recovery scenario included in wind-down costs in the low recovery scenario.

- Furniture and Fixtures. Furniture and Fixtures primarily include storage containers, dumpsters, shop equipment, computer equipment, office equipment and furniture and other.

- Leasehold Improvements. Leasehold Improvements primarily include improvements made to locations at which the Debtor is a lessee, including building improvements, paving, landscaping, lighting and other improvements to the Debtor's locations.

- Other Assets. Other assets primarily include deferred financing costs, prepaid expenses, deposits, and other assets.

## Liquidation Costs

To maximize recoveries on the Debtor's assets, minimize the amount of Claims, and generally ensure an orderly chapter 7 liquidation, the Trustee will need to continue to employ a number of the Debtor's employees for a limited amount of time during the chapter 7 liquidation process. These individuals will primarily be responsible for overseeing and maintaining the Debtor's operations, providing operational knowledge and insight to the Trustee regarding the Debtors' business operations, and concluding the administrative liquidation of the Debtor's equipment rental business after the sale of all the Debtor's assets. The Liquidation Analysis

assumes that the Trustee would reduce employee headcount to minimal staff levels from the current staff levels over a six month period.

Liquidation Costs primarily consist of: (a) the regularly occurring general and administrative costs required to operate the Debtor's business during the liquidation process; (b) the costs of any professionals the Trustee employs to assist with the liquidation process, including investment bankers, attorneys, and other advisors; and (c) the Trustee's fees (collectively, the "Liquidation Costs"). In addition, Liquidation Costs include the payment of an estimated $1.3 million on account of Professional Fees in accordance with the DIP Orders (the "Carve-Out"). The Liquidation Analysis assumes in the low recovery scenario that during the first month while the Trustee continues to operate the Debtor's business, the operational and overhead costs will equal approximately 45% of operating costs contained in the Debtor's projections in the first month, with such costs declining over the six month period to approximately 3% of projected costs by the sixth month of the liquidation process, during which the Trustee will wind-down the Debtor's Estate and effect final distributions. In the high recovery scenario, these costs are included in the 11.4% reduction to OLV.

### Claims and Interests

- DIP Loan Claims. The Liquidation Analysis assumes that approximately $217.8 million will be drawn on the DIP Loan as of the Conversion Date. Thus, there will be approximately $217.8 million outstanding on account of DIP Loan Claims as of the Conversion Date, which are projected to be satisfied in full from the Liquidation Proceeds.

- Kubota Claims. On the Conversion Date, the Debtor estimates there will be approximately $144,000 of allowed secured claims held by Kubota. Holders of Kubota Claims are secured by a first priority purchase money security interest in all products and any other tractors, engines, spare parts, attachments, accessories, implements and any and all other items and inventory sold by Kubota to the Debtor and are projected to be satisfied in full from the Liquidation Proceeds.

- Term Loan Claims. On the Conversion Date, the Debtor estimates there will be approximately $111.5 million outstanding on account of Term Loan Claims. Holders of Term Loan Claims are secured by a first priority lien on substantially all of the Debtor's assets pursuant to the Term Loan Credit Agreement. The Term Loan Claims are only secured to the extent that the value of the underlying Collateral equals or exceeds such Term Loan Claims. Accordingly, on the Conversion Date, Holders of Term Loan Claims will likely be entitled to a 73% - 100% recovery on account of such Claims. Additionally, these claimants are assumed to have super-priority claims for any diminution in value in their collateral that occurs before the Conversion Date.

- Other Secured Claims. On the Conversion Date, the Debtor estimates there will be approximately $115,324 in Other Secured Claims, consisting primarily of statutory real and personal property tax liens secured by the subject real or personal property. On the

- Conversion Date, Other Secured Claims are projected to be satisfied in full from the Liquidation Proceeds of the subject collateral.

- Second Lien Loan Secured Claims. Second Lien Loan Secured Claims consist of the Secured Claims held by the Holders of the Second Lien Note Claims. On the Conversion Date, the Debtor estimates the Allowed Second Lien Loan Secured Claims to be $18.5 million. Holders of Second Lien Loan Secured Claims are secured by a second priority lien on substantially all of the Debtor's assets pursuant to the Second Lien Indenture. Second Lien Loan Note Claims are only Secured to the extent that the value of the underlying Collateral equals or exceeds such Second Lien Loan Note Claims. The value of the Collateral is estimated by the Debtor's to be less than the value of the Second Lien Loan Note Claims as of the Petition Date. As such, Holders of Second Lien Loan Note Claims will not be entitled to any postpetition interest and will have a Secured Claim and a General Unsecured deficiency Claim against the Debtor. Accordingly, as reflected in the Liquidation Analysis, Holders of Secured Second Lien Loan Note Claims will be entitled to an estimated 0% - 100% recovery. Additionally, these claimants are assumed to have super-priority claims for any diminution in value in their collateral that occurs before the Conversion Date.

- Administrative and Priority Claims. Administrative and Priority Claims include estimated unpaid postpetition operating expenses of the Debtor's Chapter 11 Case, priority claims, unpaid 503(b)(9) claims and estimated rejection claims of leases assumed during the Debtor's Chapter 11 Case per section 503(b)(7) of the Bankruptcy Code. Administrative Claims are assumed paid on a pro rata basis from the net proceeds, if any, remaining after the payment of Liquidation Costs, DIP Loan Claims (including the Carve-Out) and Secured Claims. Priority Claims are assumed to be paid on a pro rata basis from the net proceeds available, if any, after the payment of Liquidation Costs, DIP Loan Claims (including the Carve-Out), Administrative Claims and Secured Claims. As reflected in the Liquidation Analysis, Holders of Administrative and Priority Claims will be entitled to an estimated 0% - 100% recovery.

- Unsecured Claims. Unsecured Claims consist of General Unsecured Claims, Personal Injury Claims and Second Lien Loan Deficiency Claims. On the Conversion Date, the Debtor estimates there will be approximately $3.0 million outstanding on account of General Unsecured Claims, $2.4 million outstanding on account of the Personal Injury Claims and $249.2 million Second Lien Loan Deficiency Claims. It should be noted that the Liquidation Analysis does not attempt to estimate potential additional General Unsecured Claims that would likely arise as a result of the rejection of executory contracts and the failure of the Debtor to perform under existing contracts with its customers. Such additional claims would likely result from a cessation of operations as contemplated herein and may be substantial. General Unsecured Claims are assumed to be paid on a pro rata basis from the net Liquidation Proceeds available, if any, after the payment of all other Claims. As reflected in the Liquidation Analysis, Holders of Unsecured Claims will be entitled to an estimated 0% - 10% recovery.

- Equity Interests. There are insufficient Liquidation Proceeds for Holders of Equity Interests to obtain any recovery in a chapter 7 liquidation.