_Bruce T Beesly_
Honorable Bruce T. Beesley
United States Bankruptcy Judge

Entered on Docket
June 06, 2013

GORDON SILVER
WILLIAM M. NOALL, ESQ., Nevada Bar No. 3549
E-mail: wnoall@gordonsilver.com
THOMAS H. FELL, ESQ., Nevada Bar No. 3717
E-mail: tfell@gordonsilver.com
GABRIELLE A. HAMM, ESQ., Nevada Bar 11588
E-mail: ghamm@gordonsilver.com
KIRK D. HOMEYER, ESQ., Nevada Bar No. 12402
E-mail: khomeyer@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666

and

DLA PIPER LLP (US)
GREGG M. GALARDI, ESQ., New York Bar No. 4535506
(Admitted *pro hac vice*)
E-mail: gregg.galardi@dlapiper.com
1251 Avenue of the Americas
New York, New York 10020
Telephone (212) 335-4640
Facsimile (212) 884-8540

Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| In re: | Case No.: BK-N-11-53860-BTB |
|---|---|
| AHERN RENTALS, INC., | Chapter 11 |
| Debtor. | **Confirmation Hearing**<br>**Date: June 5, 2013**<br>**Time: 9:30 a.m.** |

### ORDER CONFIRMING DEBTOR'S SECOND AMENDED PLAN OF <u>REORGANIZATION, AS AMENDED AND MODIFIED</u>

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1944186_5

The Confirmation Hearing[1] regarding the *Debtor's Second Amended Plan of Reorganization* [ECF No. 1796], as amended by the *First Amendment to Debtor's Second Amended Plan of Reorganization* [ECF No. 2084] and modified as set forth in the *Findings of Fact and Conclusions of Law Regarding Confirmation of Debtor's Second Amended Plan of Reorganization as Amended on May 24, 2013* (the "Plan"), filed under Chapter[2] 11 of the Bankruptcy Code by Ahern Rentals, Inc. ("Debtor") was concluded on June 5, 2013. Appearances of counsel are reflected in the Bankruptcy Court's record of the proceeding.

As set forth in the *Findings of Fact and Conclusions of Law Regarding Confirmation of Debtor's Second Amended Plan of Reorganization as Amended on May 24, 2013* (the "Findings and Conclusions"), entered concurrently herewith, the Bankruptcy Court determined, after notice and hearing, that the requirements for confirmation set forth in Section 1129(a) and (b) of the Bankruptcy Code have been satisfied.  Good cause appearing therefor:

**IT IS ORDERED, ADJUDGED AND DECREED** as follows:

1.      The Plan is CONFIRMED.  A copy of the confirmed Plan is attached hereto as **Exhibit "1."**

2.      Any objection, opposition, or response to the Plan that is not resolved by the terms of this Order, the Findings and Conclusions, or by a statement announced on the record of the Confirmation Hearing, and that is not otherwise withdrawn, waived, or settled, is hereby overruled and denied.

3.      The Findings and Conclusions, and any findings of fact and conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing in relation to confirmation of the Plan, shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014, and are incorporated herein by reference and are expressly made part of this Order.

---

[1] Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the Findings and Conclusions and the Plan, in that order.

[2] All references to "Chapter" and "Section" herein shall be to the "Bankruptcy Code" appearing in Title 11 of the U.S. Code; all references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure; and all references to "Local Rule" or "LR" shall be to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

2

104500-002/1944186_5

4.      Except as otherwise provided in Section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, but subject to the occurrence of the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against the Debtor and its successors and assigns, or in the assets of the Debtor, in each case regardless of whether the Claim of such Holder is Impaired under the Plan and whether such Holder has accepted the Plan.

5.      Notwithstanding anything to the contrary contained in the Plan or in this Order, the DIP Loan Agreement and the DIP Loan/Cash Collateral Order shall extend and continue in full force and effect until the later to occur of (i) the Effective Date and (ii) payment in full in Cash of all outstanding obligations under the DIP Loan Agreement, except for any contingent reimbursement obligations under outstanding letters of credit issued or deemed issued under the DIP Loan Agreement, with respect to which letters of credit the Debtor shall, on or before the Effective Date, cause the cancellation and return thereof to the DIP Agent, or the securing thereof by Cash or a back-to-back letter of credit, in each case as provided in the DIP Loan Agreement, unless such outstanding letters of credit are deemed issued under the ABL Exit Facility.

6.      The Debtor is authorized to increase the principal amount of the notes issued under the Notes Indenture from $415,000,000 to $420,000,000, and such increase is an exercise of the Debtor's reasonable business judgment and is in the best interests of the Estate and does not materially adversely affect or change the treatment of any Claims against the Debtor. Accordingly, such modification to the Exit Financing does not require additional disclosure under Section 1125 of the Bankruptcy Code or the resolicitation of acceptances or rejections under Section 1126 of the Bankruptcy Code, nor does it require that Holders of Claims against the Debtor be afforded an opportunity to change previously cast acceptances or rejections of the Plan as filed with the Bankruptcy Court.

7.      Notwithstanding anything to the contrary contained in the Plan or in this Order, the Term Loan Documents and the Majority Term Lender Cash Collateral Stipulation shall extend and continue in full force and effect until the later to occur of (i) the Effective Date and (ii) payment in full in Cash of all outstanding obligations under Section 3.4.1(b) of the Plan.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

3

104500-002/1944186_5

8.      Notwithstanding anything to the contrary contained in the Plan or in this Order, the Second Lien Loan Documents shall extend and continue in full force and effect until the later to occur of (i) the Effective Date and (ii) payment in full in Cash of all outstanding obligations under Section 3.4.2(b) of the Plan.  The payment of $10.0 Million in Cash to the Noteholder Group, in care of its counsel Bracewell & Giuliani LLP, pursuant to Section 3.4.2(b) of the Plan, is hereby approved and shall be made on the Effective Date and distributed by Bracewell & Giuliani LLP without any further order of the Bankruptcy Court.

9.      The Exit Financing Facility and the Exit Financing Facility Documents are hereby approved in all respects and shall constitute valid, binding, and enforceable agreements of Reorganized Ahern not in conflict with any federal or state laws.  The Exit Financing does not constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance.  The Exit Financing Facility is entered into by the parties in good faith and it is in the best interests of the Debtor and its Estate.

10.      On the Effective Date, pursuant to section 1142(b) of the Bankruptcy Code and without further action by the Bankruptcy Court or by the shareholders or directors of Reorganized Ahern, Reorganized Ahern is authorized, without further approval of the Bankruptcy Court or any other party, to enter into the Exit Financing, to perform all of its obligations thereunder and to execute and deliver all documents, agreements and instruments necessary or appropriate to enter into and perform all obligations under the Exit Financing and to take all other actions and execute, deliver, record and file all other such agreements, documents, instruments, financing statements, releases, applications, reports and any changes, additions, and modifications thereto in connection with the consummation of the transactions contemplated by the Exit Financing, including, without limitation, the making of such filings, granting of Liens or the recording of any security interests, as may be required by such Exit Financing.

11.      In connection with the Exit Financing:

(i) The obligations under the Exit Financing and all related mortgages and security agreements shall, upon execution, constitute legal, valid, binding and authorized obligations of each of the parties thereto, enforceable in accordance

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

4

104500-002/1944186_5

with their terms, and, as of the Effective Date, the security interests, Liens and mortgages (the "Exit Financing Liens") shall constitute legal, valid and duly perfected security interests, Liens, and mortgages against the collateral secured thereby. Neither the obligations created under the Exit Financing nor the Exit Financing Liens granted thereunder shall constitute a preferential transfer or fraudulent conveyance under federal or state law and will not subject the transferee to any liability by reason of the incurrence of such obligation or grant of such Exit Financing Liens under federal or state law, including, but not limited to, successor or transferee liability.

(ii) In the event an order dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, the Exit Financing Liens granted to each of the Exit Lenders (or any agent therefor) under the Exit Financing shall not be affected and shall continue in full force and effect in all respects and shall maintain their priorities and perfected status as provided in such documents until all obligations in respect thereof shall have been paid and satisfied in full and all commitments thereunder shall have been terminated. On the Effective Date, pursuant to section 1142(b) of the Bankruptcy Code and without further action by the Bankruptcy Court or by the shareholders or directors of Reorganized Ahern, Reorganized Ahern is authorized to enter into the Exit Financing, to perform all of its obligations thereunder and to execute and deliver all documents, agreements and instruments necessary or appropriate to enter into and perform all obligations under the Exit Financing and to take all other actions and execute, deliver, record and file all other such agreements, documents, instruments, financing statements, releases, applications, reports and any changes, additions and modifications thereto in connection with the consummation of the transactions contemplated by the Exit Financing, including, without limitation, the making of such filings, or the recording of any security interests, as may be required by such Exit Financing.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1944186_5

12. Also in connection with the Exit Financing:

(i) In the event any or all of the provisions of this Order are hereafter revised, modified, vacated or stayed, such reversal, stay, revision, modification or vacation shall not affect (1) the validity of any obligation, indebtedness or liability incurred by the Debtor to the Exit Lenders, or (2) the validity and enforceability of any Lien or priority authorized or created thereunder.

(ii) Notwithstanding any such reversal, stay, revision, modification or vacation, any indebtedness incurred under the Exit Financing by Reorganized Ahern prior to written notice to the respective Exit Lenders or the applicable agents and trustee for such Exit Lenders of the effective date of such reversal, stay, revision, modification or vacation shall be governed in all respects by the original provisions hereof and each of the Exit Lenders, including any and all agents and trustees for such Exit Lenders shall be entitled to all of its rights, privileges and benefits granted herein and pursuant to the Exit Financing.

13. Subject to the terms of the Plan, the Debtor is duly and validly authorized to consummate and implement the various transactions under the Plan and effectuate the various treatments of Claims as set forth in the Plan (including, but not limited to, making applicable payments to Holders of Claims as set forth in the Plan), to issue, execute, deliver, file, or record any and all documents necessary to implement the Plan, including, without limitation, the documents contained in the Plan Supplement and the Exit Financing Facility Documents, and other documents substantially in accord with the transactions contemplated by the Plan, and to take any action reasonably necessary or appropriate to implement the Plan, in accordance with its terms. All documents necessary to implement the Plan upon execution on or after the Effective Date and including those Exit Financing Facility Documents executed prior to the Effective Date will constitute valid, binding, and enforceable agreements not in conflict with any federal or state laws.

14. To the extent that any Holder of a Claim secured by a Lien or security interest (regardless of whether such Lien or security interest was properly perfected or whether there is

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1944186_5

any economic value to such Lien or security interest or whether such Claim is a Secured Claim) that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtor, Reorganized Ahern or any agent or trustee with respect to the Exit Financing, and the Debtor, Reorganized Ahern and any agent and trustee with respect to the Exit Financing are authorized to file or record any necessary documents or take any other steps, that are necessary to cancel and/or extinguish such publicly-filed Liens and/or security interests, in each case all costs and expenses in connection therewith to be paid by the Debtor or Reorganized Ahern.

15.     Notwithstanding anything to the contrary in this Order or the Plan, after the Effective Date, the Bankruptcy Court's retention of jurisdiction shall not govern the enforcement of the Exit Financing Facility Documents or any other agreements, documents, instruments and certificates executed in connection with the Exit Financing or any rights or remedies related thereto.

16.     The Debtor is hereby authorized (i) to assume, as of the Effective Date, pursuant to section 365(a) of the Bankruptcy Code, each Executory Contract and Unexpired Lease to which the Debtor is a party and which is (a) not listed in Exhibit E of the Plan Supplement, (b) not otherwise provided for in the Plan or Plan Supplement, (c) neither assumed, assumed and assigned, nor rejected by separate order prior to the Effective Date, or (d) the subject of a stipulation or other written agreement between the Debtor and the other party to a particular Executory Contract or Unexpired Lease, either approved or to be approved by the Bankruptcy Court; and (ii) to reject each Executory Contract and Unexpired Lease to which the Debtor is a party listed in Exhibit E of the Plan Supplement.

17.     With respect to the *Limited Objection to Debtor's Second Amended Plan of Reorganization* [ECF Nos. 2113, 2139, 2140] (collectively, the "LA Objection") filed by the County of Los Angeles Tax Collector ("LA"), Debtor shall satisfy LA's proof of Claim no. 719 (the "LA Claim"), to the extent it is an Allowed Claim, on the later to occur of (a) five (5)

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

7

Business Days following the Effective Date, or (b) when such tax related to the LA Claim becomes due. The foregoing treatment resolves the LA Objection.

18.    Payment obligations incurred after the Effective Date of the Plan shall not be subject to application or proof of Claim and shall be paid by Reorganized Ahern in the ordinary course of business and without further Bankruptcy Court approval. The Alternative Transaction Fee shall be a binding obligation of Reorganized Ahern.

19.    The releases, injunction, exculpation and related provisions set forth in Section 9 of the Plan are hereby approved and authorized in their entirety.

20.    The *Disclosure Statement to Accompany Debtor's Second Amended Plan of Reorganization* [ECF No. 1797], together with the *Supplement to Disclosure Statement to Accompany Debtor's first Amended Plan of Reorganization* [ECF No. 2086], including all exhibits thereto (the "Disclosure Statement") is hereby approved on a final basis.

21.    This Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any Claims, Equity Interests, Causes of Action, obligations, suits, judgments, damages, demands, debts, rights or liabilities released, exculpated or enjoined pursuant to the Plan.

22.    The Plan shall be substantially consummated on the Effective Date.

23.    This Order is a Final Order.

24.    The modifications to the Plan, as set forth in the Findings and Conclusions, are approved as necessary and appropriate, and the Plan is so modified. All references to the Plan in this Order and the Findings and Conclusions shall be to the Plan as so modified.

25.    To the extent the Findings and Conclusions and/or this Order is inconsistent with the Plan or the Disclosure Statement, the Findings and Conclusions and/or this Order shall govern.

**IT IS SO ORDERED.**

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

8

104500-002/1944186_5

1   PREPARED AND SUBMITTED:

2   GORDON SILVER

3

4   By: _Gabriell A. Hann_

WILLIAM M. NOALL, ESQ.

5   THOMAS H. FELL, ESQ.

GABRIELLE E. HAMM, ESQ.

6   KIRK D. HOMEYER, ESQ.

3960 Howard Hughes Pkwy., 9th Floor

7   Las Vegas, Nevada 89169

8   and

9

DLA PIPER LLP (US)

10   GREGG M. GALARDI, ESQ.

1251 Avenue of the Americas

11   New York, New York 10020

12   Attorneys for Debtor

---

**APPROVED**/~~DISAPPROVED~~:

COVINGTON & BURLING LLP

By:   _/s/ Michael St. Patrick Baxter_
MICHAEL ST. PATRICK BAXTER, ESQ.
1201 Pennsylvania Avenue NW
Washington, DC 20004-2401

and

DOWNEY BRAND LLP
SALLIE B. ARMSTRONG, ESQ.
100 W. Liberty Street, Suite 900
Reno, NV 89501

Attorneys for the Official Committee of
Unsecured Creditors

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1944186_5

9

1

**APPROVED**/~~DISAPPROVED~~:

**APPROVED**/~~DISAPPROVED~~:

2

MILBANK, TWEED, HADLEY
& MCCLOY LLP

BRACEWELL & GIULIANI LLP

3

4

By:   /s/ Haig M. Maghakian
ROBERT JAY MOORE, ESQ.

By:   /s/ Kurt A. Mayr
DANIEL S. CONNOLLY, ESQ.

5

HAIG M. MAGHAKIAN, ESQ.
601 South Figueroa Street, 30th Floor

1251 Avenue of the Americas, 49th Floor
New York, New York  10020-1104

6

Los Angeles, CA 90017

7

and

KURT A. MAYR, ESQ.
MARK E. DENDINGER, ESQ.

8

MCDONALD CARANO WILSON LLP

Goodwin Square
225 Asylum Street, Suite 2600

9

KAARAN E. THOMAS, ESQ.
100 West Liberty Street, 10th Floor

Hartford, Connecticut 06103

10

Reno, Nevada 89505-1670

and

11

Attorneys for the Majority Term Lenders

FENNEMORE  CRAIG  JONES  VARGAS

12

LAUREL E. DAVIS, ESQ.
CRAIG S. DUNLAP, ESQ.

13

300 South Fourth Street, Suite 1400
Las Vegas, Nevada 89101

14

Telephone: (702) 692-8000
Facsimile: (702) 692-8099

15

Email: ldavis@fclaw.com

16

Attorneys for the Noteholder Group

17

18

19

**APPROVED**/~~DISAPPROVED~~:

**APPROVED**/~~DISAPPROVED~~:

20

SHEPPARD MULLIN RICHTER &
HAMPTON LLP

ANTHONY A. ZMAILA LIMITED PLLC

21

22

By:   /s/ Kyle Mathews
KYLE MATHEWS, ESQ.

By:   /s/ Anthony A. Zmaila
ANTHONY A. ZMAILA, ESQ.

23

333 South Hope Street

265 East Warm Springs Rd., Suite 100

24

Forty-Third Floor
Los Angeles , CA 90071

Las Vegas, NV 89119

25

Attorneys for Kubota Tractor Corporation

26

Attorneys for 2nd Lien Indenture Trustee

27

28

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1944186_5

APPROVED/~~DISAPPROVED~~:

KAYE SCHOLER LLP

By:   Marc D. Rosenberg
     MARC D. ROSENBERG, ESQ.
     NEAL HAMPTON, ESQ.
     425 Park Avenue
     New York, NY 10022-3598

     and

     SNELL & WILMER
     ROBERT R. KINAS, ESQ.
     3883 Howard Hughes Parkway
     Suite 1100
     Las Vegas, NV 89169-5958

     Attorneys for Bank of America, N.A. and
     Merrill Lynch, Pierce, Fenner & Smith
     Incorporated

APPROVED/~~DISAPPROVED~~:

WOODBURN & WEDGE

By:   John F. Murtha
     JOHN F. MURTHA, ESQ.
     6100 Neil Rd, #500
     Reno, NV 89511

     Attorneys for Don Ahern, DFA, LLC, and
     Xtreme Manufacturing, LLC

APPROVED/~~DISAPPROVED~~:

VEDDER PRICE

By:   /s/ Sarah V. Carrasco
     DOUGLAS J. LIPKE, ESQ.
     WILLIAM W. THORSNESS, ESQ.
     222 North LaSalle Street
     Chicago, Illinois 60601

     and

     CARRASCO LAW PRACTICE, LLC
     SARAH V. CARRASCO, ESQ.
     3495 Lakeside Drive #251
     Reno, Nevada 89509

     Attorneys for Banc of America Leasing
     and Capital, LLC

APPROVED/~~DISAPPROVED~~:

GOOLD PATTERSON

By:   /s/ Jeffrey D. Patterson
     JEFFREY D. PATTERSON, ESQ.
     KELLY J. BRINKMAN, ESQ.
     1975 Village Center Circle, Suite 140
     Las Vegas, Nevada 89134

     Attorneys for County of Los Angeles Tax
     Collector

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1944186_5

11

## **LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐    The court waived the requirement of approval under LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion.

☒    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated above.

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objection to the form or content of the order.

###

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1944186_5

# EXHIBIT 1

GORDON SILVER
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: ggordon@gordonsilver.com
WILLIAM M. NOALL, ESQ.
Nevada Bar No. 3549
E-mail: wnoall@gordonsilver.com
THOMAS H. FELL, ESQ.
Nevada Bar No. 3717
E-mail: tfell@gordonsilver.com
GABRIELLE A. HAMM, ESQ.
Nevada Bar No. 11588
E-mail: ghamm@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
Attorneys for Debtor

and

DLA PIPER LLP (US)
GREGG M. GALARDI, ESQ.
New York Bar No. 4535506
E-mail: gregg.galardi@dlapiper.com
(Admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Telephone (212) 335-4640
Facsimile (212) 884-8540
Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: BK-N-11-53860-BTB<br>Chapter 11 |
| AHERN RENTALS, INC., | |
| Debtor. | **Confirmation Hearing:**<br>**June 5, 2013, 9:30 a.m.** |

## DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
### (REVISED AND CONFORMED)

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

# TABLE OF CONTENTS

Page

1.    DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME ................................................................................................................. 1

    1.1.    Definitions .......................................................................................... 1

    1.2.    Rules of Interpretation ...................................................................... 17

    1.3.    Computation of Time ........................................................................ 17

    1.4.    Exhibits, Annexes and Plan Schedules ............................................ 17

2.    TREATMENT OF UNCLASSIFIED CLAIMS ............................................. 17

    2.1.    General .............................................................................................. 17

    2.2.    Treatment of Administrative Claims ................................................ 18

    2.3.    Allowed Priority Tax Claims ........................................................... 19

3.    DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS ................ 19

    3.1.    Summary of Classification ............................................................... 19

    3.2.    Acceptance by Impaired Class ......................................................... 21

    3.3.    Cramdown ........................................................................................ 21

    3.4.    Treatment of Classes ........................................................................ 21

        3.4.1    Class 1: Term Loan Claims ................................................. 21

        3.4.2    Class 2: Second Lien Loan Claims ...................................... 21

        3.4.3    Class 3: Kubota Claims ....................................................... 22

        3.4.4    Class 4: Other Secured Claims ............................................ 23

        3.4.5    Class 5: Other Priority Claims ............................................ 23

        3.4.6    Classes 6A to 6L: Personal Injury Claims .......................... 23

        3.4.7    Class 7: General Unsecured Claims ..................................... 25

        3.4.8    Class 8: Convenience Claims .............................................. 25

        3.4.9    Class 9: Equity Interests ...................................................... 26

    3.5.    Allowed Claims ................................................................................ 26

    3.6.    Postpetition Interest ......................................................................... 26

    3.7.    Special Provision Regarding Unimpaired Claims ........................... 27

4.    MEANS FOR IMPLEMENTATION OF PLAN ........................................... 27

    4.1.    Plan Funding ..................................................................................... 27

    4.2.    Reserved ........................................................................................... 27

    4.3    Reorganized Ahern ........................................................................... 27

    4.4.    Additional Reorganized Ahern Provisions ...................................... 27

    4.5.    New Financing .................................................................................. 27

    4.6.    Effective Date Events ....................................................................... 28

    4.7.    Post-Effective Date Officers and Directors of Reorganized Ahern ...................... 28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

i

| | | | |
|---|---|---|---|
| | 4.8. | Establishment of Professional Fee Reserve | 28 |
| | 4.9. | No Corporate Action Required | 29 |
| | 4.10. | Effectuation of Transactions | 29 |
| | 4.11. | Filing with Nevada Secretary | 29 |
| 5. | | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 29 |
| | 5.1. | Executory Contracts | 29 |
| | 5.2. | Approval of Assumption or Rejection | 28 |
| | 5.3. | Cure of Defaults | 30 |
| | 5.4. | Objection to Cure Amounts | 31 |
| | 5.5. | Confirmation Order | 31 |
| | 5.6. | Post-Petition Date Contracts and Leases | 31 |
| | 5.7. | Rejection Claims Bar Date | 31 |
| | 5.8. | Director and Officer Liability Insurance | 31 |
| | 5.9. | Indemnification | 31 |
| 6. | | MANNER OF DISTRIBUTION OF PROPERTY UNDER THE PLAN | 32 |
| | 6.1. | Distributions | 32 |
| | 6.2. | Timing and Calculation of Amounts to Be Distributed | 32 |
| | 6.3. | Rights and Powers of Disbursing Agent | 33 |
| | 6.4. | Providing for Claims Payments | 33 |
| | 6.5. | Means of Cash Payment | 33 |
| | 6.6. | Application of Record Date | 34 |
| | 6.7. | Claims Paid or Payable by Third Parties | 34 |
| | 6.8. | Allocation of Plan Distributions Between Principal and Interest | 35 |
| | 6.9. | Setoffs | 35 |
| | 6.10. | Fractional Distributions | 35 |
| | 6.11. | De Minimis Distributions | 35 |
| | 6.12. | Prepayment | 35 |
| | 6.13. | No Distribution in Excess of Allowed Amounts | 35 |
| | 6.14. | Joint Distributions | 35 |
| | 6.15. | No Recourse | 36 |
| | 6.16. | Statements | 36 |
| | 6.17. | Further Authorization | 36 |
| 7. | | PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS | 36 |
| | 7.1. | Resolution of Disputed Claims | 36 |
| | 7.2. | No Distribution Pending Allowance | 37 |
| | 7.3. | Resolution of Objections After Effective Date | 37 |

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

7.4.    Distributions After Allowance .................................................................. 37

7.5.    Estimation of Claims .................................................................................. 37

7.6.    Deadline to File Objections to Claims ...................................................... 37

7.7.    Late-Filed Claims ...................................................................................... 37

7.8.    Reservation of Right to Object to Allowance or Asserted Priority of
Claims ........................................................................................................ 38

8.    CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE
DATE ..................................................................................................................... 38

8.1.    Conditions to Confirmation ...................................................................... 38

8.2.    Conditions to Effectiveness ...................................................................... 38

8.3.    Notice of Effectiveness ............................................................................. 39

8.4.    Waiver of Conditions ................................................................................ 39

9.    TITLE TO PROPERTY; DISCHARGE; AND INJUNCTION .................................. 40

9.1.    Vesting of Assets ...................................................................................... 40

9.2.    Preservation of Litigation Claims ............................................................ 40

9.3.    Settlement of Litigation Claims ............................................................... 40

9.4.    Discharge ................................................................................................... 40

9.5.    Compromise and Settlement ..................................................................... 40

9.6.    Releases ...................................................................................................... 41

9.7.    Injunction .................................................................................................. 41

9.8.    Exculpation ............................................................................................... 41

10.    RETENTION OF JURISDICTION .......................................................................... 43

10.1.    Jurisdiction ............................................................................................... 43

11.    MODIFICATION AND AMENDMENT OF PLAN .................................................. 44

12.    MISCELLANEOUS ................................................................................................. 44

12.1.    Effectuating Documents; Further Transactions; and Timing .................... 44

12.2.    Cancellation of Existing Agreements ....................................................... 45

12.3.    Exemption from Transfer Taxes ............................................................... 45

12.4.    Revocation or Withdrawal of the Plan ..................................................... 45

12.5.    Term of Bankruptcy Injunction or Stays .................................................. 46

12.6.    Enforcement of Subordination .................................................................. 46

12.7.    Binding Effect ........................................................................................... 46

12.8.    Plan Supplement ....................................................................................... 46

12.9.    Committees ................................................................................................ 46

12.10.    Governing Law .......................................................................................... 46

12.11.    Modification of Payment Terms ............................................................... 46

12.12.    Notices ....................................................................................................... 46

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

iii

12.13.  Severability ............................................................................................ 47

12.14.  Withholding and Reporting Requirements ........................................ 47

12.15.  Fees and Reporting to the U.S. Trustee .............................................. 48

12.16.  Section 1125(e) of the Bankruptcy Code ............................................. 48

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

iv

104500-002/1951452_3

Ahern Rentals, Inc., a Nevada corporation ("Debtor"), proposes this Plan of Reorganization (the "Plan") for the resolution of Debtor's outstanding Claims and Equity Interests. All Creditors (as defined herein), Holders of Equity Interests (as defined herein) and other parties-in-interest should refer to the Disclosure Statement (as defined herein) for a discussion of Debtor's history, assets, historical financial data, and for a summary and analysis of the Plan and certain related matters.

All Holders of Claims and Equity Interests against Debtor are encouraged to read the Plan, the Disclosure Statement, and the related solicitation materials in their entirety before voting to accept or reject the Plan.

Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019 and Local Rule 3019, and those restrictions or modifications set forth in **Article 11** to the Plan, Debtor expressly reserves the right to alter, amend, strike, withdraw or modify the Plan one or more times before the Effective Date.

## 1. DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

**1.1.    Definitions.** For purposes of the Plan, and except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article 1. Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed thereto in the Bankruptcy Code or the Bankruptcy Rules, in that order of priority. Whenever the context requires, such terms shall include the plural as well as the singular, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

**1.1.0.    ABL Exit Facility.** A senior secured first-priority asset based revolving credit facility in an aggregate principal amount of up to $325,000,000.

**1.1.1.    Administrative Claim.** A Claim for any cost or expense of administration of the Estate allowed under Sections 503(b), 507(b), 546(c)(2) and 1114(e)(2) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, but not limited to: (i) any fees payable pursuant to Section 1930 of Title 28 of the United States Code; (ii) the actual and necessary costs and expenses, including Taxes, incurred on or after the Petition Date of preserving the Estate and operating the business of Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (iii) the value of any goods received by Debtor within twenty (20) days before the Petition Date which goods have been sold to Debtor in the ordinary course of its business; (iv) the Superpriority Claims (as defined in the DIP Loan/Cash Collateral Order) granted in favor of the DIP Loan Agent and approved by the Bankruptcy Court in the DIP Loan/Cash Collateral Order; and (v) the First Lien Adequate Protection Obligations (as defined in both the Majority Term Lender Cash Collateral Stipulation and the DIP Loan/Cash Collateral Order) granted in favor of the First Lien Agent, the First Lien Collateral Agent, and the Term Lenders and approved by the Bankruptcy Court in the DIP Loan/Cash Collateral Order; *provided*, *however*, that an Administrative Claim shall not include a Professional Fee Claim, Other Priority Claim or Priority Tax Claim. To the extent that a Claim is allowed as an Administrative Claim pursuant to Section 365(d)(3) and (d)(5) of the Bankruptcy Code, such Claim shall also be deemed an Administrative Claim under this paragraph.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

1

104500-002/1951452_3

**1.1.2. Administrative Claims Bar Date.**  5:00 p.m. (prevailing Pacific Time) on the first Business Day occurring after the sixtieth (60th) day following the Effective Date.

**1.1.3. Administrative Claims Objection Deadline.**  The first Business Day following the later of (i) 120 days following the Effective Date and (ii) such other date as may be established by an order of the Bankruptcy Court.

**1.1.4. Affiliate.**  This term has the meaning set forth in Section 101(2) of the Bankruptcy Code.

**1.1.5. Allowed.**  Any Claim or Equity Interest that is not a Disputed Claim or a Disallowed Claim.

**1.1.6. Allowed Administrative Claim.**  An Administrative Claim as to which: (i) no objection has been filed by the Administrative Claims Objection Deadline; (ii) any objection to such Claim has been resolved by the allowance of such Administrative Claim by a Final Order of the Bankruptcy Court; or (iii) the Claim arises after the Petition Date and before the Effective Date, and requires payment in the ordinary course of Debtor's business and as to which there is no Final Order of the Bankruptcy Court in effect that prohibits any such payment.

**1.1.7. Allowed Claim.**  A Claim against the Debtor (i) that has been scheduled as a liquidated, non-contingent, and undisputed Claim in an amount greater than zero on the Schedules, subject to Debtor's right to amend the Schedules on or before the Claims Objection Deadline, (ii) as to which no objection or request for estimation has been filed on or before the Administrative Claims Objection Deadline, the Claims Objection Deadline or the expiration of any other applicable period fixed by the Bankruptcy Court or the Plan; (iii) as to which any and all objections have been settled, waived, withdrawn or denied by a Final Order or in accordance with the Plan; or (iv) that is allowed (a) by a Final Order, (b) by an agreement between the Holder of such Claim and the Debtor or Reorganized Ahern or (c) pursuant to the terms of the Plan.  For the avoidance of doubt, an Allowed Claim (i) shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law and (ii) unless otherwise specified herein, or required by Section 506(b) of the Bankruptcy Code or specified in a Final Order of the Bankruptcy Court, shall not include any interest on such Claim accruing from or after the Petition Date through the Effective Date.

**1.1.8. Allowed . . . Claim.**  An Allowed Claim of the particular type or Class described.

**1.1.9. Allowed Equity Interest.**  An Equity Interest that is allowed pursuant to: (i) the Plan; (ii) any stipulation executed with Debtor prior to the Confirmation Date and approved by the Bankruptcy Court; (iii) any stipulation with Debtor or Reorganized Ahern, as applicable, executed on or after the Confirmation Date and approved by the Bankruptcy Court; or (iv) any contract, instrument, indenture or other agreement entered into or assumed in connection herewith.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

2

**1.1.10. Assets.** All of the assets, property, interests, including Equity Interests, and effects, Cash, receivables, real and personal, tangible and intangible, wherever situated, of Debtor, as they exist on the Effective Date.

**1.1.11. Avoidance Actions.** All avoidance, recovery, subordination and other similar actions preserved for the Estate under the Bankruptcy Code, including but not limited to those set forth in Sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code regardless of whether or not such action has been commenced prior to the Effective Date.

**1.1.12. Ballot(s).** Each of the ballot forms distributed to each Holder of a Claim or Equity Interest entitled to vote to accept or reject the Plan.

**1.1.13. Balloting Agent.** Kurtzman Carson Consultants, LLC.

**1.1.14. Bankruptcy Code.** The Bankruptcy Reform Act of 1978, Title 11, United States Code, as applicable to the Chapter 11 Case, as now in effect or hereafter amended, 11 U.S.C. §§ 101 *et seq.*

**1.1.15. Bankruptcy Court.** The United States Bankruptcy Court for the District of Nevada, having jurisdiction over the Chapter 11 Case and, to the extent of the withdrawal of any reference under Section 157 of Title 28 of the United States Code and/or the General Order of the District Court pursuant to Section 151 of Title 28 of the United States Code, the United States District Court for the District of Nevada.

**1.1.16. Bankruptcy Rules.** The Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the general, local and chambers rules of the Bankruptcy Court.

**1.1.17. Bar Date.** The date or dates established by the Plan, orders of the Bankruptcy Court, the Bankruptcy Code or the Bankruptcy Rules for the filing of proofs of Claim or requests for payment pursuant to Sections 501, 502, and 503 of the Bankruptcy Code.

**1.1.17.5. Bridge Exit Loan Facility.** A senior secured bridge loan facility in an aggregate principal amount of $415,000,000.

**1.1.18. Business Day.** Any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York, New York.

**1.1.19. Cash.** The legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, wire transfers and other cash equivalents.

**1.1.20. Causes of Action.** Any action, proceeding, agreement, Claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) Avoidance Action; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in Section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

**1.1.20.5.    Change of Control.**  Means (1) any "person" (as such term is used in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934, as amended), other than one or more Permitted Holders, is or becomes the beneficial owner (as defined in Rules 13d-3 and 13d-5 under the Securities Exchange Act of 1934, as amended, except that such person shall be deemed to have "beneficial ownership" of all shares that any such person has the right to acquire, whether such right is exercisable immediately or only after the passage of time), directly or indirectly, of more than 50% of the total voting power of the voting securities of Reorganized Ahern or its Surviving Person or more than 50% of the economics of the capital stock of Reorganized Ahern or its Surviving Person (for the purposes of this clause, such person shall be deemed to beneficially own any voting securities or capital stock of Reorganized Ahern or its Surviving Person held by an entity, if such person "beneficially owns" (as defined below), directly or indirectly, more than 50% of the voting power of the voting securities of such entity); (2) the Permitted Holders "beneficially own" (as defined in Rules 13d-3 and 13d-5), directly or indirectly, less than 50% of the total voting power of the Voting Securities of Reorganized Ahern or its Surviving Person or less than 50% of the economics of the capital stock of Reorganized Ahern or its Surviving Person; or (3) the sale, lease, transfer, conveyance or other disposition, in one or a series of transactions, of all or substantially all of the assets, properties or businesses (by value) of Reorganized Ahern, including pursuant to section 363 of the Bankruptcy Code or a plan of reorganization (including a sale of reorganized equity or capital stock pursuant to a plan of reorganization) under the Bankruptcy Code in any future bankruptcy filing of Reorganized Ahern.   For purposes of this definition, "Surviving Person" means any Person formed by the consolidation of Reorganized Ahern or into which Reorganized Ahern is merged, or any Person that acquires by conveyance or transfer, or that leases, all or substantially all of the properties and assets of Reorganized Ahern substantially as an entirety.

**1.1.21. Chapter 11 Case.**  The above-captioned bankruptcy case of Ahern Rentals, Inc. pending in the Bankruptcy Court.

**1.1.22. Claim.**  Any (i) claim against the Debtor as defined in Section 101(5) of the Bankruptcy Code or (ii) any request for payment or expense of the Debtor that arises on or after the Petition Date and before the Effective Date.

**1.1.23. Class.**  A category of Holders of Claims or Equity Interests pursuant to Section 1122(a) of the Bankruptcy Code as classified in the Plan.

**1.1.24. Collateral.**  Any property or interest in property of the Estate subject to a lien or security interest to secure the payment or performance of a Claim, which lien or security interest is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

**1.1.25. Committee.**  Collectively, any committee appointed pursuant to Section 1102 of the Bankruptcy Code in the Chapter 11 Case, as such committee may be reconstituted from time to time.

**1.1.26. Confirmation Date.**  The date upon which the Bankruptcy Court enters the

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

4

104500-002/1951452_3

Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

**1.1.27. Confirmation Hearing.** The duly noticed initial hearing held by the Bankruptcy Court to confirm the Plan pursuant to Section 1128 of the Bankruptcy Code, and any subsequent hearing held by the Bankruptcy Court from time to time to which the initial hearing is adjourned without further notice other than the announcement of the adjourned dates at the Confirmation Hearing.

**1.1.28. Confirmation Order.** The order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

**1.1.29. Contingent Claim.** A Claim that is contingent or unmatured on or immediately before the Confirmation Date.

**1.1.29.3. Contingent Value Rights.** Those certain rights issued pursuant to a Contingent Value Rights Agreement entitling holders thereof to receive an additional Twenty-Five Million Dollars ($25.0 Million), in the aggregate, from Reorganized Ahern upon a Change of Control occurring on or before the CVR Expiration Date, which right shall be unsecured and unsubordinated claims against Reorganized Ahern. The terms and conditions of the Contingent Value Rights shall be provided in the Contingent Value Rights Agreement, which shall be attached to the Plan Supplement. The Contingent Value Rights shall be issued pursuant to an exemption from registration under the Securities Act of 1933, as amended, provided by Section 1145 of the Bankruptcy Code and shall be freely transferrable by the holders thereof.

**1.1.29.5. Contingent Value Rights Agreement.** An agreement to be executed by and between Reorganized Ahern and any Permitted Holders and the Noteholder Group providing for the unsecured and unsubordinated obligation of Reorganized Ahern to pay to the holders of the Contingent Value Rights an additional Twenty-Five Million Dollars ($25.0 Million), in the aggregate, upon a Change of Control occurring on or before the CVR Expiration Date.

**1.1.30. Convenience Claim.** A General Unsecured Claim for which the Allowed amount of such Claim is less than or equal to $5,000 and the Holder of which makes the Convenience Class Election.

**1.1.31. Convenience Class Election.** The right of each Holder of an Allowed General Unsecured Claim for which the amount of such Holder's Allowed General Unsecured Claim is less than or equal to $5,000 to elect to receive Cash in an amount equal to 85% of such Holder's Allowed General Unsecured Claim.

**1.1.32. Creditor.** A "creditor" as defined in Section 101(10) of the Bankruptcy Code.

**1.1.33. Cure.** The payment of Cash or the distribution of other property by the Debtor (as the parties may agree or the Bankruptcy Court may order) that is necessary for the Debtor to cure monetary defaults under an executory contract or unexpired lease so as to permit the Debtor to assume that contract or lease under Section 365(a) of the Bankruptcy Code.

**1.1.33.5. CVR Expiration Date.** Means the date that is two (2) years following the Effective Date; provided, however, that if Reorganized Ahern, any subsidiary of Reorganized Ahern and/or one or more of the Permitted Holders enter into a letter of intent, memorandum of

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

5

understanding, term sheet or other written agreement prior to the date that is two (2) years following the Effective Date regarding a transaction or series of related transactions that would constitute a Change of Control upon the consummation of such transaction(s) and such transaction is subsequently consummated after the date that is two (2) years following the Effective Date, the CVR Expiration Date shall be extended to a date that is thirty (30) days after the date such transaction is consummated.

**1.1.34. D&O Liability Insurance Policies.**  All insurance policies of the Debtor or current or past officers, directors, and managers providing liability coverage for the Debtor and such officers, directors and/or managers.

**1.1.35. Debtor.**  As defined in the introduction above.

**1.1.36. DIP Lenders.**  The lenders, including all successors and assigns, to Debtor pursuant to the DIP Loan Agreement.

**1.1.37. DIP Loan.**  The borrowings by, letters of credit issued for the account of, and other extensions of credit provided to the Debtor pursuant to the DIP Loan Agreement, the DIP Loan/Cash Collateral Order, and the other DIP Loan Documents.

**1.1.38. DIP Loan Agents.**   Bank of America, N.A., in its capacity as Administrative Agent and a Decision Agent under the DIP Loan Agreement, Wells Fargo Bank, N.A., in its capacity as Collateral Agent and a Decision Agent under the DIP Loan Agreement, and General Electric Capital Corporation, as a Decision Agent, under the DIP Loan Agreement.

**1.1.39. DIP Loan Agreement.**   The Debtor-in-Possession Loan and Security Agreement, dated as of December 27, 2011, together with all amendments, modifications and supplements thereto, executed by, among others, the DIP Lenders, Debtor and the DIP Loan Agents.

**1.1.40. DIP Loan/Cash Collateral Motion.**  The Emergency Motion for Interim and Final Orders (i) Authorizing Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e), Use of Cash Collateral Pursuant to 11 U.S.C. § 363, and Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, (II) Approving Related Stipulation(s), and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c), filed on December 27, 2011, appearing on the docket of the Chapter 11 Case as Dkt. 17, that provided for, among other things, a roll-up of the revolving credit facility loans under the Term Loan Credit Facility into the DIP Loan under the DIP Loan Agreement and the terms of the Debtor's consensual use of Term Loan Credit Facility and DIP Loan cash collateral.

**1.1.41. DIP Loan/Cash Collateral Order.**  The Final Order entered on January 31, 2012, approving the DIP Loan/Cash Collateral Motion and the Majority Term Lender Cash Collateral Stipulation and appearing on the docket of the Chapter 11 Case as Dkt. 329.

**1.1.42. DIP Loan Claims.**  All Claims arising under or related to the DIP Loan or any of the DIP Loan Documents.

**1.1.43. DIP Loan Collateral.**  The Collateral subject to the Lien under the DIP Loan Documents.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

6

**1.1.44. DIP Loan Documents.** The DIP Loan Agreement, together with all other documents and orders related to any of the DIP Loan and DIP Loan Claims, including, to the extent relating to any of the foregoing, the DIP Loan/Cash Collateral Order, and any and all other amendments, supplements, or modification to the foregoing.

**1.1.45. DIP Loan Notes.** The DIP Loan Notes, if any, issued by Debtor pursuant to the DIP Loan Agreement.

**1.1.46. Disallowed Claim.** Any Claim against the Debtor that has been disallowed, in whole or in part, by Final Order or written agreement between the Debtor and the Holder of such Claim, to the extent of such disallowance.

**1.1.47. Disbursing Agent.** Reorganized Ahern or the Person or Persons chosen by Reorganized Ahern to make or facilitate Distributions pursuant to the Plan.

**1.1.48. Disclosure Statement.** The disclosure statement for the Plan, as amended, supplemented or modified from time to time, describing the Plan, which disclosure statement is prepared and distributed in accordance with, among others, Sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and any other applicable law.

**1.1.49. Disputed Claim or Disputed Equity Interest.** Any Claim or Equity Interest or any portion of a Claim or Equity Interest against the Debtor that is not an Allowed Claim or a Disallowed Claim. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no proof of Claim has been timely filed, is a Disputed Claim and shall be resolved in accordance with Article 7 of the Plan.

**1.1.50. Distribution.** Any distribution by Debtor or Reorganized Ahern to the Holders of Allowed Claims and Holders of Allowed Equity Interests.

**1.1.51. Distribution Date.** The date, occurring as soon as practicable after the Effective Date, on which the Disbursing Agent first makes Distributions to Holders of Allowed Claims as provided in Article VI hereof and any date thereafter on which the Disbursing Agent makes Distributions to Holders of Allowed Claims as provided in Article VI hereof.

**1.1.52. Effective Date.** The first Business Day after the fourteenth (14th) day following the entry of the Confirmation Order on which (i) the conditions set forth in **Section 8.2** below have been satisfied or waived; and (ii) the effectiveness of the Confirmation Order shall not be stayed and it shall be a Final Order.

**1.1.53. Equity Interest.** Any share of common stock, preferred stock, membership interest or other instrument evidencing an ownership interest in Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest in the Debtor that existed immediately prior to the Effective Date.

**1.1.54. Estate.** As to Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code.

**1.1.55. Exculpated Claim.** Any Claim related to any act or omission in connection with, relating to, or arising out of Debtor's in or out of court restructuring efforts, the

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

7

104500-002/1951452_3

Chapter 11 Case, formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement, the Plan (including any term sheets related thereto) or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of consummation, the administration and implementation of the Plan, or the Distribution of Assets under the Plan or any other agreement.

**1.1.56.** **Executory Contract.**  A contract to which Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.1.57.** **Exit Financing.**  (a) the ABL Exit Facility and (b) (i) the Notes Offering or (ii) if the Notes Offering is not consummated, the Bridge Loan Facility.

**1.1.58.** **Exit Financing Facility.**  The credit facility or facilities established pursuant to the Exit Financing Facility Documents.

**1.1.59.** **Exit Financing Facility Collateral Agent.**  The collateral agent with respect to the Exit Financing Facility Documents to be appointed prior to or on the Effective Date.

**1.1.60.** **Exit Financing Facility Documents.**  The agreements and related documents and instruments evidencing the Exit Financing, to be reasonably necessary to satisfy the DIP Loan Claims, Term Loan Claims, and Second Lien Loan Claims and support other payments required to be made under the Plan.

**1.1.61.** **Exit Lenders.**  The banks, financial institutions and other institutional investors party to the Exit Financing Facility Documents, including Jefferies Finance LLC or its designees and affiliates (including Jefferies LLC), Bank of America, N.A., Jefferies Finance LLC, Wells Fargo, N.A., and Regions Bank, and any administrative agent, indenture trustee, collateral agent or arranger, from time to time, each in their capacity as such.

**1.1.62.** **Federal Judgment Rate.**  The post-judgment interest rate established by Section 1961 of Title 28 of the United States Code and provided by the Federal Reserve and published every Monday for the preceding week.

**1.1.63.** **Final Order.**  An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, entered on the docket of such court, that has not been reversed, rescinded, stayed, modified or amended, that is in full force and effect, and as to which order or judgment: (i) the time to appeal, seek review or rehearing, or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending; or (ii) any appeal taken or petition for certiorari or request for reargument or further review or rehearing filed (a) has been resolved by the appellate court to which the order or judgment was appealed or from which review, rehearing or certiorari was sought or (b) has not yet been resolved by such appellate court, but such order has not been stayed pending appeal. Notwithstanding the foregoing, the Confirmation Order shall become a Final Order on the 14th day following entry of such Confirmation Order unless any appeal of such Confirmation Order is accompanied by a stay pending appeal.

**1.1.64.** **General Unsecured Claim.**  Any Unsecured Claim against the Debtor that

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

8

104500-002/1951452_3

arose or accrued prior to the Petition Date that is not an Administrative Claim, Other Priority Claim, Priority Tax Claim, Personal Injury Claim, or Convenience Claim.

**1.1.65. Governmental and Regulatory Authority.**  Any court, tribunal, arbiter, authority, agency, commission, official or other governmental body or instrumentality in the United States, any foreign country or any domestic or foreign county, city or other political subdivision.

**1.1.66. Holder.**  Each Person that has an Equity Interest or a Claim.

**1.1.67. Impaired.**  This term shall have the meaning set forth in Section 1124 of the Bankruptcy Code.

**1.1.68. Insurance Policies.**  Collectively, all of the Debtor's insurance policies issued to the Debtor, including, but not limited to, the D&O Liability Insurance Policies, automobile liability policies, workers' compensation policies, general liability policies, and umbrella policies.

**1.1.69. Intercreditor Agreement.**  The Intercreditor Agreement executed on August 18, 2005 (as amended, supplemented or otherwise modified, including by the Amendment No. 1 entered into on December 23, 2009), among Debtor, the Term Loan Agents, the Second Lien Collateral Agent and the Second Lien Indenture Trustee, which governs the rights and obligations between Debtor, the Term Loan Agents, the Holders of Term Loan Claims and Second Lien Loan Claims, and the Second Lien Agents.  Pursuant to the Intercreditor Agreement, the Liens granted by Debtor to the Second Lien Agents to secure the Second Lien Loan Claims are expressly junior and subordinate in all respects to the Liens granted by Debtor to the Term Loan Agents to secure the Term Loan Claims.

**1.1.70. Interest.**  Any legal, equitable, contractual or other right of any Person in the ownership of the Debtor, whether or not transferable and whether or not reflected in a note or agreement that is not a Claim, and the legal, equitable, contractual or other rights of any Person to acquire or receive any of the foregoing that is not a Claim.

**1.1.71. Interim Compensation Order.**  The Order Granting Motion for Administrative Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals, entered by the Bankruptcy Court on February 1, 2012 and appearing on the docket of the Chapter 11 Case as Dkt. 340.

**1.1.72. IRS.**  The Internal Revenue Service.

**1.1.73. Reserved.**

**1.1.74. Reserved.**

**1.1.75. Reserved.**

**1.1.76. Reserved.**

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

9

104500-002/1951452_3

**1.1.77. Reserved.**

**1.1.78. Reserved.**

**1.1.79. Reserved.**

**1.1.80. Reserved.**

**1.1.81. Reserved.**

**1.1.82. Reserved.**

**1.1.83. Reserved.**

**1.1.84. Reserved.**

**1.1.85. Reserved.**

**1.1.86. Reserved.**

**1.1.87. Reserved.**

**1.1.88. Reserved.**

**1.1.89. Kubota.**  Kubota Tractor Corporation.

**1.1.90. Kubota Claims.**  All Claims of Kubota related to the Kubota Flooring Agreement and Kubota Order.

**1.1.91. Kubota Flooring Agreement.**  The Dealer Sales and Service Agreement entered into by Debtor and Kubota on August 31, 2004, providing for Debtor to serve as an authorized dealer of Kubota products and providing for the extension to Kubota of a purchase money security interest in all tractors, engines, parts, attachments and accessories sold by Kubota to Debtor from time to time.

**1.1.92. Kubota Order.**  The Order Authorizing Debtor (I) to Assume Dealer Agreement with Kubota Tractor Corporation Pursuant to 11 U.S.C. § 365 and (II) to Extend Purchase Money Security Interest Pursuant to 11 U.S.C. § 364, entered by the Bankruptcy Court on March 22, 2012 and appearing on the docket of the Chapter 11 Case as Dkt. 622.

**1.1.93. Liability Insurance Policies.**  Comprehensive liability insurance policies maintained by Debtor with CNA Insurance Company, Lexington Insurance Company, Great American Insurance Company, Ironshore Specialty Insurance Company, and Liberty Mutual Insurance Company.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

**1.1.94. Lien.** This term shall have the meaning set forth in Section 101(37) of the Bankruptcy Code and, with respect to any Asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a  perfected security interest, in respect of such Asset.

**1.1.95. Litigation Claims.** All rights, claims, torts, Liens, liabilities, obligations, actions, Causes of Action, Avoidance Actions, derivative actions, proceedings, debts, contracts, judgments, damages and demands whatsoever in law or in equity, whether known or unknown, contingent or otherwise, that Debtor or its Estate may have against any Person, including but not limited to those listed on **Exhibit C** to the Plan Supplement, except any Claims or Causes of Action that are released under the Plan or the Confirmation Order.  Failure to list a Litigation Claim on **Exhibit C** to the Plan Supplement shall not constitute a waiver or release by Debtor or Reorganized Ahern of such Litigation Claim.

**1.1.96. Local Rules.**  The local, administrative and chambers rules of the Bankruptcy Court.

**1.1.97. Majority Term Lender Cash Collateral Stipulation.**  The Stipulation between Debtor and Majority Term Lenders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 552 and Fed. R. Bankr. P .4001(b) and (c) Regarding Debtor's Use of Term Lenders' Cash Collateral, Entry into DIP Agreement, and Adequate Protection, filed on January 27, 2012 and appearing on the docket of the Chapter 11 Case as Dkt. 319, as amended, modified, supplemented, or restated from time to time.

**1.1.98. Majority Term Lenders.**  Liberty Harbor Master Fund I, L.P., and Goldman Sachs Palmetto State Credit Fund, L.P., and any successors thereto or assigns thereof.

**1.1.99. Majority Term Lenders' Fees.**  The accrued but unpaid fees and expenses of the Majority Term Lenders, including the fees and expenses of their counsel, financial advisors and expert witnesses, if any, incurred by the Majority Term Lenders through the Effective Date and allowable under Section 506(b) of the Bankruptcy Code, except any such fees and expenses as may be attributable to the Majority Term Lenders' negligence or willful misconduct.

**1.1.100. Nevada Secretary.**  The Secretary of State of the State of Nevada.

**1.1.100.1.  New Equity.**  One hundred percent (100%) of the common shares of stock in Reorganized Ahern.

**1.1.100.3.  New Value.**  A cash contribution to be made by the Holders of Debtor's Equity Interests in the amount of $5.0 Million.

**1.1.100.5.  Noteholder Group.**  The Holders of Second Lien Loan Claims identified in the *Supplemental Verified Statement of the Second Lien Noteholder Group Pursuant to Bankruptcy Rule 2019* [Docket No. 1580], consisting of Del Mar Master Fund Ltd.; Feingold O'Keeffe Capital, LLC; Nomura Corporate Research & Asset Management, Inc.; Och-Ziff Capital Management Group; Sphere Capital, LLC – Series B; and Wazee Street Capital Management, LLC, and which hold, in the aggregate, at least eighty-five percent (85%) of the face amount of the Second Lien Loan Notes.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

11

**1.1.100.7.  Notes Indenture.**  The indenture governing the senior secured notes issued by the Debtor and yielding gross proceeds of $420,000,000; provided, however, that if the Effective Date does not occur on or before June 27, 2013, the proceeds of the Notes Offering will be refunded as described in the paragraph 24 of the *Motion for Order: (i) Authorizing Debtor to Enter into a Commitment Letter, Fee Letter, and Engagement Letter to Obtain Exit Financing to Fund Debtor's Plan of Reorganization Pursuant To 11 U.S.C. §§ 105(a), 363(b), 364(b), 503(b)(1), and 507(a)(2); (ii) Waiving the 14-Day Stay Set Forth in Bankruptcy Rule 6004(h); and (iii) Granting Related Relief* [ECF No. 2036].

**1.1.100.9.  Notes Offering.**  The issuance and sale of senior secured notes under the Notes Indenture.

**1.1.101. NRS.**  The Nevada Revised Statutes, as amended from time to time.

**1.1.102. Other Priority Claims.**  Any and all Claims accorded priority in right of payment under Section 507(a) of the Bankruptcy Code, other than Administrative Claims and Priority Tax Claims.

**1.1.103. Other Secured Claims.**  Any Secured Claim that existed on the Petition Date other than a Term Loan Claim, Second Lien Loan Claim or a Kubota Claim.

**1.1.103.5.  Permitted Holders.**  Means (i) Don F. Ahern, John Paul Ahern, Jr. and Evan B. Ahern and (ii) any Related Party thereof.  For purposes of this definition, "Related Party" means, with respect to a Permitted Holder, (i) such Permitted Holder's spouse and lineal descendants, (ii) DFA Separate Property Trust, the Ahern Family Trust dated May 19, 2003 and any other trust (each, a "Permitted Trust"), in each case the beneficiaries of which, or any corporation, limited liability company or partnership, in each case, the stockholders, members or general or limited partners of which, include only such Permitted Holder and such Permitted Holder's spouse and lineal descendants, or (iii) a trustee of a Permitted Trust or an executor of such Permitted Holder's estate.

**1.1.104. Person.**   An individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, estate, trust, governmental unit or other entity as defined in Section 101(15) of the Bankruptcy Code.

**1.1.105. Personal Injury Claims.**  All Claims for personal injuries or wrongful death that arose prior to the Petition Date.

**1.1.106. Petition Date.**  December 22, 2011, the date on which Debtor filed its voluntary petition commencing the Chapter 11 Case.

**1.1.107. Plan.**  The plan of reorganization, either in its present form or as it may be amended, supplemented or modified from time to time, including all exhibits and schedules annexed hereto or referenced herein.

**1.1.108. Plan Supplement.**  The compilation of documents, including any exhibits to the Plan not included herewith, to be filed with the Bankruptcy Court on or before May 24, 2013.

**1.1.109. Pre-Petition Claims Objection Deadline.**  The first Business Day after

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

12

(i) one hundred twenty (120) days following the Effective Date or (ii) such other date as may be established by an order of the Bankruptcy Court.

**1.1.110. Priority Tax Claim.**  Any Unsecured Claim against the Debtor entitled to priority in payment under Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.1.111. Pro Rata.**   With reference to any Distribution on account of or in exchange for any Claim in any Class, the proportion that the amount of an Allowed Claim (numerator) bears to the aggregate amount of all Allowed Claims (denominator) in such Class upon the final resolution of all Disputed Claims.

**1.1.112. Professional.**   A Person: (i) retained pursuant to an order of the Bankruptcy Court in accordance with Sections 327, 328, 363 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to Sections 327, 328, 329, 330, 363 or 331 of the Bankruptcy Code, or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

**1.1.113. Professional Fee Claims.**  Claims for compensation and reimbursement submitted pursuant to Sections 330, 331 or 503(b) of the Bankruptcy Code of Persons:  (i) employed pursuant to an order of the Bankruptcy Court under Sections 327, 328 or 1103 of the Bankruptcy Code; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code or by other Final Order, in each case, to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount) and after applying any retainer that has been provided to such Professional.  To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Allowed Professional Fees.

**1.1.114. Professional Fee Reserve.**   The reserve of Cash established on the Effective Date and maintained by the Reorganized Ahern as a segregated account to pay Allowed Professional Fee Claims.

**1.1.115. Quarterly Distribution Date.**   The last Business Day of the month following the end of each calendar quarter after the Effective Date; *provided*, *however*, that if the Effective Date is within thirty (30) days of the end of a calendar quarter, then the first Quarterly Distribution Date will be the last Business Day of the month following the end of the first calendar quarter after the calendar quarter in which the Effective Date falls.

**1.1.116. Record Date.**  Means March 8, 2013 or such other date designated as the Record Date in the order approving the Disclosure Statement with respect to the Plan.

**1.1.117. Reinstate, Reinstated, or Reinstatement.**  Means (i) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired in accordance with Section 1124 of the Bankruptcy Code or (ii) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (a) curing any such default that *occurred* before or after the Petition Date, other than a default of

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

13

104500-002/1951452_3

a kind specified in Section 365(b)(2) of the Bankruptcy Code; (b) reinstating the maturity of such Claim as such maturity existed before such default; (c) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and (d) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Holder of such Claim; *provided*, *however*, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence, prohibiting certain transactions or actions contemplated by the Plan, or conditioning such transactions or actions on certain factors, shall not be required to be reinstated in order to accomplish reinstatement and shall be deemed cured on the Effective Date.

**1.1.118. Rejection Claims Bar Date.**  5:00 p.m. (prevailing Pacific Time) on the first Business Day after the thirtieth (30th) day following the Effective Date.

**1.1.119. Released Party.**  Collectively: (i) Debtor; (ii) Debtor's officers, directors, employees, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, professionals, and representatives solely in their capacity as such, serving on the Petition Date or on the Effective Date; (iii) the DIP Loan Agents, solely in their capacity as DIP Loan Agents with regard to the DIP Loan, and the DIP Lenders, solely in their capacity as DIP Lenders; (iv) the Committee and its members; (v) the Majority Term Lenders, solely in their capacity as Term Lenders; (vi) the Noteholder Group, solely in their capacity as Holders of Second Lien Loan Claims, and the Second Lien Loan Agents; and (vii) the Exit Lenders, solely in their capacity as lenders, administrative agents, collateral agents and indenture trustee in respect of the Exit Financing Facility; and each of their respective officers, directors, employees, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, Professionals, and representatives solely in their capacity as such.

**1.1.120. Reorganized Ahern.**  Debtor, as such entity exists on or after the Effective Date, or any successor thereto, by merger, consolidation or otherwise.

**1.1.121. Reorganized Ahern Bylaws.**  The bylaws of Reorganized Ahern in effect under the laws of the State of Nevada, substantially in the form annexed to the Plan Supplement.

**1.1.122. Reorganized Ahern Organizational Documents.**  Collectively, the Reorganized Certificate of Incorporation and the Reorganized Ahern Bylaws.

**1.1.123. Reorganized Ahern Articles of Incorporation.**  The articles of incorporation of Reorganized Ahern in effect under the laws of the State of Nevada, substantially in the form annexed to the Plan Supplement.

**1.1.124. Schedules.**  The schedules of assets and liabilities and any amendments thereto filed by Debtor with the Bankruptcy Court in accordance with Section 521(1) of the Bankruptcy Code.

**1.1.125. Second Lien Agents.**  Collectively, the Second Lien Collateral Agent and Second Lien Indenture Trustee.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

14

104500-002/1951452_3

**1.1.126. Second Lien Collateral.**   The Collateral subject to the Lien under the Second Lien Loan Documents.

**1.1.127. Second Lien Collateral Agent.**  Wells Fargo Bank, National Association, as successor in interest to Wachovia Bank, National Association, in its capacity as the collateral agent with respect to the Second Lien Loan Notes or any successor thereto.

**1.1.128. Second Lien Indenture.**  That certain 9¼% Senior Secured Notes Due 2013 Indenture, dated August 18, 2005, as amended by the First Supplemental Indenture dated December 23, 2009.

**1.1.129. Second Lien Indenture Trustee.**  U.S. Bank, National Association, as successor trustee to Wells Fargo Bank, National Association, in its capacity as the indenture trustee with respect to the Second Lien Indenture or any successor thereto.

**1.1.130. Second Lien Loan.**   The loan pursuant to the Second Lien Loan Documents.

**1.1.131. Second Lien Loan Documents.**  The Second Lien Indenture, together with all other documents related to the Second Lien Loan Notes, together with any and all other amendments, supplements, or modification to the foregoing.

**1.1.132. Second Lien Loan Notes.**  The 9¼% Senior Secured Notes Due 2013 issued pursuant to the Second Lien Indenture.

**1.1.133. Second Lien Loan Claims.**  Any and all Claims arising under, or related to, the Second Lien Loan Notes and the Second Lien Loan.

**1.1.134. Secured Claim.**  A Claim that is secured by a Lien against property of the Estate to the extent of the value of any interest in such property of the Estate securing such Claim as of the Petition Date, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with Section 553 of the Bankruptcy Code, in either case as determined pursuant to Section 506(a) of the Bankruptcy Code.

**1.1.135. Subordinated Section 510(b) Claim.**  Any Claim subordinated pursuant to Section 510(b) of the Bankruptcy Code, which shall include any Claim (a) arising from the rescission of a purchase or sale of any security of the Debtor, (b) for damages arising from the purchase or sale of such security, or (c) for reimbursement, contribution or indemnification on account of any such Claim.

**1.1.136. Substantial Consummation.**  This term shall have the meaning ascribed to it in Section 1101(2) of the Bankruptcy Code.

**1.1.137. Taxes.**   All income, franchise, excise, sales, use, employment, withholding, property, payroll or other taxes, assessments, of governmental charges, together with any interest penalties, additions to tax, fines, and similar amounts relating thereto, whether or not yet assessed or imposed, collected by, or due to any federal, state, local or foreign governmental authority.  This shall include all Taxes arising out of or attributable to the business

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

15

of Debtor up to and including the Effective Date, whether assessed or determined or payable prior to or after the Effective Date.

**1.1.138. Term Loan.** The first lien term loans provided to Debtor pursuant to the Term Loan Credit Agreement and the other Term Loan Documents.

**1.1.139. Term Loan Agents.** Collectively, Gleacher Products Corp., as successor to Bank of America, National Association, in its capacity as administrative agent, and Wells Fargo Bank, National Association, as successor to Wachovia Bank, National Association, in its capacity as collateral agent, under the Term Loan Credit Agreement.

**1.1.140. Term Loan Agents' Fees.** The accrued but unpaid fees and expenses of the Term Loan Agents, including the fees and expenses of counsel, incurred by the Term Loan Agents through the Effective Date and allowable under section 506(b) of the Bankruptcy Code, except any such fees and expenses as may be attributable to the Term Loan Agents' negligence or willful misconduct.

**1.1.141. Term Loan Claims.** Any and all Claims arising under, or relating to, the Term Loan, without offset, recoupment, challenge, objection, defense, claim or counterclaim of any kind or nature, including, but not limited to: (i) the full outstanding principal of the Term Loan in the aggregate allowed amount of $95,000,000; (ii) all accrued but unpaid prepetition interest in the aggregate allowed amount of $16,543,245.02; (iii) all accrued but unpaid postpetition interest through the Effective Date (a) at the non-default rate through the date that the use of Cash Collateral terminates as a result of a Termination Event (whether automatically or as a result of the entry of an order by the Court) or the Debtor otherwise ceases timely paying interest to the Term Lenders under the Majority Term Lender Cash Collateral Stipulation, and (b) at the rate of 18% from and after the date that the use of Cash Collateral terminates as a result of a Termination Event (whether automatically or as a result of the entry of an order by the Court) or the Debtor otherwise ceases timely paying interest to the Term Lenders under the Majority Term Lender Cash Collateral Stipulation; (iv) all Term Loan Agents' Fees and all Majority Term Lenders' Fees; (v) all other accrued, unpaid interest and fees and costs, and other claims allowable under section 506(b) and 507(b) of the Bankruptcy Code; and (vi) without duplication, all other fees, costs and expenses, and claims payable or reimbursable by the Debtor pursuant to the DIP Loan/Cash Collateral Order or the Majority Term Lender Cash Collateral Stipulation.

**1.1.142. Term Loan Collateral.** The Collateral subject to the Lien under the Term Loan Documents.

**1.1.143. Term Loan Credit Agreement.** The Second Amended and Restated Loan and Security Agreement, dated as of January 8, 2010, as amended from time to time in accordance with its terms, which provided, in part, for the Term Loan to Debtor.

**1.1.144. Term Loan Documents.** The Term Loan Credit Agreement together with all other documents related to the Term Loan and any and all other amendments, supplements, or modification to the foregoing.

**1.1.145. Term Loan Notes.** The Term Loan Notes issued by Debtor pursuant to

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

16

the Term Loan Credit Agreement.

**1.1.146. U.S. Trustee.**  The Office of the United States Trustee for the District of Nevada.

**1.1.147. Unexpired Lease.**  A lease of non-residential real property to which Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.1.148. Unimpaired.**  Not Impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.1.149. Unsecured Claim.** A Claim against the Debtor arising prior to the Petition Date that is neither a Secured Claim nor entitled to priority under Section 507 of the Bankruptcy Code or any order of the Bankruptcy Court.

**1.1.150. Voting Deadline.**  Means: (i) May 13, 2013 as the deadline provided for in the order approving the Disclosure Statement for the receipt of Ballots voting to accept or reject the Plan; or (ii) June 3, 2013 as the deadline approved by the Bankruptcy Court for the receipt of changed votes from Holders of Second Lien Loan Claims who previously voted to reject the Plan.

**1.2.    Rules of Interpretation.**  For purposes of the Plan only: (i) any reference in the Plan to a contract, instrument, release, or other agreement or documents being in particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (iii) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to the Plan; (iv) the words "herein," "hereof," "hereto," and "hereunder" refer to the Plan in its entirety rather than to a particular portion of the Plan; (v) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (vi) the rules of construction and definitions set forth in Sections 101 and 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply unless otherwise expressly provided.  All Exhibits, Annexes and/or Plan Schedules attached hereto are incorporated into and are a part of the Plan as if set forth in full herein.

**1.3.    Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

**1.4.    Exhibits, Annexes and Plan Schedules.**  All Exhibits, Annexes and/or Plan Schedules attached hereto are incorporated into and are a part of the Plan as if set forth in full herein.

**2.    TREATMENT OF UNCLASSIFIED CLAIMS**

**2.1.    General.**  Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Claims

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

against Debtor set forth in this Article 2 are not classified within any Classes.  The Holders of such Claims are not entitled to vote on the Plan.  The treatment of the Claims set forth below is consistent with the requirements of Section 1129(a)(9)(A) of the Bankruptcy Code.

### 2.2.    Treatment of Administrative Claims.

**2.2.1.    Administrative Claims.**  Except with respect to Administrative Claims that are Professional Fee Claims, each Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed Administrative Claim, on the latest of (i) the Distribution Date, (ii) the date on which its Administrative Claim becomes an Allowed Administrative Claim, (iii) the date on which its Administrative Claim becomes payable under any agreement with the Debtor relating thereto, (iv) in respect of liabilities incurred in the ordinary course of business, the date upon which such liabilities are payable in the ordinary course of the Debtor's business, consistent with past practice, or (v) such other date as may be agreed upon between the Holder of such Allowed Administrative Claim and the Debtor or Reorganized Ahern, as the case may be, (i) Cash equal to the unpaid portion of its Allowed Administrative Claim or (ii) such other treatment as to which the Holder of such Allowed Administrative Claim may agree.

### 2.2.2. Professional Compensation.

(a)    **Claims for Accrued Professional Compensation.**  Professionals or other Persons asserting a Professional Fee Claim for services rendered before the Effective Date must file and serve on the Debtor and such other Persons who are designated by the Bankruptcy Rules, the Confirmation Order, the Interim Compensation Order or other order of the Bankruptcy Court an application for final allowance of such Professional Claim for accrued professional compensation no later than forty-five (45) days after the Effective Date.  Objections to any Claim for accrued professional compensation must be filed and served on Reorganized Ahern and the U.S. Trustee and the requesting party no later than sixty-five (65) days after the Effective Date.  Allowed Professional Fee Claims shall be paid in full.

(b)    **Post-Effective Date Fees and Expenses.**  Upon the Effective Date, any requirement that Professionals comply with Sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and Reorganized Ahern may employ and pay any Professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to any party or action, order or approval of the Bankruptcy Court.  After the Effective Date, Reorganized Ahern shall pay the reasonable fees and expenses incurred by the Committee's Professionals solely in connection with efforts relating to the final fee applications for the Committee's Professionals.

**2.2.3. DIP Loan Claims.**  All DIP Loan Claims shall be Allowed, and on the Effective Date each Holder of an Allowed DIP Loan Claim shall receive, (i) payment in full in Cash of such Allowed DIP Loan Claim in full and final satisfaction thereof other than the obligations under the indemnity and other provisions of the DIP Loan Agreement that by their terms survive the termination of the DIP Loan Agreement or (ii) such other treatment as to which the Debtor and the Holder of such Allowed DIP Loan Claim may agree in writing.  Also on the Effective Date, all commitments under the DIP Loan Agreement shall terminate and all letters of

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

18

credit outstanding under the DIP Loan Agreement shall be treated in accordance with the terms of the DIP Loan Agreement.

**2.3.    Allowed Priority Tax Claims.** Each Holder of an Allowed Priority Tax Claim, if any, will, in full and final satisfaction of such Claim, be paid in full (or be treated in compliance with Section 1129(a)(9)(C) of the Bankruptcy Code) by Reorganized Ahern on the later of (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first Business Day following the fourteenth (14th) day after the date on which an order allowing such Claim becomes a Final Order; or (iv) such date as is agreed to by the Holder of such Claim and Debtor or Reorganized Ahern, as the case may be.

**3.    DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS**

Pursuant to the Plan and in accordance with Section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors (except Administrative Claims and Priority Tax Claims) are placed in the Classes described below. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in other Classes only to the extent that any remainder of the Claim qualifies within the description of such other Classes. Each subclass in Class 6 is deemed to be a separate class for purposes of voting pursuant to Section 1122 of the Bankruptcy Code and will receive a different Ballot for the purpose of accepting or rejecting the Plan pursuant to Section 1126 of the Bankruptcy Code.  A Claim is also classified in a particular Class only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date. Notwithstanding the foregoing, any Holder of a Claim in the Classes below described as "entitled to vote" whose Claim is neither a Disallowed Claim nor a Claim subject to a pending Claim objection that has been filed on or before the commencement of the Confirmation Hearing or such other date as the Bankruptcy Court determines, shall be entitled to vote to accept or reject the Plan.

**3.1.    Summary of Classification.**

| Class 1 | Term Loan Claims | Unimpaired – deemed accepted |
|---------|------------------|------------------------------|
| Class 2 | Second Lien Loan Claims | Impaired – entitled to vote |
| Class 3 | Kubota Claims | Impaired – entitled to vote |
| Class 4 | Other Secured Claims | Unimpaired – deemed accepted |
| Class 5 | Other Priority Claims | Unimpaired – deemed accepted |
| Class 6 | Personal Injury Claims | Impaired – entitled to vote |
| | Class 6A<br>General Liability Claims ("GL Claims") falling in policy year:  5/10/2007 – 5/10/2008<br>Carrier:  *Chartis Insurance*, f/k/a *Lexington (Lexington)* | |
| | Class 6B<br>GL Claims falling in policy year:<br>5/10/2008 – 5/10/2009<br>Carrier:  *Lexington* | |
| | Class 6C | |

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

| | | |
|---|---|---|
| | GL Claims falling in policy year: 5/10/2009 – 5/10/2010 Carrier: *Ironshore Specialty Insurance Company (Ironshore)* | |
| | <u>Class 6D</u> GL Claims falling in policy year: 5/10/2010 – 5/10/2011 Carrier: *Ironshore* | |
| | <u>Class 6E</u> GL Claims falling in policy year: 5/10/2011 – 5/10/2012 Carrier: *Ironshore* | |
| | <u>Class 6F</u> <u>Auto</u> liability claims ("<u>Auto Claims</u>") falling in policy year 5/10/2005 – 5/10/2006 Carrier: *Continental Insurance Company (CNA)* | |
| | <u>Class 6G</u> Auto claims falling in policy year 5/10/2006 – 5/10/2007 Carrier: *CNA* | |
| | <u>Class 6H</u> Auto claims falling in policy year 5/10/2007 – 5/10/2008 Carrier: *CNA* | |
| | <u>Class 6I</u> Auto claims falling in policy year 5/10/2008 – 5/10/2009 Carrier: *Liberty Mutual Fire Insurance Co. (Liberty)* | |
| | <u>Class 6J</u> Auto claims falling in policy year 5/10/2009 – 5/10/2010 Carrier: *Great American Insurance Companies (Great American)* | |
| | <u>Class 6K</u> Auto claims falling in policy year 5/10/2010 – 5/10/2011 Carrier: *Great American* | |
| | <u>Class 6L</u> Auto claims falling in policy year 5/10/2011 – Petition Date Carrier: *Great American* | |
| Class 7 | General Unsecured Claims | Impaired – entitled to vote |
| Class 8 | Convenience Claims | Impaired – entitled to vote |
| Class 9 | Equity Interests | Unimpaired – deemed accepted |

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

20

104500-002/1951452_3

**3.2.    Acceptance by Impaired Class.**  All Classes of Claims are Impaired, except Class 1: Term Loan Claims, Class 4: Other Secured Claims, Class 5: Other Priority Claims and Class 9: Equity Interests.  Any one of the Impaired Classes of Claims shall have accepted the Plan if (i) the Holders of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Impaired Class have voted to accept the Plan and (ii) the Holders of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan, in each case not counting the vote of any insider or any Holder whose vote is designated under Section 1126(e) of the Bankruptcy Code.

**3.3.    Cramdown.**  To the extent necessary, the Debtor will request confirmation of the Plan, as it may be modified from time to time, under Section 1129(b) of the Bankruptcy Code.  The Debtor reserves the right to modify the Plan to the extent, if any, that confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

**3.4.    Treatment of Classes.**

**3.4.1    Class 1: Term Loan Claims.**

(a)    *Claims in Class:* Class 1 consists of the Term Loan Claims.

(b)    *Treatment:* The Term Loan Claims are Allowed Claims, not subject to offset, defense, counterclaim, reduction, or credit of any kind whatsoever.  Unless the Holder of an Allowed Term Loan Claim and the Debtor agree to a different treatment, on the Effective Date each Holder of an Allowed Term Loan Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Holder's Allowed Term Loan Claim, Cash in the full amount of such Allowed Term Loan Claim, including, but not limited to, any postpetition interest, charges, costs and other expenses accrued through the date of payment pursuant to the terms of the Majority Term Lender Cash Collateral Stipulation, as it may be amended or modified in accordance with its terms, the DIP Loan/Cash Collateral Order, and Section 506(b) of the Bankruptcy Code.

The Holders of Term Loan Claims are Unimpaired under the Plan and are not entitled to vote to accept or reject the Plan.

**3.4.2    Class 2: Second Lien Loan Claims.**

(a)    *Claims in Class:* Class 2 consists of the Second Lien Loan Claims.

(b)    *Treatment:* The Second Lien Loan Claims (including as set forth in the proof of Claim filed by the Second Lien Indenture Trustee) are Allowed Claims, not subject to offset, defense, counterclaim, reduction, or credit of any kind whatsoever.  On the Effective Date each Holder of any Allowed Second Lien Loan Claims shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Holder's Allowed Second Lien Loan Claim, such Holder's Pro Rata share of (i) Cash in the amount of $268 Million and (ii) the Contingent Value Rights.  In addition, on the Effective Date, the Noteholder Group, in care of its counsel Bracewell & Giuliani LLP, shall be paid $10.0 Million in Cash in full satisfaction, settlement, release and discharge of the Noteholder Group's claims for reimbursement for out-of-pocket fees and costs, including attorney and other reorganization professional fees, costs, and other expenses, and including substantial contribution claims pursuant to Section 503(b) of the

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

21

Bankruptcy Code. All such Distributions (other than the $10.0 Million in Cash referenced herein and, except as provided below, the Contingent Value Rights) shall be made to the Second Lien Indenture Trustee, who will make the Distributions to the Holders of the Allowed Second Lien Loan Claims. The Cash portion of such Distributions shall be made to the Second Lien Indenture Trustee, who will make the Cash Distribution to the Holders of the Allowed Second Lien Loan Claims. The Contingent Value Rights shall be distributed directly by the Debtor, or as otherwise agreed to by the Debtor and the Second Lien Indenture Trustee, which Distribution shall be through the facilities of DTC, if commercially reasonable.

The Notes Indenture and the Bridge Exit Loan Facility will treat any payment to the Holders of the Second Lien Loan Claims pursuant to the Contingent Value Rights as a restricted payment (and therefore restricted under the Notes Indenture and Bridge Exit Loan Facility unless Reorganized Ahern earns sufficient net income to generate enough restricted payment capacity in the future to make the payment). However, the Notes Indenture and the Bridge Exit Loan Facility will also include a carve out to this restriction if Reorganized Ahern has first made an offer to repurchase the notes and/or bridge loans under the Notes Indenture and the Bridge Exit Loan Facility (and repurchased any such notes or bridge loans validly tendered) pursuant to the change of control offer provisions contained in the Notes Indenture and the Bridge Exit Loan Facility. Therefore, in the event Reorganized Ahern and/or Holders of Equity Interests decide to undertake a transaction or series of transactions that results in a Change of Control under the Contingent Value Rights Agreement, Reorganized Ahern may be restricted from making the payment thereunder pursuant to the terms of the Notes Indenture or Bridge Exit Loan Facility. Any payment in contravention of the terms of the Notes Indenture or Bridge Exit Loan Facility would result in an event of default under the notes and bridge loans issued thereunder.

The Holders of Second Lien Loan Claims are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

### 3.4.3   Class 3: Kubota Claims.

(a)    *Claims in Class:* Class 3 consists of the Kubota Claims.

(b)    *Treatment:* Unless the Holder of a Kubota Claim and the Debtor agree to a different treatment, in full satisfaction, settlement, release, and discharge of, and in exchange for the Kubota Claims, the Holder of any Allowed Kubota Claims shall be paid (i) on the Effective Date, Cash in the principal amount of 5% of such Holder's Allowed Kubota Claim; (ii) 90 days after the Effective Date, Cash in the principal amount of 5% of such Holder's remaining Allowed Kubota Claim (reflecting a reduction in the principal amount of such Holder's Allowed Kubota Claims as a result of the first payment); and (iii) 180 days after the Effective Date, Cash in the aggregate amount of the remaining balance of such Holder's Allowed Kubota Claims (reflecting a reduction in the principal amount of such Holder's Allowed Kubota Claims as a result of the first and second payments). The Allowed Kubota Claims shall bear interest as set forth in the Kubota Flooring Agreement.

The Holders of Kubota Claims are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

22

### 3.4.4    Class 4: Other Secured Claims.

(a)    *Claims in Class:* Class 4 consists of the Allowed Other Secured Claims.

(b)    *Treatment:* Unless the Holder of an Allowed Other Secured Claim and the Debtor agree to a different treatment, on the Effective Date each Holder of an Allowed Other Secured Claim shall (i) have its Claim Reinstated, or (ii) receive, in full satisfaction, settlement, release and discharge of and in exchange for, such Secured Claim, either (a) Cash in the full amount of such Allowed Other Secured Claim, including any postpetition interest accrued pursuant to Section 506(b) of the Bankruptcy Code, (b) the proceeds of the sale or disposition of the Collateral securing such Allowed Other Secured Claim to the extent of the value of the Holder's secured interest in such Collateral, (c) the Collateral securing such Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to Section 506(b) of the Bankruptcy Code, or (d) such other distribution as necessary to satisfy the requirements of Section 1129 of the Bankruptcy Code. If the Claim of a Holder of an Allowed Other Secured Claim exceeds the value of the Collateral that secures it, such Holder will have an Other Secured Claim equal to the Collateral's value and a General Unsecured Claim for the deficiency.

The Holders of Other Secured Claims are Unimpaired under the Plan and are not entitled to vote to accept or reject the Plan.

### 3.4.5    Class 5: Other Priority Claims.

(a)    *Claims in Class:* Class 5 consists of the Allowed Other Priority Claims.

(b)    *Treatment:* Unless the Holder of an Allowed Other Priority Claim and the Debtor agree to a different treatment, each Holder of an Allowed Other Priority Claim, if any, shall, in full satisfaction, settlement, release and discharge of and in exchange for the Allowed Other Priority Claims, be paid in full in Cash by Reorganized Ahern upon the latest of: (i) the Effective Date; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first Business Day following the fourteenth (14th) day after such Claim is Allowed; and (iv) such date as agreed upon by the Holder of such Claim and Debtor or Reorganized Ahern.

The Holders of Other Priority Claims are Unimpaired under the Plan and are not entitled to vote to accept or reject the Plan.

### 3.4.6    Classes 6A to 6L: Personal Injury Claims.

(a)    *Claims in Class:* Classes 6A to 6L consist of the Personal Injury Claims.

(b)    *Treatment:* Although styled as a single Class, Class 6 shall contain separate sub-Classes for the insured Personal Injury Claims arising under each individual Liability Insurance Policy in each policy year. Each separate sub-Class in Class 6 shall constitute a separate Class for voting purposes of the Plan.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

23

Classes 6A to 6E consist of the Personal Injury Claims that are GL Claims that fall under Debtor's general and umbrella Liability Insurance Policies.

o   The first $250,000 of each insured Allowed Personal Injury Claim, less defense costs expended on each such insured Allowed Personal Injury Claim (the self-insured retention, or "SIR"), will be paid in full by Reorganized Ahern up to the applicable policy's aggregate SIR limit commencing on the latter of the Effective Date and the first Business Day the Personal Injury Claim becomes an Allowed Personal Injury Claim.  The Holder of each Allowed Personal Injury Claim not paid in full from the SIR shall be eligible to be paid from the policy proceeds remaining in the Liability Insurance Policies as of the Petition Date for the respective policy year only to the extent such policy proceeds have not been exhausted.

o   In the event that the Holder of an Allowed Personal Injury Claim is not paid in full by the SIR and the policy proceeds, the Holder of such Allowed Personal Injury Claim shall receive, for the portion of the Allowed Personal Injury Claim in excess of the SIR and the policy proceeds, Cash payments, that shall accrue interest at the Federal Judgment Rate for the period from the Petition Date through the Effective Date and after the Effective Date at the rate of five percent (5%) per annum or such other interest rate as the Bankruptcy Court determines at the Confirmation Hearing or otherwise.  Such excess amount shall be paid either (i) in equal monthly installments over the period of time that commences on the later of the Effective Date and the date that the Personal Injury Claim becomes an Allowed Personal Injury Claim and ends one (1) year following the Effective Date, or (ii) in the event the Personal Injury Claim becomes an Allowed Personal Injury Claim more than one (1) year after the Effective Date, on the first Business Day after the Personal Injury Claim becomes an Allowed Personal Injury Claim (and the allowance of the Claim has not been stayed).  In all events, such payments shall be in full satisfaction, settlement, release and discharge of and in exchange for the Holder's Allowed Personal Injury Claim.

Classes 6F to 6L consist of the Personal Injury Claims that are Auto Claims that fall under Debtor's automobile and umbrella Liability Insurance Policies.

o   The first $10,000 or $50,000 (depending on the applicable automobile Liability Insurance Policy's deductible) of each insured Allowed Personal Injury Claim, less defense costs expended on each such insured Allowed Personal Injury Claim (the "Deductible"), will be paid in full by Reorganized Ahern commencing on the latter of the Effective Date and the first Business Day the Personal Injury Claim becomes an Allowed Personal Injury Claim.   The Holder of each Allowed Personal Injury Claim not paid in full from the Deductible shall be eligible to be paid from the policy proceeds remaining in the Liability Insurance Policies as of the Petition Date for the respective policy year only to the extent such policy proceeds have not been exhausted.

o   In the event that the Holder of an Allowed Personal Injury Claim is not paid in full by the Deductible and the policy proceeds, the Holder of such Allowed Personal Injury Claim shall receive, for the portion of the Allowed Personal

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

Injury Claim in excess of the Deductible and the policy proceeds, Cash payments, that shall accrue interest at the Federal Judgment Rate for the period from the Petition Date through the Effective Date and after the Effective Date at the rate of five percent (5%) per annum or such other interest rate as the Bankruptcy Court determines at the Confirmation Hearing or otherwise.  Such excess amount shall be paid either (i) in equal monthly installments over the period of time that commences on the later of the Effective Date and the date that the Personal Injury Claim becomes an Allowed Personal Injury Claim and ends one (1) year following the Effective Date, or (ii) in the event the Personal Injury Claim becomes an Allowed Personal Injury Claim more than one (1) year after the Effective Date, on the first Business Day after the Personal Injury Claim becomes an Allowed Personal Injury Claim (and the allowance of the Claim has not been stayed).  In all events, such payments shall be in full satisfaction, settlement, release and discharge of and in exchange for the Holder's Allowed Personal Injury Claim.

Effective as of the Effective Date of the Plan, all preference actions against current and future Holders of Allowed Personal Injury Claims arising under Section 547 of the Bankruptcy Code shall be waived.

The Holders of Personal Injury Claims in Classes 6A to 6L are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

### 3.4.7    Class 7: General Unsecured Claims.

(a)    *Claims in Class:* Class 7 consists of the General Unsecured Claims except Convenience Claims.

(b)    *Treatment:* Each Holder of a General Unsecured Claim for which the Allowed amount of such Claim is less than or equal to $5,000 shall have the right to make the Convenience Class Election.

On the Effective Date, each Holder of any Allowed General Unsecured Claim shall receive Cash payments in the aggregate Allowed amount of such Holder's Allowed General Unsecured Claim which Claim shall be paid in twelve (12) monthly installments over one (1) year and accrue interest at the rate of five percent (5%) per annum or such other interest rate as the Bankruptcy Court determines at the Confirmation Hearing or otherwise, including postpetition interest at the Federal Judgment Rate for the period from the Petition Date through the Effective Date, in full satisfaction, settlement, release and discharge of and in exchange for the Holder's Allowed General Unsecured Claims.

Effective as of the Effective Date of the Plan, all preference actions against current and future Holders of Allowed General Unsecured Claims arising under Section 547 of the Bankruptcy Code shall be waived.

The Holders of General Unsecured Claims are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

### 3.4.8    Class 8: Convenience Claims.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

25

(a)      *Claims in Class:* Class 8 consists of the Convenience Claims.

(b)      *Treatment:* Unless the Holder of a Convenience Claim and the Debtor agree to a different treatment, on the Effective Date, in full satisfaction, settlement, release and discharge of and in exchange for the Convenience Claims, each Holder of any Allowed General Unsecured Claims that makes the Convenience Class Election shall receive Cash in an amount equal to 85% of such Holder's Allowed Unsecured Claim.

Effective as of the Effective Date of the Plan, all preference actions against current and future Holders of Convenience Claims arising under Section 547 of the Bankruptcy Code shall be waived.

The Holders of Convenience Claims are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

### 3.4.9    Class 9: Equity Interests.

(a)      *Claims in Class:* Class 9 consists of the Allowed Equity Interests.

(b)      *Treatment*: Unless the Holder of an Allowed Equity Interest and the Debtor agree to a different treatment, the legal, equitable, contractual and ownership rights of the Holders of Allowed Equity Interests are unaltered by the Plan.  Upon the Effective Date, the Holders of Allowed Equity Interests shall retain their Equity Interests.

The Holders of Equity Interests are Unimpaired under the Plan and are not entitled to vote to accept or reject the Plan.

**3.5.    Allowed Claims.**   Notwithstanding any provision herein to the contrary, the Debtor and/or Reorganized Ahern shall make Distributions only to Holders of Allowed Claims.  No Holder of a Disputed Claim will receive any Distribution on account thereof unless and until and only to the extent that its Disputed Claim becomes an Allowed Claim.

**3.6.    Postpetition Interest.**   In accordance with Section 502(b)(2) of the Bankruptcy Code, the amount of all Claims against the Debtor shall be calculated as of the Petition Date. Except as otherwise explicitly provided herein, in the DIP Loan/Cash Collateral Order, the Majority Term Lender Cash Collateral Stipulation, in an order of the Bankruptcy Court or in a section of the Bankruptcy Code, no Holder of a Claim shall be entitled to or receive interest accruing from the Petition Date through the Effective Date.  Term Loan Claims shall receive such interest as set forth in the DIP Loan/Cash Collateral Order and the Majority Term Lender Cash Collateral Stipulation.  Second Lien Loan Claims would be entitled to receive interest accruing at the contract rate from the Petition Date through the Effective Date, however, as a settlement and compromise of the Second Lien Loan Claims in exchange for the recoveries proposed in **Section 3.4.2(b)**, Holders of Second Lien Loan Claims shall be deemed to have waived such postpetition interest if their Class votes to accept the Debtor Plan.  Personal Injury Claims and General Unsecured Claims that are Allowed shall receive interest accruing from the Petition Date through the Effective Date at the Federal Judgment Rate.  As of February 22, 2013 the Federal Judgment Rate was 0.17%.  Subsequent to the Effective Date, all Allowed Claims will accrue interest at the rates set forth in the Debtor Plan until such Claims receive the full amount of the payments that they are entitled to receive under the Debtor Plan.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

26

**3.7.    Special Provision Regarding Unimpaired Claims.**    Except as otherwise provided in the Plan, and to the extent permitted by the Bankruptcy Code, nothing shall affect the Debtor's rights and defenses, both legal and equitable, with respect to any Unimpaired Claim (including Claims that are Allowed pursuant to the Plan), including, without limitation, all rights with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims, and the Debtor's failure to object to such Claims in the Chapter 11 Case shall be without prejudice to Reorganized Ahern's right to contest or defend against such Claims in (i) any appropriate non-bankruptcy forum as if such Chapter 11 Case had not been commenced or (ii) the Bankruptcy Court (such forum to be selected at the Debtor's or Reorganized Ahern's option).

## 4.    MEANS FOR IMPLEMENTATION OF PLAN

**4.1.    Plan Funding**.  Cash payments under the Plan shall be funded by Cash on hand, borrowings under the Exit Financing Facility and the New Value.

**4.2.    Reserved.**

**4.3.    Reorganized Ahern.**  On or before the Effective Date, the Reorganized Ahern Organizational Documents shall be executed and, to the extent required, filed with the Nevada Secretary.   The Reorganized Ahern Organizational Documents shall (i) include, pursuant to Section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by Section 1123(a)(6) of the Bankruptcy Code; and (ii) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate the Plan and the transactions contemplated herein.   After the Effective Date, Reorganized Ahern shall be responsible for the preparation of all reports, tax returns and other governmental filings required to be filed by the Debtor and Reorganized Ahern and all obligations related thereto.

**4.4.    Additional Reorganized Ahern Provisions.**    The Reorganized Ahern Organizational Documents, and resolutions or similar documents related to the formation and governance of Reorganized Ahern under the Plan, shall be subject to applicable bankruptcy and/or Nevada law.

**4.5.    New Financing.**  On the Effective Date, the Exit Financing Facility, together with new promissory notes and guarantees evidencing the obligations of Reorganized Ahern thereunder, and all other documents, instruments, mortgages, and agreements to be entered into, delivered, or confirmed thereunder on the Effective Date, shall become effective.  To the extent the Notes Offering is consummated prior to the Effective Date, on the Effective Date Reorganized Ahern shall assume the obligations under the Notes Indenture and related Exit Financing Facility Documents.  The obligations incurred by Reorganized Ahern pursuant to the Exit Financing Facility and related documents shall be paid as set forth in the Exit Financing Facility Documents.  The Alternative Transaction Fee (as defined in that certain fee letter dated May 17, 2013, by and between the Debtor and Jefferies Finance LLC and pertaining to the commitment for Exit Financing) shall be a binding obligation of Reorganized Ahern.  One or more commitment letter(s) or term sheet(s) with respect to the Exit Financing Facility shall be attached to the Plan Supplement as **Exhibit D**.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

27

**4.6.    Effective Date Events.**   On the Effective Date, or as soon as reasonably practicable thereafter:

**4.6.1.** The DIP Loan Notes, Term Loan Notes and Second Lien Loan Notes shall be cancelled and extinguished and of no further force or effect.

**4.6.2.** The Holders of Debtor's Equity Interests shall contribute the New Value to the Debtor on the Effective Date, subject to satisfaction of all other Effective Date conditions, in immediately available funds to effectuate the Plan.

**4.6.3.** Reserved.

**4.6.4.** Reserved.

**4.6.5.** The DIP Loan Documents, the Term Loan Documents and Second Lien Loan Documents shall continue in effect solely for the purposes of: (i) allowing the DIP Loan Agents, Term Loan Agents, and Second Lien Agents, to receive the Plan Distributions required to be made to them or at their direction pursuant to the Plan and/or the DIP Loan Documents, the Term Loan Documents and the Second Lien Loan Documents and to distribute such Distributions in accordance therewith, (ii) allowing and preserving the rights of the Second Lien Agents to (a) make Distributions in satisfaction of Allowed Second Lien Loan Claims and (b) exercise any applicable charging liens against any such Distributions to obtain compensation and reimbursement for any fees, expenses (including attorney's fees) or indemnity to the extent permitted by the Second Lien Loan Documents, and (iii) allowing and preserving the rights of the DIP Loan Agents and the DIP Lenders to seek and obtain reimbursement for any expenses (including attorneys' fees) or indemnity to the extent permitted by the DIP Loan Documents. From and after the Effective Date, the Second Lien Agents will have no duties or obligations under the Second Lien Loan Documents other than to make Distributions.

**4.7.    Post-Effective Date Officers and Directors of Reorganized Ahern.**

**4.7.1.** On the Effective Date, the initial board of directors of Reorganized Ahern shall include the five (5) individuals serving on Debtor's Board of Directors on the Confirmation Date.   Thereafter, members of the Board of Directors shall be selected pursuant to the Reorganized Ahern Organizational Documents.   The initial officers shall be comprised of the individuals employed as officers on the Confirmation Date, pursuant to each such individual's employment agreement, if any, as may have been modified, amended or extended prior to Confirmation.  Debtor will disclose, at or prior to the Confirmation Hearing, the identity of such individuals.

**4.7.2.** Reorganized Ahern shall be responsible for the payment of all Allowed Claims to be paid pursuant to the Plan that are not paid on or before the Effective Date, as well as all Allowed Claims, including Taxes and Professional Fees, incurred by Debtor in operating its business up to and including the Effective Date, whether due and payable before or after the Effective Date.

**4.8.    Establishment of Professional Fee Reserve.**  Under the Plan, the Debtor or Reorganized Ahern will create and fund the Professional Fee Reserve on the Effective Date (or as soon thereafter as is practicable) in the estimated amount of accrued and unpaid Professional

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

28

Fees through the Effective Date, which amount will be used to pay Allowed Professional Fee Claims held by (i) any Professionals working on behalf of the Debtor, and (ii) counsel and any advisors to the Committee. Reorganized Ahern will be obligated to pay all such Allowed Professional Fee Claims designated to be paid from the proceeds of the Professional Fee Reserve in excess of the amounts actually deposited in the Professional Fee Reserve. In the event that any Cash remains in the Professional Fee Reserve after payment of all such Allowed Professional Fee Claims, such Cash will be returned to the operating accounts of Reorganized Ahern.

**4.9.    No Corporate Action Required.**  As of the Effective Date: (i) the adoption, execution, delivery and implementation or assignment of all contracts, leases, instruments, releases and other agreements related to or contemplated by the Plan; and (ii) the other matters provided for under or in furtherance of the Plan involving corporate action to be taken by or required of Debtor, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without further order of the Bankruptcy Court or any requirement of further action by Reorganized Ahern's Board of Directors or officers of Debtor.  In particular, the adoption of the Reorganized Ahern Organizational Documents, the selection of directors and officers of Debtor or Reorganized Ahern, and all other actions contemplated by or described in the Plan with respect thereto, shall be authorized and approved and be binding and in full force and effect in all respects (subject to the provisions of the Plan and the Confirmation Order), in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule (other than filing such organizational documents with the applicable governmental unit as required by applicable law) or the vote, consent, authorization, or approval of any Person.  Notwithstanding the forgoing, Reorganized Ahern shall take all action required to effectuate the Exit Financing Facility Documents, the Contingent Value Rights Agreement, and any other action required to implement the Plan.

**4.10.    Effectuation of Transactions.**  On the Effective Date, the appropriate officers of Debtor and Reorganized Ahern, as applicable,  and members of the applicable Board of Directors are authorized to issue, execute, and deliver the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions, and instruments contemplated by or described in the Plan in the name of and on behalf of Debtor and Reorganized Ahern, and to otherwise fully consummate the transactions contemplated by the Plan, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote, or other approval or authorization by any Person.

**4.11.    Filing with Nevada Secretary.**  To the extent applicable, in accordance with NRS 78.622, on the Effective Date a certified copy of the Plan and the Confirmation Order shall be filed with the Nevada Secretary.  Debtor, from the Confirmation Date until the Effective Date, is authorized and directed to take any action or carry out any proceeding necessary to effectuate the Plan pursuant to NRS 78.622.

**5.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**5.1.    Executory Contracts.**  Except for Executory Contracts and Unexpired Leases specifically addressed in the Plan or set forth on the schedule of Rejected Executory Contracts

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

29

and Unexpired Leases attached as **Exhibit E** to the Plan Supplement (which may be supplemented and amended up to the date the Bankruptcy Court enters the Confirmation Order and thereafter pursuant to **Section 5.3** of the Plan), all Executory Contracts and Unexpired Leases that exist on the Confirmation Date shall be deemed assumed by Reorganized Ahern on the Effective Date.

**5.2.    Approval of Assumption or Rejection.**  Entry of the Confirmation Order shall constitute as of the Effective Date: (i) approval, pursuant to Section 365(a) of the Bankruptcy Code, of the assumption by Debtor of each Executory Contract and Unexpired Lease to which Debtor is a party and which is not listed on **Exhibit E** to the Plan Supplement, not otherwise provided for in the Plan and neither assumed, assumed and assigned, nor rejected by separate order prior to the Effective Date; and (ii) rejection by Debtor of each Executory Contract and Unexpired Lease to which Debtor is a party listed on **Exhibit E** to the Plan Supplement.  Upon the Effective Date, each counter party to an assumed Executory Contract or Unexpired Lease listed shall be deemed to have consented to assumption contemplated by Section 365(c)(1)(B) of the Bankruptcy Code, to the extent such consent is necessary for such assumption.  To the extent applicable, all Executory Contracts or Unexpired Leases of Reorganized Ahern assumed pursuant to this **Section 5** shall be deemed modified such that the transactions contemplated by the Plan shall not be a "change of control," however such term may be defined in the relevant Executory Contract or Unexpired Lease and any required consent under any such Executory Contract or Unexpired Lease shall be deemed satisfied by entry of the Confirmation Order.  Also, to the extent applicable, all Executory Contracts or Unexpired Leases of Debtor assumed pursuant to this **Section 5** shall be assigned to Reorganized Ahern on the Effective Date, and such assignment shall not be a "change of control," however such term may be defined in the relevant Executory Contract or Unexpired Lease, and any required consent under any such Executory Contract or Unexpired Lease shall be deemed satisfied by entry of the Confirmation Order.

**5.3.    Cure of Defaults.**  Debtor or Reorganized Ahern shall Cure any defaults respecting each Executory Contract or Unexpired Lease assumed pursuant to this **Section 5** upon the latest of (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court or agreed upon by Debtor, and after the Effective Date, Reorganized Ahern; or (iii) the first Business Day following the fourteenth (14th) day after the entry of a Final Order resolving any dispute regarding (a) a Cure amount; (b) the ability of Debtor or Reorganized Ahern to provide adequate assurance of future performance under the Executory Contract or Unexpired Lease assumed pursuant to the Plan in accordance with Section 365(b)(1) of the Bankruptcy Code; *provided*, *however*, that upon resolution of a dispute over a Cure amount, Reorganized Ahern may reject the Executory Contract or Unexpired Lease notwithstanding a previous listing as assumed; or (c) any other disputed matter pertaining to assumption, assignment or the Cure of a particular Executory Contract or an Unexpired Lease. **Exhibit F** to the Plan Supplement lists Debtor's proposed Cure amounts, if any, that will be paid as provided for above, which **Exhibit F** to the Plan Supplement may be amended up to and including five (5) days prior to the Confirmation Hearing.  Any such modifications to **Exhibit F** to the Plan Supplement shall be filed with the Bankruptcy Court up to and including five (5) days prior to the Confirmation Hearing.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

30

**5.4.**    **Objection to Cure Amounts.**  Any party to an Executory Contract or Unexpired Lease who objects to the Cure amounts listed on **Exhibit F** to the Plan Supplement must file and serve an objection on Debtor's counsel no later than the deadline set by the Bankruptcy Court for filing Plan objections.  Failure to file and serve a timely objection shall be deemed consent to the Cure amounts listed on **Exhibit F** to the Plan Supplement.  Any Cure Amounts shall be the responsibility of Reorganized Ahern.  If there is a dispute regarding: (i) the amount of any Cure payment; (ii) the ability of Reorganized Ahern to provide "adequate assurance of future performance" under the Executory Contract or Unexpired Lease to be assumed or assigned; or (iii) any other matter pertaining to assumption, the Cure payments required by Section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order resolving the dispute and approving the assumption, except as provided in **Section 5.3** of the Plan.

**5.5.**    **Confirmation Order.**  The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumptions described in this **Section 5**, pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date.  Notwithstanding the foregoing, if, as of the date the Bankruptcy Court enters the Confirmation Order, there is pending before the Bankruptcy Court a dispute concerning the Cure amount or adequate assurance for any particular Executory Contract or Unexpired Lease (or if the time period for a non-Debtor to object to the Cure has not yet lapsed), the assumption of such Executory Contract or Unexpired Lease shall be effective as of the date the Bankruptcy Court enters an order resolving any such dispute and authorizing assumption by Debtor.

**5.6.**    **Post-Petition Date Contracts and Leases.**  Each such Executory Contract and Unexpired Lease shall be performed by Debtor or Reorganized Ahern, as applicable, in the ordinary course of its business.

**5.7.**    **Rejection Claims Bar Date.**  All proofs of Claims with respect to Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be filed no later than thirty (30) days after the Effective Date.  Any Claim not filed within such time shall be forever barred.

**5.8.**    **Director and Officer Liability Insurance.**    Debtor will assume and, if applicable, assign to Reorganized Ahern all of its existing D&O Liability Insurance Policies pursuant to Section 365(a) of the Bankruptcy Code as of the Effective Date.  Entry of the Confirmation Order will constitute approval by the Bankruptcy Court of Debtor's foregoing assumption and assignment by Debtor to Reorganized Ahern of each of the D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained in the Plan, entry of the Confirmation Order shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by Debtor and assigned to Reorganized Ahern under the Plan as to which no proof of Claim need be filed.

**5.9.**    **Indemnification.**  All indemnification obligations currently in place (whether in the bylaws, articles or certificates of incorporation, articles of limited partnership, limited liability company agreements, board resolutions (or resolutions of similar bodies), or employment contracts) for the directors, officers, employees, attorneys, or other Professionals and agents of Debtor (from the Petition Date forward) shall be assumed as of the Effective Date,

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

and shall survive effectiveness of the Plan.  All indemnification provisions in place on and prior to the Effective Date for current directors and officers of Debtor (from the Petition Date forward) shall (i) survive the Effective Date of the Plan for Claims related to or in connection with any actions, omissions, or transactions occurring prior to the Effective Date, and (ii) remain liabilities of Reorganized Ahern specifically on behalf of Debtor.

## 6.    MANNER OF DISTRIBUTION OF PROPERTY UNDER THE PLAN

**6.1.    Distributions.**  Except as otherwise explicitly provided for in the Plan, the Disbursing Agent shall be responsible for making Distributions described in the Plan.  Except as otherwise provided in the Plan or the Confirmation Order, all Cash necessary for Reorganized Ahern to make payments pursuant to the Plan shall be obtained from existing Cash balances, earnings from the operations of Reorganized Ahern after the Effective Date, borrowings under the Exit Financing Facility and the New Value.

**6.2.    Timing and Calculation of Amounts to Be Distributed.**  Whenever payment under the Plan is said to be on the Effective Date, such payment shall be made on the Effective Date or as soon thereafter as is practicable but in no event more than fifteen (15) days after the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, on the next Distribution Date or as soon as reasonably practicable thereafter).  On such date each Holder of an Allowed Claim against the Debtor shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein.  All Distributions provided for in the Plan shall be made only to the extent permitted by applicable law.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the Distributions provided for herein, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

32

**6.3.    Rights and Powers of Disbursing Agent.**

The Disbursing Agent shall be empowered to: (a) affect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan; (b) make all Distributions contemplated hereby; (c) employ Professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.  Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by Reorganized Ahern in its reasonable discretion.

With respect to a Holder of a Claim or Equity Interest whose Distribution is governed by an agent or other agreement which is administered by an indenture trustee, agent or servicer, such Distributions shall be deposited with the appropriate agent or servicer, who shall then deliver such Distributions to the Holders of Claims or Equity Interests in accordance with the provisions of the Plan and the terms of the relevant indenture or other governing agreement; *provided*, *however*, that Distributions to the Disbursing Agent (other than the Debtor or Reorganized Ahern) under the Plan will be deemed payment in full, regardless of whether such agent (other than the Debtor or Reorganized Ahern) ultimately distributes such Distribution to the appropriate Claim or Interest Holder.

**6.4.    Providing for Claims Payments.**  Distributions to Holders of Allowed Claims shall be made by the Disbursing Agent: (i) at the addresses set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such Holders if no proof of Claim is filed or if Debtor has not been notified of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of Claim; or (iii) at the addresses reflected in the Schedules if no proof of Claim has been filed and the Disbursing Agent has not received a written notice of a change of address.  If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Disbursing Agent is notified of such Holder's then-current address, at which time all returned Distributions shall be made to such Holder without interest.  Amounts in respect of undeliverable Distributions made through the Disbursing Agent shall be returned to Reorganized Ahern until such Distributions are claimed.  All claims for undeliverable Distributions shall be made on or before the second (2nd) anniversary of the Effective Date. After such date, all unclaimed property shall revert to Reorganized Ahern and the Claim of any Holder or successor to such Holder with respect to such property shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary.  Nothing contained in the Plan shall require Reorganized Ahern or the Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

**6.5.    Means of Cash Payment.**  Payments of Cash made pursuant to the Plan shall be in U.S. dollars and shall be made, at the option and in the discretion of the Debtor or the Disbursing Agent, as the case may be, by (a) checks drawn on, or (b) wire transfer from, a domestic bank selected by the Debtor or the Disbursing Agent, as the case may be.  Cash payments to foreign Creditors may be made, at the option of the Debtor or the Disbursing Agent,

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

33

in such funds and by such means as are necessary or customary in the applicable foreign jurisdiction.

**6.6.**    **Application of Record Date.**  At the close of business on the Record Date, the claims registers for all Claims shall be closed, and there shall be no further changes in the record holders of Claims.  Except as provided herein, the Debtor, Reorganized Ahern, the Disbursing Agent, and each of their respective agents, successors, and assigns shall have no obligation to recognize any transfer of Claims occurring after the Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the claims registers as of the close of business on the Distribution Date irrespective of the number of Distributions to be made under the Plan to such Persons or the date of such Distributions.

**6.7.**    **Claims Paid or Payable by Third Parties.**

**6.7.1. Claims Paid by Third Parties.**  The Debtor, or the Disbursing Agent, as applicable, shall reduce in part or in full a Claim to the extent that the Holder of such Claim receives payment in part or in full on account of such Claim from a party that is not the Debtor or the Disbursing Agent.  To the extent a Holder of a Claim receives a Distribution on account of such Claim receives payment from a party that is not the Debtor or the Disbursing Agent on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the Distribution to Reorganized Ahern, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan.

**6.7.2. Insurance Claims.**   Except as otherwise provided in the Plan, no Distributions under the Plan shall be made on account of Allowed Claims covered by the Debtor's Insurance Policies until the insurance coverage with respect to such Allowed Claims has been exhausted.  To the extent that the Debtor's insurers agree to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon the insurer's payment of the Allowed Claim, such Allowed Claim may be deemed satisfied without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

**6.7.3. Applicability of Insurance Policies.**  Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be made in accordance with the provisions of any applicable Insurance Policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Person may hold against any other Person, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

34

**6.8.     Allocation of Plan Distributions Between Principal and Interest.**  To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of principal and accrued but unpaid interest thereon, such Distribution shall, for the Debtor's federal income tax purposes, be allocated on the Debtor's books and records to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

**6.9.     Setoffs.**  Except as provided in the Plan, the Debtor or Reorganized Ahern may, but shall not be required to, set off or offset against any Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever that the Debtor may have against the Claim's Holder; *provided*, *however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or Reorganized Ahern of any claim that the Debtor may have against such Holder. Nothing herein shall be deemed to expand rights to setoff under applicable law.

**6.10.     Fractional Distributions.**  Notwithstanding any other provision of the Plan to the contrary, no payment of fractional cents will be made pursuant to the Plan.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made will reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

**6.11.     De Minimis Distributions.**  Notwithstanding anything to the contrary contained in the Plan, the Disbursing Agent will not be required to distribute, and will not distribute, Cash or other property to the Holder of any Allowed Claim or Equity Interest if the amount of Cash or other property to be distributed on account of such Claim or Equity Interest is less than $25. Any Holder of an Allowed Claim or Equity Interest on account of which the amount of Cash or other property to be distributed is less than $25 will have such Claim or Equity Interest discharged and will be forever barred from asserting such Claim or Equity Interest against the Debtor, Reorganized Ahern, or their respective property.  Any Cash or other property not distributed pursuant to this provision will be the property of Reorganized Ahern, free of any restrictions thereon.

**6.12.     Prepayment.**  Except as otherwise provided in the Plan, any ancillary documents entered into in connection with the Plan, or the Confirmation Order, Reorganized Ahern will have the right to prepay, without penalty, all or any portion of an Allowed Claim entitled to payment in Cash at any time; *provided*, *however*, that any such prepayment will not be violative of, or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

**6.13.     No Distribution in Excess of Allowed Amounts.**  Notwithstanding anything to the contrary set forth in the Plan, no Holder of an Allowed Claim or Equity Interest will receive in respect of such Claim or Equity Interest any Distribution of a value as of the Effective Date in excess of the Allowed amount of such Claim or Equity Interest (excluding payments on account of interest due and payable from and after the Effective Date pursuant to the Plan, if any).

**6.14.     Joint Distributions.**  The Debtor or the Disbursing Agent may, in their sole discretion, make Distributions jointly to any Holder of a Claim or Equity Interest and any other entity who has asserted, or whom the Debtor has determined to have, an interest in such Claim or

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

35

Equity Interest.  Except as otherwise provided in the Plan or in the Confirmation Order, and notwithstanding the joint nature of any Distribution, all Distributions made by the Debtor or the Disbursing Agent will be in exchange for and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests of any nature whatsoever against the Debtor and Reorganized Ahern or any of its assets or properties as set forth in Article III of the Plan.

**6.15.    No Recourse.**  No recourse shall ever be had, directly or indirectly, against Debtor or Reorganized Ahern or against any director, agent, attorney, accountant, or other professional for Debtor or Reorganized Ahern, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or agreement whatsoever executed by Debtor or Reorganized Ahern under the Plan, or by reason of the creation of any indebtedness by Debtor or Reorganized Ahern under the Plan for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants, and agreements of Debtor and Reorganized Ahern, whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Assets or such part thereof as shall under the terms of any such agreement be liable therefore or shall be evidence only of a right of payment out of the Assets.

**6.16.    Statements.**  Debtor and the Disbursing Agent shall maintain a record of the names and addresses of all Holders of Allowed General Unsecured Claims as of the Effective Date for purposes of mailing Distributions to them.  Debtor and the Disbursing Agent may rely on the name and address set forth in the Schedules and/or proofs of Claim as of the Record Date as being true and correct unless and until notified in writing.  Debtor and Reorganized Ahern shall file all tax returns and other filings with governmental authorities on behalf of Debtor and Reorganized Ahern and the Assets it holds.

**6.17.    Further Authorization.**  Reorganized Ahern shall be entitled to seek such orders, judgments, injunctions, and rulings as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions of the Plan.

## 7.    PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

**7.1.    Resolution of Disputed Claims.**  Holders of Claims must file proofs of Claims on or prior to the applicable Bar Date.  No later than the Pre-Petition Claims Objection Deadline (unless extended by an order of the Bankruptcy Court), the Debtor or Reorganized Ahern, as the case may be, shall file objections to Claims that were required to be filed by the applicable Bar Date with the Bankruptcy Court and serve such objections upon the Holders of such Claims to which objections are made.  Nothing contained herein, however, shall limit Reorganized Ahern's right to object to Claims, if any, filed or amended after the Pre-Petition Claims Objection Deadline.

Holders of Administrative Claims must file a request for payment on or prior to the Administrative Claims Bar Date.  No later than the Administrative Claims Objection Deadline (unless extended by an order of the Bankruptcy Court), the Debtor or Reorganized Ahern, as the case may be, shall file objections to the Administrative Claims with the Bankruptcy Court and serve such objection upon the Holders of such Administrative Claims to which objections are made.  Nothing contained herein, however, shall limit Reorganized Ahern's right to object to

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

36

Administrative Claims, if any, filed or amended after the Administrative Claims Objection Deadline.

**7.2.    No Distribution Pending Allowance.**  No payments or Distributions, if any contemplated by the Plan, will be made with respect to all or any portion of a Disputed Claim or interest unless and until all objections to such Disputed Claims or interests have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim or interest.

**7.3.    Resolution of Objections After Effective Date.**  From and after the Effective Date, Reorganized Ahern may propose settlements of, or withdraw objections to, all pending or filed Disputed Claims and may settle or compromise any Disputed Claim without notice and a hearing and without approval of the Bankruptcy Court.

**7.4.    Distributions After Allowance.**  On each Quarterly Distribution Date (or such earlier date as determined by the Disbursing Agent in its sole discretion but subject to Section 7.2 of the Plan), the Disbursing Agent will make Distributions (a) on account of any Disputed Claim that has become an Allowed Claim during the preceding calendar quarter, and (b) on account of previously Allowed Claims that would have been distributed to the Holders of such Claims or Equity Interests on the dates Distributions previously were made to Holders of Allowed Claims and Equity Interests in such Class had the Disputed Claims or Equity Interests that have become Allowed Claims or Equity Interests been Allowed on such dates.  Such Distributions will be made pursuant to the applicable provisions of Article VI of the Plan.

**7.5.    Estimation of Claims.**  The Debtor (before the Effective Date) or Reorganized Ahern (on or after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any party or Person, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor (before the Effective Date) or Reorganized Ahern (after the Effective Date), may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim.  All of the objection, estimation, settlement and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, objected to, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**7.6.    Deadline to File Objections to Claims.**  The Debtor reserves its right to file objections to Claims, if any, on or before the applicable Claim Objection Deadline.

**7.7.    Late-Filed Claims.**  Except with respect to Claims, proof of which is made in compliance with the requirements of Sections 502(e) and 509 of the Bankruptcy Code, no Claim filed after the Bar Date or, as applicable, the Administrative Claims Bar Date, shall be allowed,

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

37

104500-002/1951452_3

and all such Claims are hereby disallowed in full.  After the Bar Date or the Administrative Claim Bar Date, as applicable, no Creditor shall be permitted to amend any claim to increase the claimed amount, unless permitted by the Bankruptcy Court, subject to the Debtor's or Reorganized Ahern's right to object to such increase; and any such amendment shall be disallowed, unless permitted by the Bankruptcy Court, subject to the Debtor's or Reorganized Ahern's right to object to such increase, to the extent of the late-filed increase in the claimed amount.

**7.8.    Reservation of Right to Object to Allowance or Asserted Priority of Claims.** Nothing herein will waive, prejudice or otherwise affect the rights of the Debtor, Reorganized Ahern or the Holders of any Claim to object at any time, including after the Effective Date, to the allowance or asserted priority of any Claim, except with respect to any Allowed Claim.

**8.    CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE**

**8.1.    Conditions to Confirmation.**    The conditions precedent to entry of the Confirmation Order are:

**8.1.1.**    The Confirmation Order shall be in form and substance acceptable to Debtor; and the DIP Loan Agents, the Noteholder Group and the Exit Lenders, and shall not contain any terms or conditions that are materially adverse to the rights or interests of the Exit Lenders, and their respective affiliates (as determined in good faith by the Exit Lender(s)) and such arranger unless such arranger and the Exit Lender(s) have so consented in writing;

**8.1.2.**    The Bankruptcy Court shall have entered an order, which shall not be subject to any stay or subject to an unresolved request for revocation under Section 1144 of the Bankruptcy Code, approving the Disclosure Statement and solicitation procedures with respect to the Plan, as containing adequate information within the meaning of Section 1125 of the Bankruptcy Code, in form and substance reasonably acceptable to the Debtor, the Noteholder Group and the Exit Lenders, which order shall not contain any terms or conditions that are materially adverse to the rights or interests of the Exit Lenders, and their respective affiliates (as determined in good faith by the Exit Lender(s)) and such arranger unless such arranger and the Exit Lender(s) have so consented in writing;

**8.1.3.**    The commitments for the Exit Financing Facility shall have been approved by the Bankruptcy Court and shall not have terminated provided, however, that if the Note Offering is consummated, the non-termination of the Bridge Loan Facility (as defined in the commitments for the Exit Financing Facility) shall no longer be a condition precedent to entry of the Confirmation Order; and

**8.1.4**    The funds required for the New Value contribution shall have been deposited into escrow subject to an escrow agreement in form either (i) reasonably acceptable to the Noteholder Group, Debtor and the Holders of the Debtor's Equity Interests or (ii) approved by Bankruptcy Court order after notice and a hearing.

**8.2.    Conditions to Effectiveness.**    The following are conditions precedent to the occurrence of the Effective Date:

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

**8.2.1.** No request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending, including any appeal;

**8.2.2.** The Exit Financing Facility shall have been executed and delivered by all of the Persons that are parties thereto, and all conditions precedent to the consummation thereof shall have been waived, or satisfied in accordance with the terms thereof (but for the occurrence of the Effective Date).

**8.2.3.** All documents necessary to implement the transactions contemplated by the Plan shall be in form and substance acceptable to Debtor and approved by the Bankruptcy Court.

**8.2.4.** All actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.

**8.2.5.** The Bankruptcy Court shall have entered one or more orders (which may include the Confirmation Order) authorizing the assumption and rejection of Executory Contracts and Unexpired Leases by the Debtor as contemplated herein in form and substance acceptable to the Debtor.

**8.2.6.** Sufficient Cash (including in all events the New Value being contributed on the Effective Date) and other Assets shall be set aside, reserved and withheld by Debtor to make the Distributions required to be paid on the Effective Date or within sixty (60) days thereafter by the Bankruptcy Code and the Plan.

**8.2.7.** All actions reasonably necessary to establish the Professional Fee Reserve as set forth in Article 4, Section 4.7 of the Plan shall have been effectuated to the extent necessary to establish the Professional Fee Reserve on the Effective Date (or as soon thereafter as is practicable).

**8.3.** **Notice of Effectiveness.**  When all of the steps contemplated by Section 8.2 of the Plan have been completed, Debtor shall file with the Bankruptcy Court and serve upon all Creditors and all potential Holders of Administrative Claims known to Debtor (whether or not disputed), a Notice of Effective Date of Plan.  The Notice of Effective Date of Plan shall include notice of the Administrative Claims Bar Date.

**8.4.** **Waiver of Conditions.**  The Debtor, and if applicable, Reorganized Ahern, may waive (each for themselves but not for others) any or all of the other conditions set forth in this Article 8 and specifically **<u>Sections 8.2.1, 8.2.3, 8.2.5, and 8.2.7</u>** of the Plan without leave of or order of the Bankruptcy Court and without any formal action.  The failure of a party to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each right shall be deemed an ongoing right that may be asserted at any time prior to the filing of the Notice of Effectiveness described in Section 8.3.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

39

## 9.    TITLE TO PROPERTY; DISCHARGE; AND INJUNCTION

**9.1.    Vesting of Assets.**  Subject to and as provided for in the Plan, the Assets shall be vested and/or transferred to Reorganized Ahern on the Effective Date, subject to any Liens granted under the Plan.  On and after the Effective Date, Reorganized Ahern may operate its business and may use, acquire, and dispose of property and compromise or settle any Claims without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by the Plan or the Confirmation Order.

**9.2.    Preservation of Litigation Claims.**  In accordance with Section 1123(b)(3) of the Bankruptcy Code, and except as otherwise expressly provided herein, on the Effective Date all Litigation Claims shall be assigned to Reorganized Ahern, and Reorganized Ahern shall have the exclusive right to enforce, prosecute, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any or all of the Litigation Claims, including, without limitation, any and all derivative actions pending or otherwise existing against the Debtor as of the Effective Date; *provided*, *however*, effective as of the Effective Date of the Plan, all preference actions against current and future Holders of Allowed Unsecured Claims arising under Section 547 of the Bankruptcy Code shall be waived.

**9.3.    Settlement of Litigation Claims.**  At any time after the Confirmation Date and before the Effective Date, notwithstanding anything in the Plan to the contrary, Debtor may settle any or all of the Litigation Claims with the approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019.  After the Effective Date, Reorganized Ahern may, and shall have the exclusive right to, compromise and settle any Claims against it and claims it may have against any other Person, including, without limitation, the Litigation Claims, without notice to or approval from the Bankruptcy Court, including, without limitation, any and all derivative actions pending or otherwise existing against Debtor as of the Effective Date.

**9.4.    Discharge.**  On the Effective Date, except as otherwise provided in the Plan, Debtor shall be discharged from any and all Claims in Classes 1, 2, 3, 4, 5, 6, 7, 8, and 9 to the fullest extent provided in Sections 524 and 1141 of the Bankruptcy Code.  The discharge shall be to the fullest extent provided under Section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, and, except as otherwise expressly provided by the Plan or the Confirmation Order, all consideration distributed under the Plan and shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any kind or nature whatsoever against Debtor or any of its assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims.  Except as otherwise expressly provided by the Plan or the Confirmation Order, upon the Effective Date as to Claims in Classes 1, 2, 3, 4, 5, 6, 7, 8, and 9, Debtor shall be deemed discharged and released under and to the fullest extent provided under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

**9.5.    Compromise and Settlement.**  The allowance, classification, and treatment of all Allowed Claims and their respective Distributions under the Plan take into account and/or conform to the relative priority and rights of the Claims in each Class in connection with any

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, Section 510(c) of the Bankruptcy Code, or otherwise, including without limitation, the subordination provisions of the Intercreditor Agreement. As of the Effective Date, any and all such rights described in the preceding sentence will be settled, compromised, and released pursuant to the Plan and any and all such Causes of Action related thereto are settled, compromised, and released pursuant hereto.

**9.6.    Releases.  On the Effective Date and effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, but not limited to: (i) the discharge of debt and all other good and valuable consideration provided pursuant to the Plan; and (ii) the services of Debtor's officers and directors serving on and since the Petition Date in facilitating the expeditious implementation of the reorganization contemplated by the Plan, Debtor and Reorganized Ahern shall provide a full discharge and release to the Released Parties (and each such Released Party so released shall be deemed released and discharged by Debtor and Reorganized Ahern) and their respective properties from any and all Causes of Action, whether known or unknown, whether for torts, including fraud, contract, violations of federal or state securities laws, or otherwise, arising from or related in any way to Debtor or Reorganized Ahern, including, without limitation, those that either Debtor or Reorganized Ahern would have been legally entitled to assert in its own right (whether individually or collectively) or that any Holder of a Claim or other Person would have been legally entitled to assert on behalf of Debtor or its Estate but for this release and further including those in any way related to the Chapter 11 Case, the Plan, the DIP Loan/Cash Collateral Order, or the Majority Term Lender Cash Collateral Stipulation, to the fullest extent of the law; *provided, however*, that the foregoing releases shall not operate to waive or release any Released Party from (a) any Causes of Action expressly set forth in and preserved by the Plan, any Plan Supplement, or related documents or (b) as a result of actual fraud, gross negligence, or willful misconduct.**

**9.7.    Injunction.  From and after the Effective Date, and except as provided in the Plan, the Confirmation Order and any orders of the Bankruptcy Court implementing the provisions of the Plan and Confirmation Order, all entities that have held, currently hold, or may hold a Claim that is terminated, modified or restructured pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions on account of such Claims: (i) commencing or continuing in any manner any action or other proceeding against Reorganized Ahern or its property; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Reorganized Ahern or its property; (iii) creating, perfecting or enforcing any Lien or encumbrance against Reorganized Ahern or its property; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to Reorganized Ahern or its property; and (v) commencing or continuing any action, in any manner or any place, that does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code.  By accepting Distributions pursuant to the Plan, each Holder of an Allowed Claim will be deemed to have specifically consented to the injunctions set forth in this Section 9.7.**

**9.8.    Exculpation.  FROM AND AFTER THE EFFECTIVE DATE, NONE OF DEBTOR, REORGANIZED AHERN, THE DIP LOAN AGENTS, SOLELY IN THEIR CAPACITY AS AGENTS FOR THE DIP LOAN, THE DIP LENDERS, SOLELY IN**

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

THEIR CAPACITY AS DIP LOAN LENDERS, THE MAJORITY TERM LENDERS, SOLELY IN THEIR CAPACITY AS TERM LENDERS, THE COMMITTEE, THE NOTEHOLDER GROUP, SOLELY IN THEIR CAPACITY AS THE HOLDERS OF SECOND LIEN LOAN CLAIMS, THE SECOND LIEN AGENTS, SOLELY IN THEIR CAPACITY AS SECOND LIEN COLLATERAL AGENT AND SECOND LIEN INDENTURE TRUSTEE FOR THE SECOND LIEN LOAN NOTES, THE EXIT LENDERS, SOLELY IN THEIR CAPACITY AS LENDERS, ARRANGERS, ADMINISTRATIVE AGENTS, COLLATERAL AGENTS, AND INDENTURE TRUSTEES IN RESPECT OF THE EXIT FINANCING FACILITY NOR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, MANAGERS, EMPLOYEES, ADVISORS, ATTORNEYS, PROFESSIONALS, OR AGENTS ON AND FROM THE PETITION DATE FORWARD, SHALL HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR ANY OTHER PARTY-IN-INTEREST, OR ANY OF THEIR RESPECTIVE AGENTS, EMPLOYEES, REPRESENTATIVES, FINANCIAL ADVISORS, ATTORNEYS, AFFILIATES, PROFESSIONALS, OR ANY OF THEIR SUCCESSORS OR ASSIGNS, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF (FROM THE PETITION DATE FORWARD) THE CHAPTER 11 CASE, REORGANIZED AHERN, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE DIP LOAN/CASH COLLATERAL ORDER, THE MAJORITY TERM LENDER CASH COLLATERAL STIPULATION, OR THE SUBSTANTIAL CONSUMMATION OF THE PLAN, INCLUDING THE ISSUANCE AND DISTRIBUTION OF THE EXIT FINANCING FACILITY DOCUMENTS AND ISSUANCE OF THE NEW EQUITY, AS PROVIDED FOR IN THE PLAN OR ANY ORDERS OF THE BANKRUPTCY COURT, EXCEPT FOR GROSS NEGLIGENCE AND WILLFUL MISCONDUCT, AND IN ALL RESPECTS SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN OR IN THE CONTEXT OF THE CHAPTER 11 CASE.  NO HOLDER OF A CLAIM, NOR ANY OTHER PARTY-IN-INTEREST, INCLUDING THEIR RESPECTIVE AGENTS, EMPLOYEES, REPRESENTATIVES, FINANCIAL ADVISORS, ATTORNEYS, AFFILIATES, PROFESSIONALS, OR THEIR SUCCESSORS AND ASSIGNS, SHALL HAVE ANY RIGHT OF ACTION AGAINST DEBTOR, REORGANIZED AHERN, THE DIP LOAN AGENTS, THE DIP LENDERS, THE MAJORITY TERM LENDERS, SOLELY IN THEIR CAPACITY AS TERM LENDERS, THE COMMITTEE, THE NOTEHOLDER GROUP, SOLELY IN THEIR CAPACITY AS THE HOLDERS OF SECOND LIEN LOAN CLAIMS, THE SECOND LIEN AGENTS, SOLELY IN THEIR CAPACITY AS SECOND LIEN COLLATERAL AGENT AND SECOND LIEN INDENTURE TRUSTEE FOR THE SECOND LIEN LOAN NOTES, AND THE EXIT LENDERS AND THE ARRANGER AND ADMINISTRATIVE AGENT FOR THE EXIT FINANCING FACILITY, SOLELY IN THEIR CAPACITY AS LENDERS, ARRANGERS AND ADMINISTRATIVE AGENTS IN RESPECT OF THE EXIT FINANCING FACILITY, NOR OR ANY OF THEIR RESPECTIVE PRESENT OR FORMER MEMBERS, OFFICERS, DIRECTORS, MANAGERS, EMPLOYEES, ADVISORS, ATTORNEYS, PROFESSIONALS, OR AGENTS, RELATING TO, OR ARISING OUT OF (FROM THE PETITION DATE FORWARD) THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE SUBSTANTIAL CONSUMMATION OF THE PLAN, INCLUDING THE ISSUANCE AND

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

42

DISTRIBUTION OF THE EXIT FINANCING FACILITY DOCUMENTS AND ISSUANCE OF THE NEW EQUITY, AS PROVIDED FOR IN THE PLAN OR ANY ORDERS OF THE BANKRUPTCY COURT, OR THE ADMINISTRATION OF THE PLAN, EXCEPT FOR: (I) THEIR WILLFUL MISCONDUCT AND GROSS NEGLIGENCE; (II) MATTERS SPECIFICALLY CONTEMPLATED BY EITHER THE PLAN OR REORGANIZED AHERN; AND (III) ANY LIABILITY OF AN ATTORNEY TO ITS CLIENT NOT SUBJECT TO EXCULPATION UNDER THE BANKRUPTCY CODE.

**10.    RETENTION OF JURISDICTION.**

**10.1.    Jurisdiction.**    Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case and Reorganized Ahern after the Effective Date as is legally permissible, including jurisdiction to:

1.    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Disputed Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Disputed Claims;

2.    Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for periods ending on or before the Effective Date;

3.    Resolve any matters related to the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease to which Debtor or Reorganized Ahern is a party and to hear, determine and, if necessary, liquidate any Claims arising therefrom or Cure amounts related thereto;

4.    Ensure that Distributions to or for the benefit of Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.    Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications or motions involving Debtor or Reorganized Ahern that may be pending on the Effective Date or commenced thereafter as provided for by the Plan;

6.    Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement, or the Confirmation Order except as otherwise provided herein;

7.    Decide or resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of any Final Order, the Plan, the Confirmation Order, or obligations of any Persons incurred in connection with such Final Order, the Plan, or the Confirmation Order;

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

8.      Modify the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code and Section 11 of the Plan or modify any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, the Confirmation Order, or Reorganized Ahern; or remedy any defect or omission or reconcile any inconsistency in any Final Order, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

9.      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation, or enforcement of any Final Order, the Plan, or the Confirmation Order, except as otherwise provided herein;

10.     Enter and implement such orders as are necessary or appropriate if a Final Order or the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

11.     Determine any other matters that may arise in connection with or relate to the Plan, any Final Order, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, any Final Order or the Confirmation Order (unless such contract, instrument, release, or other agreement or document expressly provides otherwise), except as otherwise provided herein;

12.     Enter an order closing the Chapter 11 Case;

13.     Hear and decide Litigation Claims and any other Claim or Cause of Action of Debtor and Reorganized Ahern pending on the Effective Date; and

14.     Decide or resolve any matter over which the Bankruptcy Court has jurisdiction pursuant to Section 505 of the Bankruptcy Code.

## 11.    MODIFICATION AND AMENDMENT OF PLAN.

Prior to Confirmation, Debtor may alter, amend, or modify the Plan under Section 1127(a) of the Bankruptcy Code at any time.  After the Confirmation Date and prior to the Effective Date, Debtor may, under Sections 1127(b), (c), and (d) of the Bankruptcy Code, alter, amend, or modify the Plan or institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, and to make appropriate adjustments and modifications to the Plan or the Confirmation Order as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of Holders of Claims under the Plan.

## 12.    MISCELLANEOUS.

12.1.   **Effectuating Documents; Further Transactions; and Timing.**  Each of the officers of Debtor and Reorganized Ahern are authorized to execute, deliver, file, or record such

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

44

contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any obligations issued, transferred, or cancelled pursuant to the Plan and transactions contemplated by the Plan. All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously. Debtor and Reorganized Ahern are authorized and directed to do such acts and execute such documents as are necessary to implement the Plan.

**12.2.** **Cancellation of Existing Agreements.** On the latest to occur of (i) the Effective Date; (ii) the entry of a Final Order resolving all Claims in the Chapter 11 Case; and (iii) the final Distribution made to Holders of Allowed Claims in accordance with the terms of the Plan, unless otherwise provided in the Plan, any document, agreement, or instrument evidencing any Disputed Claim that is disallowed shall be deemed automatically cancelled and terminated without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of Debtor under such documents, agreements, or instruments evidencing such Claims shall be discharged.

**12.3.** **Exemption from Transfer Taxes.** Pursuant to Section 1146(a) of the Bankruptcy Code, (i) the issuance, distribution, transfer, or exchange of Estate property; (ii) the creation, modification, consolidation, or recording of any deed of trust or other interest, or the securing of additional indebtedness by such means or by other means in furtherance of, or in connection with the Plan or the Confirmation Order; (iii) the making, assignment, modification, or recording of any lease or sublease; or (iv) the making, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**12.4.** **Revocation or Withdrawal of the Plan.** Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date. If the Plan is withdrawn or revoked or if the Bankruptcy Court denies confirmation of the Plan, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against Debtor or any other Person, nor shall the withdrawal or revocation of the Plan prejudice in any manner the rights of Debtor or any Person in any further proceedings involving Debtor. In the event the Plan is withdrawn or revoked, nothing set forth herein shall be deemed an admission of any sort and the Plan and any transaction contemplated thereby shall be inadmissible into evidence in any proceeding.

In the event that the Effective Date does not occur, upon notification submitted by Debtor to the Bankruptcy Court: (i) the Confirmation Order shall be vacated; (ii) no Distributions under the Plan shall be made; (iii) Debtor and all Holders of Claims shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (iv) Debtor's obligations with respect to the Claims shall remain

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims by or against Debtor or any other Person or to prejudice in any manner the rights of Debtor or any Person in any further proceedings involving Debtor.

**12.5.    Term of Bankruptcy Injunction or Stays.**  All injunctions or stays provided for in the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. Upon the Effective Date, the injunction provided in Article IX of the Plan shall apply.

**12.6.    Enforcement of Subordination.** Unless otherwise set forth herein, in accordance with Section 510(a) of the Bankruptcy Code, all subordination rights that the Debtor or a Holder of a Claim or Equity Interest may have with respect to any Claim or Distribution to be made pursuant to the Plan will not be discharged and terminated, except to the extent that such subordination rights conflict with other provisions of the Bankruptcy Code.  All actions to request or direct subordination arising in law or in equity, including rights under Section 510(b) of the Bankruptcy Code, are not waived and expressly preserved.

**12.7.    Binding Effect.** The Plan shall be binding upon and inure to the benefit of the Debtor and the Estate, Reorganized Ahern and all present and former Holders of Claims against and interests in the Debtor, whether or not such Holders will receive or retain any property or interest in property under the Plan, their respective successors and assigns, including, without limitation, all other parties in interest in the Chapter 11 Case.

**12.8.    Plan Supplement.** The Plan Supplement shall be filed with the Bankruptcy Court no later than May 24, 2013, and any additional Plan Supplement documents shall be filed before the Effective Date as amendments to the Plan Supplement.  Any document included in the Plan Supplement (and amendments thereto) filed by the Debtor shall be deemed an integral part of the Plan and shall be incorporated by reference as if fully set forth herein.  To the extent any exhibit or schedule to the Plan is inconsistent with the terms of the Plan, the Plan shall control.

**12.9.    Committees.** On the Effective Date, the Committee shall cease to exist, except with respect to any application for compensation or reimbursement of costs and expenses in connection with services rendered prior to the Effective Date.

**12.10.    Governing Law.**  Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any contract, instrument, release, or other agreement entered into in connection with the Plan or in any document which remains unaltered by the Plan, the rights, duties, and obligations of Debtor and any other Person arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada without giving effect to Nevada choice of law provisions.

**12.11.    Modification of Payment Terms.**  Reorganized Ahern reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the Holder of such Allowed Claim at any time after the Effective Date upon the prior written consent of the Holder whose Allowed Claim treatment is being adversely affected.

**12.12.    Notices.**  Any notice required or permitted to be provided under the Plan shall be in writing and served by either: (a) certified mail, return receipt requested, postage prepaid; (b)

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

hand delivery, or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

If to Debtor or Reorganized Ahern:    Ahern Rentals, Inc.
Attn: Howard Brown, Chief Financial Officer
1401 Mineral Avenue
Las Vegas, NV 89106-4342
Tel: (702) 362-0623
Fax: (702) 367-7652

With a Copy to:    GORDON SILVER
Attn:  William M. Noall, Esq.
3960 Howard Hughes Pkwy, 9th Floor
Las Vegas, NV  89109
Tel:  (702) 796-5555
Fax:  (702) 369-2666

and

DLA PIPER LLP (US)
Attn: Gregg M. Galardi, Esq.
1251 Avenue of the Americas
New York, New York 10020
Tel:  (212) 335-4640
Fax:  (212) 884-8680

**12.13.  Severability.**  If any provision of the Plan is determined by the Bankruptcy Court to be invalid, illegal, or unenforceable or the Plan is determined to be not confirmable pursuant to Section 1129 of the Bankruptcy Code, the Bankruptcy Court, at the request of Debtor or Reorganized Ahern, as applicable, shall have the power to alter and interpret such term to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.   The Confirmation Order shall provide and shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**12.14.  Withholding and Reporting Requirements.**  In connection with the Plan and all instruments issued in connection therewith and Distributions thereon, Reorganized Ahern shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  Reorganized Ahern shall be authorized to take any and all action that may be necessary to comply with such withholding and recording requirements. Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim that has received a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

47

104500-002/1951452_3

income, withholding, and other tax obligation on account of such Distribution.

**12.15.  Fees and Reporting to the U.S. Trustee.**  Prior to the Effective Date, the Debtor, and after the Effective Date, the Reorganized Ahern, is obligated to pay the U.S. Trustee quarterly fees based upon all disbursements in accordance with the sliding scale set forth in 28 U.S.C. § 1930(a)(6).  These fees accrue throughout the pendency of the Chapter 11 Case and until entry of a final decree.  U.S. Trustee fees paid prior to confirmation of the Plan will be reported in operating reports required by Sections 704(8), 1106(a)(1), 1107(a) of the Bankruptcy Code and the United States Trustee Guidelines.  All U.S. Trustee quarterly fees accrued prior to confirmation of the Plan will be paid on or before the Effective Date pursuant to Section 1129(a)(12) of the Bankruptcy Code.  All U.S. Trustee fees accruing post-confirmation are due on a calendar quarter basis and reported both on post-confirmation operating reports and in post-confirmation operating reports required by the United States Trustee Guidelines.

**12.16.  Section 1125(e) of the Bankruptcy Code.**  As of the Confirmation Date, the Debtor shall be deemed to have acted in good faith and in compliance with Section 1125(e) of the Bankruptcy Code.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

1    DATED this 6th day of June, 2013.

2                                                      Ahern Rentals, Inc., a Nevada corporation

3                                                      By:  /s/ Howard Brown

4                                                      Its:  Chief Financial Officer

5

6    PREPARED AND SUBMITTED BY:

7    GORDON SILVER

8    By:  /s/ Gabrielle A. Hamm
            GERALD M. GORDON, ESQ.
9            WILLIAM M. NOALL, ESQ.
            THOMAS H. FELL, ESQ.
10           GABRIELLE A. HAMM
            3960 Howard Hughes Pkwy., 9th Floor
11           Las Vegas, Nevada 89169
            Attorneys for Debtor

12                   and

13    DLA PIPER LLP (US)

14    By:  /s/ Gregg M. Galardi
            GREGG M. GALARDI, ESQ.
15           1251 Avenue of the Americas
            New York, New York 10020
16           Attorneys for Debtor

17

18

19

20

21

22

23

24

25

26

27

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104500-002/1951452_3

49