ARMSTRONG TEASDALE LLP
LOUIS M. BUBALA III (NV SBN 8974)
50 W. Liberty Street, Suite 950
Reno, NV 89501
Telephone: (775) 322-7400
Facsimile: (775) 322-9049
Email: lbubala@armstrongteasdale.com

MACDONALD | FERNANDEZ LLP
MATTHEW J. OLSON (CA SBN 265908)
(will comply with LR IA 10-2 within 14 days)
221 Sansome Street, Third Floor
San Francisco, CA  94104-2323
Telephone: (415) 362-0449
Facsimile: (415) 394-5544
Email: matt@macfern.com

Attorneys for Claimants,
JULIAN ALBARADO, SR., deceased; BERTHA ALBARADO, individually and as the Administrator of the Estate of Julian Albarado, Sr.; and JULIAN ALBARADO, JR., an individual

ELECTRONICALLY FILED ON
JULY 3, 2013

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>AHERN RENTALS, INC.<br><br>                    Debtor. | Case No. BK-N-11-53860-BTB<br><br>Chapter 11<br><br>**CLAIMANTS' OPPOSITION TO DEBTOR'S THIRD OMNIBUS OBJECTION TO CLAIMS FILED ON BEHALF OF THE ESTATE OF JULIAN ALBARADO, SR. (POC NOS. 708, 709, 710, 711, 712, AND 713)**<br><br>Date:   July 17, 2013<br>Time:  3:00 p.m.<br>Place:  Courtroom 2, Fifth Floor<br>           300 Booth Street<br>           Reno, Nevada<br><br>           Hon. Bruce T. Beesley |

///

///

///

i

## INTRODUCTION

Without the benefit of the Constitutionally required notice regarding a claims bar date, Julian Albarado, Sr., deceased, Julian Albarado, Jr., and Bertha Albarado, both individually and as Administrator of the Estate of Julian Albarado, Sr., deceased (collectively, the "Claimants") filed Proofs of Claim Nos. 708, 709, 710, 711, 712, and 713 in January 2013 to preserve their rights in this bankruptcy case. Despite the fact that the filing of the claims does not prejudice the Debtor, any other creditor, or the estate, the Debtor objects to the claims alleging that the claims are untimely (Doc. No. 2150). The Court should allow the claims pursuant to Federal Rule of Bankruptcy Procedure 3003(c)(3)[1] because the delay in filing the claims was caused by the Debtor's failure to notify the Claimants of the pending bankruptcy case before January 3, 2013, and once the Claimants knew of the bankruptcy—but not any bar date—they immediately filed their claims. Moreover, the claims are not duplicative since California law affords each Claimant an individual right of recovery and the claims filed on January 15, 2013, were merely amended claims.

## FACTS

The Debtor commenced the underlying bankruptcy case by filing a voluntary petition on December 22, 2011. A trustee has not been appointed and the Debtor is in possession of the estate. The Official Committee of Unsecured Creditors was appointed on January 6, 2012. *See* Doc. No. 116. The Debtor confirmed a plan of reorganization on June 6, 2013. *See* Doc. No. 2171.

On December 23, 2011, the Clerk of Court issued a notice regarding commencement of the case and setting certain deadlines pursuant to Local Bankruptcy Rule 5075. *See* Doc. No. 40. The Clerk's notice set the bar date to file a proof of claim as 90 days after the date first set for the meeting of creditors held pursuant to § 341(a). *Id.* With the meeting of creditors set for January 30, 2012 in this Chapter 11 proceeding, the claims bar date was April 30, 2012. It is undisputed that the Claimants were not scheduled and did not receive notice of the commencement of the bankruptcy case or the claims bar date set by the Clerk of Court.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, "Civil Rule" references are to the Federal Rules of Civil Procedure, and "Evidence Rule" references are to the Federal Rules of Evidence.

1

1  Without knowledge of the pending bankruptcy case, on October 10, 2012, the Claimants commenced an action in the Superior Court of California for the County of Orange asserting a claim for damages against, *inter alia*, the Debtor for negligence, wrongful death, and a survival action (the State-Court Complaint). *See* Exhibit "A" to the Request for Judicial Notice, filed herewith. As alleged in the State-Court Complaint, Julian Albarado, Sr. was struck by a 2005 International Eagle tractor towing a 2000 Trail King trailer (collectively, the "Tractor–Trailer") and a second vehicle at approximately 6:30 a.m. on October 15, 2010, near the intersection of Harbor Boulevard and 17th Street in Santa Ana, California. *Id.* at ¶¶ 13–14. The Tractor–Trailer is owned by the Debtor and was driven by an employee of the Debtor. *Id.* at ¶ 14. Mr. Albarado, Sr. died from the injuries he suffered in the collision. *Id.* at ¶¶ 21, 25, 39.

The State-Court Complaint was prepared and filed by Carpenter Zuckerman & Rowley, LLP ("Carpenter Zuckerman") and signed by Paul S. Zuckerman, Esq., a partner with that firm. *Id*. at 1, 8. Maryam Parman, Esq., an attorney with the Averk Law Firm, was listed as co-counsel in recognition of her referral of the case to Carpenter Zuckerman and to comply with her request that she receive copies of all documents filed in the case as the referring attorney. *See* Declaration of John Carpenter ¶ 5, filed herewith. Other than initial interviews with the Claimants, tendering a claim to the Debtor's insurer in January 2011, and referring the case first to Franklin Casco, Jr., Esq. and then to Carpenter Zuckerman, Parman performed no substantive work on Claimants' case. Declaration of Maryam Parman ¶ 2–4, 11, filed herewith. She did not communicate with the Claimants while they were represented by other attorneys and does not perform legal services while the Claimants are represented by other attorneys. *Id.* at ¶ 4; Carpenter Decl. ¶ 6. On December 6, 2012, Carpenter Zuckerman properly served the State-Court Complaint upon the Debtor as required by the California Code of Civil Procedure § 416.10. Carpenter Decl. ¶ 4.

After the filing of the State-Court Complaint, the Debtor issued a "Notice of Supplemental Bar Date for Certain Claimants Only" (the "Supplemental Notice"). Doc. No. 1328. The Supplemental Notice set 5:00 p.m. on December 28, 2012, as the bar date for the Claimants to file their claims (the "Supplemental Bar Date") with Kurtzman Carson Consultants LLC ("KCC"), the Debtor's claims agent in this case. *Id.* The Supplemental Notice was mailed to "Julian Albarado,

2

c/o Maryam Parman, Averk Law Firm, 575 Anton Blvd Ste 1175, Costa Mesa, CA 92626." *See* Certificate of Service at 6, Doc. No. 1338.  Other than the copy sent care of Ms. Parman, the Debtor made no attempt to notify the Claimants of the Supplemental Bar Date by communicating the bar date to counsel who actually prepared, signed, filed, and served the State-Court Complaint. Carpenter Decl. ¶ 7.  There is no evidence in the record that notice of the Supplemental Bar Date was sent to the Claimants directly.  *See* Proof of Service, Doc. No 1338.  Ms. Parman never received the Supplemental Notice, never had any contact related to these claims with the Debtor or its attorneys, including the Gordon Silver and DLA Piper firms, and did not know of the Debtors bankruptcy until June 2013. Parman Decl. ¶¶ 6–9, 12.

For reasons that the Debtor has not explained, it did not notify the state court of the pending bankruptcy proceeding until it filed a "Suggestion of Bankruptcy" on January 3, 2013—after the Supplemental Bar Date and weeks after it was served with the State-Court Complaint. *See* Exhibit "B" to Request for Judicial Notice, filed herewith.  Carpenter Zuckerman received the Suggestion of Bankruptcy on or about January 7, 2013. Carpenter Decl. ¶ 7.  Carpenter Zuckerman immediately prepared and filed proofs of claim, which were file stamped on January 11, 2013 (POC Nos. 708, 709, and 710) and January 15, 2013 (POC Nos. 711, 712, and 713). Carpenter Decl. ¶ 8.

## ANALYSIS

I. <u>THE NOVEMBER 2012 NOTICE WAS INEFFECTIVE BECAUSE IT WAS NOT REASONABLY CALCULATED TO PROVIDE NOTICE SINCE IT WAS NOT SENT TO THE CLAIMANTS OR THE ATTORNEYS REPRESENTING THE CLAIMANTS IN THE STATE-COURT PROCEEDING.</u>

Notice of the Supplemental Bar Date was ineffective since the manner in which notice was provided was not reasonably calculated to provide notice to the Claimants, failing to meet the Claimants due-process rights.

Due process considerations require that notice of a claims bar date be provided by means that are "reasonably calculated, under all the circumstances" to afford the Claimants of the pending bankruptcy and the deadline to file their claim. *See Mullane v. Central Hanover Bank & Trust Co.*, 399 U.S. 306, 314 (1950); *see also In re First Magnus Fin. Corp.*, 415 B.R. 416, 422 (Bankr. D. Ariz. 2009) ("Due process and the Bankruptcy Rules entitle the creditor to adequate and reasonable

notice of bar dates.") (citing *New York v. New York, New Haven & Hartford R.R Co.*, 344 U.S. 293, 297 (1953)).  Since the notice here was not sent to the Claimants or the attorneys responsible for the state-court litigation, the Court should find that the notice was not reasonably calculated to apprise the Claimants of the Supplemental Bar Date.

As shown by the proof of service for the Supplemental Notice, notice to the Claimants was directed only to Ms. Parman.  While notice to an attorney representing a clamant in a state-court proceeding related to the claim may be sufficient to apprise a creditor of a bankruptcy and related deadlines, *see, e.g.*, *In re Price*, 871 F.2d 97, 99 (9th Cir. 1989), such notice here is ineffective since Ms. Parman is not the attorney responsible for prosecuting the case before the state court and was not responding to filing made in the case.  The State-Court Complaint makes plain that Carpenter Zuckerman was responsible for the prosecuting the claim against the Debtor.  Carpenter Zuckerman is listed first as counsel on the State-Court Complaint, Paul Zuckerman signed the State-Court Complaint, Ms. Parman did not have a signature block on the State-Court Complaint, Carpenter Zuckerman served the State-Court Complaint, and Carpenter Zuckerman filed the State-Court Complaint.

Nor did Ms. Parman continue to represent the Claimants after the case was referred to other attorneys.  Only after the initial attorney, Mr. Casco, notified Ms. Parman that he was unable to continue the representation did Ms. Parman again become involved in the case. Her involvement was limited to referring the matter to other counsel.  Parman Decl. ¶¶ 2–4, 11.  Ms. Parman's connection with the proceedings in state court is tangential; she has not communicated with the Debtor's counsel regarding the claims asserted in the State-Court Complaint and the Claimants did not authorize her to accept notices or service of process on their behalf.  Ms. Parman's inclusion on the State-Court Complaint is merely a professional courtesy so that she would receive copies of documents filed with the state court as the attorney who referred the case to Carpenter Zuckerman; her firm performs no litigation work and she merely monitored the case filings, leaving it to Carpenter Zuckerman to respond to any pleadings. Notice to an attorney who is monitoring a case but who is not taking any actions in the case is insufficient to provide notice to a represented party. *Cf. Maples v. Thomas*, 565 U.S. ---, 132 S. Ct. 912, 926–27, 181 L. Ed. 2d 807 (2012) (holding that

notice upon local counsel for attorneys appearing *pro hac vice* was ineffective where the local attorney's retention was only to allow out-of-state counsel to appear and not to take any substantive act, creating sufficient cause to permit the tardy filing of a petition for habeas corpus).

Even after the Debtor was served with the State-Court Complaint on December 6, 2012, the Debtor did not make any attempt to notify the attorneys prosecuting that action—Carpenter Zuckerman—of the bankruptcy or the impending Supplemental Bar Date. Nor is it evident why the Debtor delayed filing the Suggestion of Bankruptcy with the state court until after the Supplemental Bar date passed. If the Debtor had simply afforded notice to counsel prosecuting the State-Court Complaint, the Claimants would have been on notice of the pending case and could have filed their claims in advance of the Supplemental Bar Date.

Considering the totality of the circumstances, the notice afforded here was not reasonably calculated to notify the Claimants of the pending bankruptcy or the Supplemental Bar Date. The Debtor knew that it was being sued for its personal injury claims and knew that Carpenter Zuckerman was responsible for that suit. Notwithstanding that knowledge, the Debtor did not file notice of the pending bankruptcy with the state court; it instead unreasonably relied upon the Supplemental Notice it sent to a attorney who was merely monitoring the proceedings. The Court should overrule the objection because, considering all the circumstances, the Supplemental Notice was not reasonably calculated to afford the Claimants with notice of the Supplemental Bar Date.

II. THE COURT SHOULD OVERRULE THE OBJECTION TO THE CLAIMS SINCE THE CLAIMS WERE PROMPTLY FILED ONCE THE CLAIMANTS LEARNED OF THE BANKRUPTCY CASE, SHOWING GOOD CAUSE TO PERMIT THE FILING OF A LATE CLAIM.

The Claimants filed their claims late because they learned of the bankruptcy after both the Court-established and the Supplemental Bar Date. The tardy filing of the claims presents no prejudice to the Debtor since the claims were filed before plan confirmation and the payment of the claim will not disrupt the Debtor's plan; the plan already provides treatment for the claims.

Bankruptcy Rule 9006(b)(1) provides that the Court may extend time, for cause, upon a motion made after the deadline "where the failure to act was the result of excusable neglect." The existence of excusable neglect is determined by considering the totality of the circumstances,

5

including the following factors: (1) the reason for the delay; (2) the danger of prejudice to the debtor; (3) the length of delay and its impact on judicial proceedings; and (4) whether the claimant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. Co.*, 507 U.S. 380, 395 (1993). The Albarado Estate bears the burden of producing evidence that excusable neglect exists. *Key Bar Invs., Inc. v. Cahn (In re Cahn)*, 188 B.R. 627, 631 (B.A.P. 9th Cir. 1995); *see also In re Pac. Gas & Elec. Co.*, 311 B.R. 84, 89 (Bankr. N.D. Cal. 2004).

As with other multifactor lists, the *Pioneer* factors only serve as a framework for the analysis; they are not a scorecard though which the Court decides the matter. *See* 9 *Collier on Bankruptcy* ¶ 3003.03[4][b] (Alan N. Resnick & Henry J. Sommer eds. 16th ed.); *cf. Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 25 (B.A.P. 9th Cir. 2003) (discussing a 12-factor list for annulment of the automatic stay and stating, "Mindful that such lists are capable of being misconstrued as inviting arithmetic reasoning, we emphasize that these items are merely a framework for analysis and not a scorecard."). The burden is not to prove every *Pioneer* factor; "[T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. The decision is rendered on a case-by-case basis and *per se* rules are disfavored. *Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004).

In *Pioneer*, an attorney neglected to file a proof of claim by the bar date because he neglected to open the case file while he was in the midst of changing law firms. *Pioneer*, 507 U.S. at 384. The Supreme Court held that the excusable neglect standard of Bankruptcy Rule 9006(b)(1) is not limited to situations where the delay is caused by circumstances beyond the control of the party filing the proof of claim. *Id.* at 394–95. As one bankruptcy court observed:

> Insufficient notice of the bar date may be sufficient cause to extend the bar date. *See In re Pettibone Corp.*, 123 B.R. 304, 310 (Bankr. N.D. Ill.1990); *In re Herd,* 840 F.2d 757, 758 n. 2 (10th Cir. 1988) ( "[N]otice which is constitutionally deficient satisfies the 'for cause' standard contained in the rule."); *In re Dix,* 95 B.R. 134 (9th Cir. BAP 1988) (lack of actual notice of the claim bar date may be sufficient to support a finding of excusable neglect so as to warrant extension of the bar date in a chapter 11).

*In re First Magnus Fin. Corp.*, 415 B.R. 416, 422 (Bankr. D. Ariz. 2009). A delay caused by circumstances beyond a party's control, or caused by the debtor, supports a late-filed claim. *See Lipan v. Kriegish (In re Kriegish),* 280 B.R. 132, 135 (Bankr. E.D. Mich. 2008) (delayed in mailing

of the notice of appeal caused by anthrax scare); *In re Thomas*, 339 B.R. 640, 641–642 (Bankr. W.D. Ky. 2006) (delay caused by debtor's failure to accurately disclose information on schedules).

As in *Pioneer* and *First Magnus*, any delay in filing the claims in this case is excusable because any delay was beyond the Claimants' control. In the first instance, the Claimants were not scheduled and did not receive notice of this bankruptcy case. Moreover, the Supplemental Notice issued by the Debtor in November 2012 was not reasonably calculated to provide notice since it was not served on the attorneys responsible for the case and, in any event, was never received. Even if the Supplemental Notice had been received, the Claimants were represented by other counsel who was responsible for prosecuting their claims and any failure to act by Ms. Parman was beyond the Claimants' control. It was only after the Debtor filed its Suggestion of Bankruptcy with the state court (after the Supplemental Bar Date passed) that the Claimants received notice of the bankruptcy petition and immediately filed proofs of claim.

There is no danger of prejudice to the Debtor. In *Pioneer,* the court found no prejudice to the debtor or adverse impact on the administration of the estate because the plan allowed for adjustments to account for the creditors' tardy claim. *Pioneer,* 507 U.S. at 397–398. Likewise, the court in *In re Sacred Heart*, 186 B.R. 891 (Bankr. E.D. Pa. 1995) held that there was no prejudice to the debtor or to the administration of the estate when the tardy claim would only reduce the pro-rata share of other unsecured creditors' distribution and would not disrupt the distribution process itself. *Id.* at 897. In this case, the Claimants filed their claims prior to plan confirmation and the plan's provides treatment for the claims. See Chapter 11 Plan § 3.4.6(b), Doc. No. 2171 at 42–43. Moreover, after the Debtor reaches pays the deductible for its insurance policy, the Debtor's automobile insurance company will provide for payment of some or all of the Claimants' claims, with the Debtor's umbrella policy providing additional coverage. See Disclosure Statement ¶ III(B), Doc. No. 1797 at 23 (describing treatment of Class 6K claims). Allowing the claims will not disrupt the distribution process in this case or otherwise prejudice the Debtor. Disallowing the claims, however, allows the Debtor to realize a windfall by avoiding liability on the Claimants' tort claims.

The length of delay in this case is minimal and any delay had no appreciable impact on the proceedings. Claimants filed their claims within eight days of learning of the pending case in

January 2013.  Even if the Court were to find that the Claimants received notice by virtue of the Supplemental Notice, the delay from the December 28, 2012 Supplemental Bar Date is less than two weeks.  Nor were the Claimants required to file a motion to allow their claims since, by statute, their claims are deemed allowed unless a party in interest objects.  11 U.S.C. § 502(a).  The statute draws no distinction between timely and tardy claims unless and until a party objects.

Finally, the Claimants acted in good faith in filing their claims.  Once they had notice of the bankruptcy case, they acted promptly in filing their proofs of claim.  The only reason for the delay in filing the proofs of claim in this case is the Debtor's actions in (1) failing to schedule the claims at the outset and (2) not providing reasonable notice of the bankruptcy proceedings to the Claimants by immediately filing a notice of the bankruptcy case with the state court or serving a notice upon the attorneys responsible for the suit pending before the state court.

Good cause exists for allowing the Claimant's tardy claims.  The Claimants did not have notice of the bankruptcy proceedings, the claims bar date, or the Supplemental Bar Date.  Once they had notice of the bankruptcy proceedings, the Claimants acted promptly by filing their claims within eight days of receiving notice.  The proceedings before the Court have not been appreciably affected by the delay in filing the proofs of claim.  The Debtor suffered no prejudice from the delay and, in reality, merely seeks to realize a windfall.  Considering the circumstances, the Claimants acted in good faith since they acted without delay in filing their claims once they learned of the bankruptcy proceedings.  For these reasons, the Court should allow the Claimant's tardy claims and overrule the objection.

III. <u>BECAUSE CALIFORNIA LAW ALLOWS EACH CLAIMANT THE INDEPENDENT RIGHT TO RECOVER FROM THE DEBTOR FOR THE TORTS ALLEGED IN THE STATE-COURT COMPLAINT, THE CLAIMS ARE NOT DUPLICATIVE.</u>

Finally, the Debtor argues that Claims 708, 709, 710, 711, 712, and 713 are duplicative of each other and at most only one claim should be allowed.  This argument ignores California law which gives each Claimant an individual cause of action.  *See* Cal. Civ. Proc. Code §§ 377.20, 377.30, 377.60–377.62.  Since the Claimants each hold a cause of action against the Debtor's estate, it is proper for them to each assert a claim against the Debtor's estate.

A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). A "creditor" is an entity that holds a claim against the Debtor that arose at or before the order for relief. *Id.* at § 101(10)(A). Therefore, so long as each of the Claimants held a claim, they may file a proof of claim. *See* Fed. R. Bankr. P. 3003(c)(2) (requiring creditors whose claims are not scheduled to file proofs of claim).

Under California law, the Claimants each hold claims against the Debtor's estate. First, the decedent holds claims against the estate arising from the actions alleged in the State-Court Complaint. *See* Cal. Civ. Proc. Code §§ 377.20, 377.30. The claim is in the nature of a survivor's claim, which prevents the abatement of claims held by the decedent.

> A survivor claim is also a statutory cause of action; however, unlike a wrongful death claim, the survival statutes do not *create* a cause of action but merely prevent the abatement of the decedent's cause of action and provide for its enforcement by the decedent's personal representative or successor in interest. ([Cal. Civ. Proc. Code ]§§ 377.20, 377.30; *Grant v. McAuliffe* (1953) 41 Cal.2d 859, 864, 264 P.2d 944.) Damages for a survivor claim include punitive damages and all the decedent's losses incurred prior to death, but exclude any award for the decedent's pain or suffering. (§ 377.34.)
>
> There is but one survivor cause of action belonging to the decedent that is brought on behalf of the decedent by the decedent's personal representative or successor in interest. (§§ 377.20, 377.30.)

*San Diego Gas & Elec. Co. v. Superior Court*, 146 Cal. App. 4th 1545, 1553, 53 Cal. Rptr. 3d 722, 728 (2007) (emphasis supplied). Because Mr. Albarado, Sr. held claims arising from the conduct alleged in the State-Court Complaint and those claims survive his death, he may file a claim in this bankruptcy case.

Additionally, Ms. Albarado and Mr. Albarado, Jr. both hold wrongful death claims for their own personal loss resulting from Mr. Albarado, Sr.'s death. As the California Court of Appeal held:

> Because a wrongful death action compensates an heir for his or her own independent pecuniary losses, it is one for "personal injury to the heir." ([*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256,] 1263–1264, 45 Cal.Rptr.3d 222; *Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 819, 31 Cal.Rptr.3d 591, 115 P.3d 1233.) Thus, in a wrongful death action the "injury" is not the general loss of the decedent, but the particular loss of the decedent to each individual claimant.

*San Diego Gas & Elec. Co.*, 146 Cal. App. 4th at 1551, 53 Cal. Rptr. 3d at 726. While the claims

must be consolidated into a single action, *see id.*, the claims are nonetheless held by the individuals.

Claims 708, 709, and 710 were filed on January 11, 2013, on behalf of Julian Albarado, Sr., Julian Albarado, Jr., and Bertha Albarado, both in her individual capacity and as Administrator of the Estate of Julian Albarado, Sr., Deceased. On January 15, 2013, Claims 711, 712, and 713 were filed by the same claimants which, while not designated as amended claims, were in fact amended claims. Specifically, Claim 713 corrected the name of the claimant on Claim 708.

The Claimants do not seek to recover more from the Debtor's estate than what California law affords them, but they are each entitled to assert their individual claims. The Court overrule the objection and designate Claims 711, 712, and 713 as amended claims.

## CONCLUSION

The delay in filing the claims in this case was caused by the Debtor not scheduling the Claimants nor affording them notice of the pending bankruptcy case until January 3, 2013. Thereafter, the Claimants acted promptly to assert their claims. Because California law recognizes a right of recovery personal to each Claimant, the tardy filing of the claims was caused by the Debtor's own conduct, and the tardy filing of the claims did not prejudice the Debtor, the Court should overrule the Debtor's third omnibus objection.

DATED: July 3, 2013    ARMSTRONG TEASDALE LLP

By: /s/ Louis M. Bubala III
    Louis M. Bubala III
    Attorneys for Claimants,
    JULIAN ALBARADO, SR., deceased;
    BERTHA ALBARADO, individually and as the
    Administrator of the Estate of Julian Albarado,
    Sr.; and JULIAN ALBARADO, JR., an
    individual

DATED: July 3, 2013    MACDONALD | FERNANDEZ LLP

By: /s/ Matthew J. Olson
    Matthew J. Olson
    Attorneys for Claimants,
    JULIAN ALBARADO, SR., deceased;
    BERTHA ALBARADO, individually and as the
    Administrator of the Estate of Julian Albarado,
    Sr.; and JULIAN ALBARADO, JR., an
    individual